**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

ALI KARIMI, Individually and On Behalf of All
Others Similarly Situated,

                         Plaintiff,

            v.

DEUTSCHE BANK AKTIENGESELLSCHAFT,
JOHN CRYAN, CHRISTIAN SEWING,
MARCUS SCHENCK, and JAMES VON
MOLTKE,

                         Defendants.

---

Case No. 2:20-cv-08978-ES-MAH

<u>**Oral Argument Requested**</u>

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**</u>

Mark Errico
SQUIRE PATTON BOGGS (US) LLP
382 Springfield Avenue
Summit, New Jersey 07869
(973) 848-5668
mark.errico@squirepb.com

David G. Januszewski (admitted pro hac vice)
Sheila C. Ramesh (admitted pro hac vice)
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, New York 10005
(212) 701-3000
djanuszewski@cahill.com
sramesh@cahill.com

*Attorneys for Defendants Deutsche Bank
Aktiengesellschaft, John Cryan, Christian
Sewing, Marcus Schenck, and James Von
Moltke*

April 15, 2021

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF ALLEGED FACTS ................................................................... 3

    A.    Deutsche Bank's Public Disclosures ................................................. 5

    B.    Deutsche Bank's AML Controls and KYC Procedures ........................ 6

    C.    Allegations Against the Individual Defendants ....................................... 8

LEGAL STANDARD ........................................................................................... 11

ARGUMENT ....................................................................................................... 13

I.    Plaintiffs Fail to State a Claim of Securities Fraud Under Section 10(b) ........................ 13

    A.    Plaintiffs Fail to Allege an Actionable Misstatement or Omission ..................... 13

        1.    Deutsche Bank's Statements Concerning its Compliance Controls Were Aspirational and Are Not Actionable .............................. 15

        2.    The Alleged Misstatements Are Immaterial as a Matter of Law ............. 16

        3.    Plaintiffs Do Not Adequately Allege the Falsity of the Alleged Misstatements ........................................................................ 20

        4.    Plaintiffs Fail to Plead an Actionable Omission ...................................... 22

    B.    Plaintiffs Fail to Adequately Allege Scienter ........................................ 23

        1.    Plaintiffs Do Not Allege That Deutsche Bank Had Any Motive to Defraud .................................................................................. 24

        2.    Plaintiffs Do Not Adequately Allege Conscious Misbehavior or Recklessness ........................................................................... 25

        3.    Plaintiffs' Allegations Concerning Confidential Witness Statements Do Not Support an Inference of Scienter ................................... 26

        4.    Plaintiffs Do Not Offer Any Other Basis From Which to Infer Scienter . 29

II.    Plaintiffs' Control Person Claim Fails as a Matter of Law ............................. 30

CONCLUSION ..................................................................................................... 30

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Advanta Corp. Securities Litigation*,
  180 F.3d 525 (3d Cir. 1999), *overruled in part on other grounds*, *Tellabs, Inc.*
  v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007)...................................................15, 29, 30

*In re Amarin Corp.*,
  2015 WL 3954190 (D. N.J. June 29, 2015) (Wolfson, J) ........................................................24

*American General Life Insurance Co.* v. *Altman Family Insurance Trust ex rel. Altman*,
  2009 WL 5214027 (D. N.J. Dec. 22, 2009) (Salas, J.) ............................................................8

*Ashcroft* v. *Iqbal*,
  556 U.S. 662 (2009)..................................................................................................................3n

*Basic Inc.* v. *Levinson*,
  485 U.S. 224 (1988)..................................................................................................................17

*Bell Atlantic* v. *Twombly*,
  550 U.S. 544 (2007)..................................................................................................................11

*Buck* v. *Hampton Township School District*,
  452 F.3d 256 (3d Cir. 2006).....................................................................................................4n

*In re Burlington Coat Factory Securities Litigation*,
  114 F.3d 1410 (3d Cir. 1997)....................................................................................................25

*California Public Employees' Retirement System* v. *Chubb Corp.*,
  394 F.3d 126 (3d Cir. 2004)......................................................................................................12

*In re Cancer Genetics, Inc. Securities Litigation*,
  2020 WL 3276740 (D. N.J. Feb. 26, 2020) (Salas, J.)..............................................................9

*In re Cendant Corp. Securities Litigation*,
  76 F. Supp. 2d 539 (D. N.J. 1999) (Walls, J.)..........................................................................29

*Chan* v. *New Oriental Education & Technologies Grp.*,
  2019 WL 2865452 (D. N.J. July 3, 2019) (Hayden, J.) ..................................................... 12-13

*Chiarella* v. *United States*,
  445 U.S. 222 (1980)..................................................................................................................22

*City of Edinburgh Council* v. *Pfizer, Inc.*,
  754 F.3d 159 (3d Cir. 2014)...............................................................................................13, 14

*City of Pontiac Policemen's & Firemen's Retirement System* v. *UBS AG*,
   752 F.3d 173 (2d Cir. 2014) ................................................................................ 16

*In re Cognizant Technology Solutions Corp. Securities Litigation*,
   2020 WL 3026564 (D. N.J. June 5, 2020) (Salas, J.) ................................. 13, 16, 25

*In re Deutsche Bank Aktiengesellschaft Securities Litigation*,
   2017 WL 4049253 (S.D.N.Y. June 28, 2017), *aff'd sub nom. Sfiraiala* v.
   *Deutsche Bank Aktiengesellschaft*, 729 F. App'x 55 (2d Cir. 2018) ............................. *passim*

*In re Eros International Securities Litigation*,
   2017 WL 6405846 (S.D.N.Y. Sept. 22, 2017), *aff'd*, 735 F. App'x 15 (2d Cir.
   2018) ................................................................................................................ 22

*Fain* v. *USA Technologies, Inc.*,
   707 F. App'x 91 (3d Cir. 2017) (Unpublished) ....................................................... 23

*Fan* v. *StoneMor Partners LP*,
   927 F.3d 710 (3d Cir. 2019) ............................................................................ 17, 20

*In re Galena Biopharma, Inc. Securities Litigation*,
   2019 WL 5957859 (D. N.J. Nov. 12, 2019) (Vazquez, J.) ........................................ 23

*Garber* v. *Legg Mason, Inc.*,
   347 F. App'x 665 (2d Cir. 2009) (Summary Order) ................................................. 17

*Glaser* v. *The9, Ltd.*,
   772 F. Supp. 2d 573 (S.D.N.Y. 2011) .................................................................. 28

*Goldsmith* v. *Weibo Corp.*,
   2018 WL 2733694 (D. N.J. June 7, 2018) (Chesler, J.) ............................................. 17

*Green* v. *Deutsche Bank Aktiengesellschaft*,
   2019 WL 4805804 (S.D.N.Y. Sept. 30, 2019) ...................................................... 1, 16

*Hall* v. *Johnson & Johnson*,
   2019 WL 7207491 (D. N.J. Dec. 27, 2019) (Wolfson, C.J.) ...................................... 15

*In re Hertz Global Holdings Inc.*,
   905 F.3d 106 (3d Cir. 2018) ................................................................................ 21

*In re Hertz Global Holdings, Inc. Securities Litigation*,
   2015 WL 4469143 (D. N.J. July 22, 2015) (Arleo, J.) ............................................. 27

*Ieradi* v. *Mylan Labs., Inc.*,
   230 F.3d 594 (3d Cir. 2000) ................................................................................ 20

*Institutional Investors Grp.* v. *Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009)....................................................................13, 24, 25, 26

*Kumar* v. *Kulicke & Soffa Industries, Inc.*,
    2019 WL 5081896 (E.D. Pa. Oct. 9, 2019)..........................................................26

*In re Lehman Brothers Securities & ERISA Litigation*,
    2013 WL 3989066 (S.D.N.Y. July 31, 2013) .......................................................12

*Long Miao* v. *Fanhua, Inc.*,
    442 F. Supp. 3d 774 (S.D.N.Y. 2020)...................................................................12

*In re Magnum Hunter Resources Securities Litigation*,
    26 F. Supp. 3d 278 (S.D.N.Y. 2014), *aff'd*, 616 F. App'x 442 (2d Cir. 2015)....................3, 22

*Martin* v. *GNC Holdings, Inc.*,
    757 F. App'x 151 (3d Cir. 2018) (Unpublished) ..................................................27

*Matrixx Initiatives, Inc.* v. *Siracusano*,
    563 U.S. 27 (2011).................................................................................................13

*McLean* v. *Alexander*,
    599 F.2d 1190 (3d Cir. 1979)................................................................................25

*Messner* v. *United States Technologies, Inc.*,
    2016 WL 1466543 (E.D. Pa. Apr. 13, 2016), *aff'd sub. nom.*, *Fain* v. *USA
    Technologies, Inc.*, 707 F. App'x 91 (3d Cir. 2017)..............................................26

*In re Milestone Scientific Securities Litigation*,
    103 F. Supp. 2d 425 (D. N.J. 2000) (Lechner, J).................................................30

*In re Morgan Stanley Information Fund Securities Litigation*,
    592 F.3d 347 (2d Cir. 2010)..................................................................................23

*Morrow* v. *Balaski*,
    719 F.3d 160 (3d Cir. 2013)..................................................................................11

*In re NAHC, Inc. Securities Litigation*,
    306 F.3d 1314 (3d Cir. 2002)...............................................................................4n

*National Junior Baseball League* v. *Pharmanet Development Grp.*,
    720 F. Supp. 2d 517 (D. N.J. 2010) (Wolfson, J.).........................................12, 27

*Novak* v. *Kasaks*,
    216 F.3d 300 (2d Cir. 2000)............................................................................28, 29

*Palladin Partners* v. *Gaon*,
    2006 WL 2460650 (D. N.J. Aug. 22, 2006) (Martini, J.) ....................................29

*Patel* v. *L-3 Communications Holdings Inc.*,
    2016 WL 1629325 (S.D.N.Y. Apr. 21, 2016)...................................................................28-29

*Patel* v. *Zoompass Holdings, Inc.*,
    2018 WL 10154207 (D. N.J. Aug. 8, 2018) (Linares, C.J.)....................................................29

*Pathfinder Management, Inc.* v. *Mayne Pharma PTY*,
    2008 WL 3192563 (D. N.J. Aug. 5, 2008) (Martini, J.) .........................................................25

*Rescue Mission of El Paso, Inc.* v. *K-Sea Transportation Partners L.P.*,
    2013 WL 3087078 (D. N.J. June 14, 2013) (Walls, J.) ..........................................................12

*In re Rockefeller Center Properties, Inc. Securities Litigation*,
    311 F.3d 198 (3d Cir. 2002)...................................................................................................30

*Schiro* v. *Cemex, S.A.B. de C.V.*,
    396 F. Supp. 3d 283 (S.D.N.Y. 2019).....................................................................................28

*Seville Industry Machinery Corp.* v. *Southmost Machinery Corp.*,
    742 F.2d 786 (3d Cir. 1984)......................................................................................................8

*Sfiraiala* v. *Deutsche Bank Aktiengesellschaft*,
    729 F. App'x 55 (2d Cir. 2018) (Summary Order)......................................................21, 25-26

*In re Synchronoss Technologies, Inc. Securities Litigation*,
    2019 WL 2849933 (D. N.J. July 2, 2019) (Wolfson, C.J.)......................................................27

*Takata* v. *Riot Blockchain, Inc.*,
    2020 WL 2079375 (D. N.J. Apr. 30, 2020) (Wolfson, C.J.) .............................................3n, 22

*In re Take-Two Interactive Securities Litigation*,
    551 F. Supp. 2d 247 (S.D.N.Y. 2008).....................................................................................30

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)...........................................................................................................4n, 23

*In re Tyson Foods, Inc. Securities Litigation*,
    2004 WL 1396269 (D. Del. June 17, 2004), *aff'd*, 155 F. App'x 53 (3d Cir.
    2005) .......................................................................................................................................30

*In re UBS AG Securities Litigation*,
    2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012).......................................................................16

*United Food & Commercial Workers Union Local 880 Pension Fund* v.
    *Chesapeake Energy Corp.*,
    774 F.3d 1229 (10th Cir. 2014) .............................................................................................17

*Williams* v. *Globus Medical, Inc.*,
    869 F.3d 235 (3d Cir. 2017)................................................................22

*Winer Family Trust* v. *Queen*,
    503 F.3d 319 (3d Cir. 2007)...............................................12, 23, 25

**Regulations**

17 C.F.R. § 240.10b-5(b) (2019) .............................................................13

**Rules**

Fed. R. Civ. P. 9(b) .................................................................................11

**Statutes**

15 U.S.C. § 78u–4(b) .........................................................................12, 23

28 U.S.C. 1404(a) .................................................................................1n

Defendants Deutsche Bank Aktiengesellschaft ("Deutsche Bank"), John Cryan, Christian Sewing, Marcus Schenck, and James Von Moltke (the "Individual Defendants") respectfully submit this memorandum in support of their motion to dismiss Plaintiffs' Second Amended Class Action Complaint ("Complaint" or "SAC") pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This action is the third attempt by the same plaintiffs' attorneys to recover damages from Deutsche Bank based on purported misstatements and omissions concerning its internal controls. The United States District Court for the Southern District of New York (the "Southern District") has already dismissed two of those actions, and one of those dismissals was affirmed by the United States Court of Appeals for the Second Circuit. *In re Deutsche Bank Aktiengesellschaft Securities Litigation*, 2017 WL 4049253 (S.D.N.Y. June 28, 2017) ("*In re DB*"), *aff'd sub nom*. *Sfiraiala* v. *Deutsche Bank Aktiengesellschaft*, 729 F. App'x 55 (2d Cir. 2018) (Summary Order); *Green* v. *Deutsche Bank Aktiengesellschaft*, 2019 WL 4805804 (S.D.N.Y. Sept. 30, 2019) (together, the "Prior Dismissed Actions"). Refusing to accept the fatal flaws of their claims and the limitations of the securities laws, Plaintiffs here attempt to repackage the same failed claims, based on the same disclosures, to try their luck in a different Circuit.[1] In an effort to distract attention from the straightforward application of the securities laws requiring dismissal of their claims, Plaintiffs tried to load up their new Complaint with press clippings concerning Jeffrey Epstein, Danske Bank, Russian oligarchs, and others. These news reports, however salacious they may be, are irrelevant to the claims asserted against Deutsche Bank here.

---

[1] Plaintiffs' attempt to forum shop and avoid Second Circuit precedent by bringing their claims in this District is the subject of Defendants' request, filed concurrent with this motion, for leave to move for a transfer of this action pursuant to 28 U.S.C. §1404(a).

As an initial matter, alleged weaknesses in Deutsche Bank's internal controls were hardly a mystery to investors.  Indeed, those weaknesses, many of which were also the subject of the Prior Dismissed Actions, were disclosed by Deutsche Bank and well known to the public, as were Deutsche Bank's ongoing efforts to correct those weaknesses.  Knowing that those weaknesses alone cannot support their securities claims, Plaintiffs devote more than a third of their 232 paragraph complaint to listing a litany of headlines related to clients and regulatory matters.  But these allegations represent, at best, claims that Deutsche Bank's taking on certain clients constituted corporate mismanagement, which courts have repeatedly found insufficient to constitute a violation of the securities laws.  *See, e.g.*, SAC ¶ 2 (identifying alleged compliance failures within Deutsche Bank), ¶ 40 (alleging that Deutsche Bank exempted certain high net-worth individuals from rigorous diligence or Know Your Customer requirements), ¶ 53 (alleging Bank "should have never" onboarded certain clients), ¶ 64 (alleging "critical deficiencies" with Deutsche Bank's audit procedures), ¶ 100 (alleging certain clients "should have been subject to enhanced due diligence").

Additionally, despite Plaintiffs' best efforts to cherry-pick language from Deutsche Bank's public statements and filings, they cannot escape the well-established, black-letter rule that precludes securities claims based on aspirational statements like Deutsche Bank's disclosures concerning the effectiveness of its internal controls.  Even setting this dispositive legal point aside, the full text of those disclosures, which Plaintiffs conveniently omit, described the limitations of Deutsche Bank's controls, the challenges inherent in evolving those controls, and additional weaknesses as determined by regulators.  As a matter of law, no reasonable investor could construe such statements as either false or misleading.

Plaintiffs' failure to adequately allege scienter as to any of the Defendants provides a separate and independent basis for dismissal. Unable to identify any motive to defraud separate from the pursuit of Deutsche Bank's profitability, which cannot sustain a securities fraud claim, Plaintiffs attempt to satisfy the high bar of alleging conscious misbehavior or recklessness to sustain their fraud claim. But they do not meet that standard because they cannot demonstrate that any Defendant had any knowledge of any misstatement at the time it was made. Indeed, Deutsche Bank fully disclosed any relevant deficiencies to the public.

Plaintiffs' attempt to recast their previously dismissed claims with accounts of the misconduct of bad actors pulled from the headlines cannot cure the fatal deficiencies that doomed their claims in the Second Circuit. Like the Prior Dismissed Actions, the Complaint should be dismissed.

## STATEMENT OF ALLEGED FACTS[2]

It is no secret that Deutsche Bank's internal control environment has been the subject of regulatory scrutiny over the past decade. Deutsche Bank has repeatedly disclosed those regulatory matters that are required to be disclosed, and the press has written extensively about them. In response to the scrutiny, Deutsche Bank has undertaken a series of measures designed to bolster its controls and remediate various issues identified by regulators. As part of its ongoing efforts, Deutsche Bank has "acknowledg[ed] the company's material weaknesses and disclos[ed] [its] continued efforts to resolve them, only to learn of yet more." *In re Magnum Hunter Resources Securities Litigation*, 26 F. Supp. 3d 278, 297 (S.D.N.Y. 2014) (dismissing action), *aff'd*, 616 F. App'x 442 (2d Cir. 2015). But progress rarely proceeds in a straight line.

---

[2] The facts alleged by Plaintiffs are taken as true for purposes of this motion only. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009); *Takata* v. *Riot Blockchain, Inc.*, 2020 WL 2079375, at *1 (D. N.J. Apr. 30, 2020) (Wolfson, C.J.).

The Second Amended Complaint acknowledges Deutsche Bank's history (SAC ¶¶ 2, 3, 34), just as plaintiffs in the Prior Dismissed Actions published a fulsome list of the regulatory issues that Deutsche Bank has faced since 2002.

Plaintiffs' purported Class Period spans from March 14, 2017 through May 12, 2020 (SAC ¶ 1), a period in which Deutsche Bank self-disclosed regulatory actions, internal control deficiencies, and a series of ongoing remedial efforts.  For example, the Complaint relies heavily on the content of a July 2020 consent order which Deutsche Bank entered with the New York Department of Financial Services ("DFS") (the "2020 DFS Consent Order").  *See, e.g.*, SAC ¶ 192.  Among other things, the 2020 DFS Consent Order identified certain shortcomings in Deutsche Bank's control processes and required it to undertake remediation efforts in connection with DFS's investigation of transactions involving Jeffery Epstein, Danske Estonia, and FBME Bank.  Notably absent from Plaintiffs' Complaint, however, are the statements in the Consent Order commending "[Deutsche] Bank's ongoing efforts to remediate the shortcomings identified in [the] Consent Order including the fact that these efforts commenced before the inception of the Department's investigations . . . ."  April 15, 2021 Declaration of Sheila C. Ramesh (the "Ramesh Decl."), Ex. 1 ¶ 110.[3]  Those efforts included, among other things, a "demonstrated . . . commitment to remediation by devoting significant financial and other resources to enhance the

---

[3] The Court may properly consider these documents in connection with this motion.  *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (in ruling on a motion to dismiss, the Court "must consider . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").  This includes SEC filings (*In re NAHC, Inc. Securities Litigation*, 306 F.3d 1314, 1331 (3d Cir. 2002) (court may take judicial notice of SEC filings, whether or not referenced in complaint)), as well as "documents that are attached to or submitted with the complaint . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case." *Buck* v. *Hampton Township School District*, 452 F.3d 256, 260 (3d Cir. 2006) (internal quotation marks and citation omitted).

Bank's AML program, including through changes to its policies, procedures, systems, governance structures, and personnel, as well as its ongoing cooperation with the independent monitor selected by the Department . . . and by reducing the Bank's portfolio of high-risk clients in its correspondent banking and Wealth Management businesses." *Id.*

Deutsche Bank has made a number of other disclosures relating to various regulatory inquiries, fines, and settlements informing the public of certain weaknesses in its internal controls. *See* Ramesh Decl. Ex. 8 (2017 Annual Report) at 277; Ramesh Decl. Ex. 4 (2017 Form 20-F) at 31, 34, 80, 81. Throughout this same period, Deutsche Bank actively engaged in continuing to remediate the issues in its control environment identified by its regulators, a process that required time, diligence, and significant resources.

### A.     **Deutsche Bank's Public Disclosures**

Deutsche Bank's Annual Reports and Form 20-Fs contain a number of aspirational statements concerning Deutsche Bank's efforts to comply with anti-money laundering ("AML") and know-your-customer ("KYC") procedures, as well as local laws and regulations. SAC ¶¶ 136, 139, 154, 169; *see also* Ramesh Decl. Ex. 3 (2016 Form 20-F) at 33-34; Ramesh Decl. Ex. 7 (2016 Annual Report) at 40-41; 2017 Form 20-F at 29; 2017 Annual Report at 286; Ramesh Decl. Ex. 5 (2018 Form 20-F) at 29-30; Ramesh Decl. Ex. 9 (2018 Annual Report) at 5, 321; Ramesh Decl. Ex. 6 (2019 Form 20-F) at 31-32, 64.

Deutsche Bank's Annual Reports, Non-Financial Report supplements, and the Annual Financial Statements and Management Reports published on Deutsche Bank's official website contained similar statements concerning Deutsche Bank's endeavors to comply with AML procedures and KYC processes, as well as aspirational statements regarding initiatives that Deutsche Bank was undertaking to improve its culture of compliance. SAC ¶¶ 136, 145, 147, 149, 151, 162, 164, 166, 175; *see also* 2016 Annual Report at 40-41; Ramesh Decl. Ex. 10 (2017

Non-Financial Report) at 42-43; 2017 Annual Report at 286; Ramesh Decl. Ex. 13 (2017 Annual

Financial Statements and Management Report of Deutsche Bank AG) at 107-08; Ramesh Decl.

Ex. 11 (2018 Non-Financial Report) at 20-22; 2018 Annual Report at 5, 321; Ramesh Decl. Ex.

14 (2018 Annual Financial Statements and Management Report of Deutsche Bank AG) at 114-

16; Ramesh Decl. Ex. 12 (2019 Non-Financial Report) at 34-36.

Plaintiffs allege that the statements in Deutsche Bank's Form 20-Fs, Annual Reports,

Non-Financial Reports, and Annual Financial Statements and Management Reports were false

and misleading because, in retrospect, "Defendants repeatedly exempted high-net-worth

individuals (including people sponsoring terrorism) and PEPs [politically exposed persons] from

any meaningful due diligence, enabling their criminal activities through the use of the Bank's

facilities" (SAC ¶ 5), and allegedly exposing Deutsche Bank to risk of investigation and

disciplinary action by governmental and regulatory authorities.  These allegations are made in

hindsight and constitute, at most, allegations of corporate mismanagement, not securities fraud.

Plaintiffs repeatedly cherry-pick language from these public filings and associated press releases.

*See*, *e.g.*, SAC ¶¶ 136-76.  Defendants identify several of those omissions herein, and, in order to

provide necessary context that the Complaint omits, have annexed relevant portions of these

disclosures as exhibits to the Ramesh Declaration, submitted herewith.

B. **Deutsche Bank's AML Controls and KYC Procedures**

Throughout the alleged Class Period, Deutsche Bank maintained and enhanced its AML

and KYC protocols in an effort to promote compliance with laws and regulations.  In particular,

Deutsche Bank developed AML controls, which encompassed Deutsche Bank's KYC

procedures, to fulfill its obligations as a regulated financial institution.  SAC ¶¶ 4, 36.  The

Management Board, on which each of the Individual Defendants served, oversaw the AML and

KYC procedures.  SAC ¶¶ 15-20.  The AML controls were meant to identify and report

suspicious activity, and block transactions that might violate pertinent laws and regulations. SAC ¶ 36.  Deutsche Bank developed KYC procedures for the purpose of monitoring customers to prevent them from using Deutsche Bank's products to perpetuate wrongdoing.  SAC ¶¶ 4, 36. Deutsche Bank undertook a KYC review when its AML controls indicated that a client may be at risk of committing an AML violation.  SAC ¶ 37.

In their quotations from Deutsche Bank's disclosures concerning its AML and KYC procedures, Plaintiffs neglect to recognize the numerous instances, throughout the Class Period, where Deutsche Bank acknowledged limitations in its internal controls, including with respect to AML and KYC procedures, and continuing issues with its remediation efforts.  *See* 2016 Form 20-F; 2017 Form 20-F; 2018 Form 20-F; 2019 Form 20-F.  For example, in its 2016 Form 20-F, Deutsche Bank expressly cautioned about these limits:

> In order to improve [our AML and KYC procedures], we are undertaking several major initiatives to enhance the efficacy of the transaction processing environment, strengthen our controls and manage non-financial risks. . . . ***However, we may be unable to complete these initiatives as quickly as we intend or as our regulators demand, and our efforts may be insufficient to prevent all future deficiencies*** in our control environment or to result in fewer litigations or regulatory and enforcement investigations and proceedings in the future.

2016 Form 20-F at 34 (emphasis added).

Deutsche Bank also warned that "[it] ***may not always have the personnel with the appropriate experience, seniority and skill levels to compensate for shortcomings*** in [its] processes and infrastructure, ***or to identify, manage or control risks***, and it often has been difficult to attract and retain the requisite talent.  ***This has impacted [its] ability to remediate existing weaknesses*** and manage the risks inherent in [its] activity."  2017 Form 20-F at 29 (emphasis added).  Additional disclosures contained in the same filings cited by Plaintiffs, to

which Plaintiffs conveniently turn a blind eye, made the general condition of Deutsche Bank's internal controls abundantly clear:

- *Id.* at 26, 28-29 ("We are undertaking several major initiatives to . . . strengthen our controls . . . in particular as a response to the circumstances that have resulted in many of the litigations and regulatory and enforcement investigations . . . to which the Bank has been subject in recent years. . . . [*W*]*e have identified the need to strengthen our internal control environment . . . Both our internal control environment and the infrastructure that underlies it fall short in a number of areas of our standards for completeness and comprehensiveness and are not well integrated across the Bank*. . . . [R]eviews and audits have identified various areas for improvement relating to a number of elements of our control environment.") (emphasis added);

- *Id.* at 97 ("*A control system, no matter how well conceived and operated, can provide only reasonable, not absolute, assurance that the objectives of the control system are met*.") (emphasis added).

In its 2019 Form 20-F, Deutsche Bank reiterated this concern. *See* 2019 Form 20-F at 31, 111. Moreover, Deutsche Bank reported ongoing regulatory reviews of weaknesses in its AML and KYC processes. *See id.* ("Our principal regulators, including the BaFin, the ECB and the Federal Reserve Board, have also conducted numerous reviews focused on our internal controls and the related infrastructure. These *regulators have required us formally to commit to remediate our AML and other weaknesses, including the fragmented and manual nature of our infrastructure*.") (emphasis added).

## C.   Allegations Against the Individual Defendants

"[I]n order to satisfy the requirements of Rule 9(b), plaintiffs must 'plead with particularity the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.'" *American General Life Insurance Co.* v. *Altman Family Insurance Trust ex rel. Altman*, 2009 WL 5214027, at *4 (D. N.J. Dec. 22, 2009) (Salas, J.) (quoting *Seville Industry Machinery Corp.* v. *Southmost Machinery Corp.*, 742 F.2d

786, 791 (3d Cir. 1984)).  "Under the PSLRA's exacting pleading standard for scienter, any private securities complaint alleging that the defendant made a false or misleading statement must state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  *In re Cancer Genetics, Inc. Securities Litigation*, 2020 WL 3276740, at *3 (D. N.J. Feb. 26, 2020) (Salas, J.).  Here, the Complaint fails to satisfy even these fundamental pleading requirements as to the Individual Defendants.

**John Cryan.**  In Plaintiffs' 74-page, 232-paragraph Complaint, Defendant Cryan is mentioned by name only 11 times.  He is listed as a Defendant, and described as "Chairman of the Management Board and Chief Executive Officer ("CEO") from July 2015 until April 8, 2018."  SAC ¶ 15.  Over half of Plaintiffs' mentions of Cryan pertain only to his having signed some of Deutsche Bank's Annual Reports and Form 20-Fs.  SAC ¶¶ 136, 138, 145, 149, 151, and 153.  Through second-hand knowledge, the few remaining references vaguely describe Cryan's alleged involvement with AML and KYC procedures at Deutsche Bank.  SAC ¶¶ 57-59.

That is it.  There is no specific allegation of scienter or of any false or misleading statement by Cryan.  There is no allegation that Cryan did not honestly believe in the accuracy of the documents he signed at the time that he signed them.  There is no allegation that, in carrying out his duties as a senior executive, Cryan acted with any improper motive or recklessness.

**Christian Sewing.**  Defendant Sewing is mentioned by name only 13 times.  He is described as "Deutsche Bank's CEO since April 8, 2018," as having served as "a member of the Bank's Management Board on January 1, 2015," and "appointed President as of March 5, 2017."  SAC ¶¶ 16, 58.  The Complaint details other roles he has held throughout his time at Deutsche Bank:  "[s]ince January 2016, he had been the Head of Private, Wealth & Commercial Clients. Effective September 1, 2017, he was appointed Co-Head of Private & Commercial Bank.  As a

member of the Management Board, he was responsible for Legal, Incident Management Group

and Group Audit.  Before assuming his role on the Management Board, Sewing was Global

Head of Group Audit (from June 2013 until February 2015) and held a number of positions

before that in Risk, including Deputy Chief Risk Officer (from 2012 to 2013) and Chief Credit

Officer (from 2010 to 2012) of Deutsche Bank."  SAC ¶ 16.  Over a third of Plaintiffs' mentions

of Sewing pertain only to his signing some of Deutsche Bank's Annual Reports and Form 20-Fs.

SAC ¶¶ 162, 164, 166, 168, and 175.  Two of the remaining references to Sewing generally

describe his interactions with co-workers.  *See* SAC ¶ 64 (identifying his working relationship

with Max Ng); SAC ¶ 67 (explaining that Mark Cullen reported to him).  Finally, the last

reference to Sewing relies solely on second-hand knowledge to allege that Sewing was aware of

infirmities with KYC protocol and intended to remediate those weakness, a fact which Deutsche

Bank has itself disclosed to the public on many occasions through its Annual Reports and Form

20-Fs.  SAC ¶ 71; *see also* 2016 Form 20-F; 2017 Form 20-F; 2018 Form 20-F; 2019 Form 20-F.

As with Defendant Cryan, the Complaint does not include any specific allegation of

scienter or of any false or misleading statement by Sewing.  There is no allegation that Sewing

did not honestly believe in the accuracy of the documents he signed at the time that he signed

them.  Nor is there any allegation that he contravened AML and KYC procedures for any

improper motive or in a reckless manner.  In fact, Plaintiffs recognize Sewing's intention to fix

these controls.  SAC ¶ 71.

**Marcus Schenck.**  Defendant Schenck is mentioned by name only four times.  He is

described as "Deutsche Bank's Chief Financial Officer ("CFO")" until June 30, 2017, as having

served as "a member of Deutsche Bank's Management Board on May 21, 2015 and was

appointed President as of March 5, 2017."  SAC ¶ 17.  The remaining two references to Schenck

pertain to his signing some of Deutsche Bank's Annual Reports and Form 20-Fs.  SAC ¶¶ 136, 138.

Once again, the Complaint lacks any allegation of scienter or of any false or misleading statement by Schenck.  Nor is there any allegation that Schenck did not honestly believe in the accuracy of the documents he signed at the time that he signed them.

**James von Moltke.**  Finally, Defendant von Moltke is mentioned by name only seven times.  He is described as "Deutsche Bank's CFO [since] July 2017," and as having become "a member of Deutsche Bank's Management Board on July 1, 2017."  SAC ¶ 18.  All of the remaining references to von Moltke pertain to his signing certain of Deutsche Bank's Annual Reports and Form 20-Fs.  SAC ¶¶ 149, 151, 153, 164, 166, and 168.

As with each of the other Individual Defendants described above, the Complaint lacks: (1) any specific allegation of scienter or of any false or misleading statement by von Moltke, or (2) any allegation that von Moltke did not honestly believe in the accuracy of the documents he signed at the time that he signed them.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic* v. *Twombly*, 550 U.S. 544, 570 (2007); *Morrow* v. *Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (courts are "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation").

Securities fraud claims are subject to the heightened pleading requirements of both Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA").  Rule 9(b) requires plaintiffs to set forth "with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  The PSLRA compels plaintiffs to "specify each

statement alleged to have been misleading" and "the reason or reasons why the statement is

misleading." 15 U.S.C. § 78u–4(b)(1)(B). Plaintiffs have not satisfied this high standard in any

of their allegations, including by engaging in improper group pleading. Plaintiffs repeatedly

make vague allegations about "Defendants" and the "Individual Defendants" without specifying

which particular defendant is responsible for which particular statement. *See, e.g.*, SAC ¶¶ 21,

22, 222, 223. "The PSLRA 'requires plaintiffs to specify the role of each defendant,

demonstrating each defendant's involvement in misstatements and omissions.' Because

Plaintiffs have failed to detail specific actions of the individual board members, Plaintiffs have

not sufficiently pled under the PSLRA." *Rescue Mission of El Paso, Inc.* v. *K-Sea*

*Transportation Partners L.P.*, 2013 WL 3087078, at \*28 (D. N.J. June 14, 2013) (Walls, J.)

(quoting *Winer Family Trust* v. *Queen*, 503 F.3d 319, 335-36 (3d Cir. 2007)).

  In order to rely on a confidential witness statement, Plaintiffs must plead the "bas[e]s of

knowledge, the reliability of the sources, the corroborative nature of other facts alleged, . . . the

coherence and plausibility of the allegations, and similar indicia," *California Public Employees'*

*Retirement System* v. *Chubb Corp.*, 394 F.3d 126, 147 (3d Cir. 2004), including "(1) the time

period that the confidential source worked at the defendant-company, (2) the dates on which the

relevant information was acquired, . . . (3) the facts detailing how the source obtained access to

the information," *National Junior Baseball League* v. *Pharmanet Development Grp.*, 720 F.

Supp. 2d 517, 538 (D. N.J. 2010) (Wolfson, J.) (citation omitted), and (4) that plaintiffs have

spoken directly with the confidential witnesses, *Long Miao* v. *Fanhua, Inc*., 442 F. Supp. 3d 774,

800 n.22 (S.D.N.Y. 2020); *In re Lehman Brothers Securities & ERISA Litigation,* 2013 WL

3989066, at \*4 (S.D.N.Y. July 31, 2013). The quantity of statements included in the Complaint

cannot overcome these fundamental pleading deficiencies. *Chan* v. *New Oriental Education &*

*Technologies Grp.*, 2019 WL 2865452, at *9 (D. N.J. July 3, 2019) (Hayden, J.).  Plaintiffs'

failure to satisfy these standards should preclude the Court's consideration of the confidential

witness statements alleged in the Complaint.[4]  *See Institutional Investors Grp.* v. *Avaya, Inc.*, 564

F.3d 242, 263 (3d Cir. 2009).

## ARGUMENT

### I.      PLAINTIFFS FAIL TO STATE A CLAIM OF SECURITIES FRAUD UNDER SECTION 10(B)

To allege a claim under Section 10(b) and Rule 10b-5, Plaintiffs must plead six elements:

"(1) a material misrepresentation or omission, (2) scienter, (3) a connection between the

misrepresentation or omission and the purchase or sale of a security, (4) reliance upon the

misrepresentation or omission, (5) economic loss, and (6) loss causation."  *City of Edinburgh

Council* v. *Pfizer, Inc.*, 754 F.3d 159, 167 (3d Cir. 2014).  Because Plaintiffs' claim fails under

the first two prongs, the Court need not address the latter four on this motion.

#### A.      Plaintiffs Fail to Allege an Actionable Misstatement or Omission

Rule 10b-5 makes it unlawful for any person "[t]o make any untrue statement of a

material fact or to omit to state a material fact necessary in order to make the statements made, in

light of the circumstances under which they were made, not misleading."  17 C.F.R. § 240.10b-

5(b) (2019).  In order to state a claim for fraud under Section 10(b), "'a plaintiff must show that

the defendant made a statement [or omission] that was '*misleading* as to a *material* fact.'"  *In re

Cognizant Technology Solutions Corp. Securities Litigation*, 2020 WL 3026564, at *10 (D. N.J.

June 5, 2020) (Salas, J.) (citing *Matrixx Initiatives, Inc.* v. *Siracusano*, 563 U.S. 27, 38 (2011));

---

[4]  Specifically, Plaintiffs do not explain *how* the confidential witnesses obtained access to the alleged
information.  *See, e.g.*, SAC ¶¶ 57, 58, 64, 65, 67.  Nor do they allege *how* the alleged misstatements
were false or misleading *when they were made*.

*see also Pfizer*, 754 F.3d at 168 (plaintiffs must allege with "exacting" particularity the reasons why and how the statements were false and misleading when made).

Here, Plaintiffs allege that the following statements in various filings and public statements spanning four years are materially false and misleading:

- "We are exiting client relationships where we consider . . . risks to be too high while also strengthening our client on-boarding and know-your client (KYC) procedures." Annual Report 2016 at 41; Annual report 2017 at 5; Annual report 2018 at 5; SAC ¶¶ 136, 151, 166.

- "Major achievements in 2016 included . . . substantial investment in our control functions, including the ongoing implementation of a more comprehensive Know-Your-Client (KYC) process and an off-boarding process for higher risk clients." 2016 Form 20-F at 49.

- "Compliance: Conformity with the law and adherence to regulations and standards. How we assess and accept clients: We have developed effective procedures for assessing clients (Know Your Customer or KYC) and a process for accepting new clients in order to facilitate comprehensive compliance. Furthermore they help us to minimize risks relating to money laundering, financing of terrorism and other economic crime. Our KYC procedures start with intensive checks before accepting a client and continue in the form of regular reviews. Our procedures apply not only to individuals and corporations that are or may become our direct business partners, but also to people and entities that stand behind them or are indirectly linked to them." SAC ¶¶ 141, 156, 171.

- "DB has developed and implemented a comprehensive set of measures to identify, manage and control its AML risk. These measures are: A robust and strict KYC program. . . . 6.3. KYC Program.  DB has implemented a strict group-wide KYC program to ensure all kinds of customers (natural or legal persons or legal structures, correspondent banks) are subject to adequate identification, risk rating and monitoring measures. This program has been implemented globally and throughout all business divisions. KYC includes not only knowing the clients and entities the Bank deals with (either as a single transaction or ongoing relationship), or renders services to, but also the Ultimate Beneficial Owners (UBOs), Legal Representatives and Authorised Signatories as appropriate. The program includes strict identification requirements, name screening procedures and the ongoing monitoring and regular review of all existing business relationships. Special safeguards are implemented for business relationships with politically exposed persons (PEPs) and clients from countries or industries deemed high risk."  SAC ¶¶ 143, 158, 173.

- "KYC is an ongoing process throughout the life cycle of a client relationship . . . As part of our regular client due diligence, we screen our relationships against internal

and external criteria, e.g. relating to Politically Exposed Persons (PEPs), terrorism, or sanctions."  SAC ¶¶ 162, 175.

- "[T]hat the Bank's newly-implemented KYC program "pay[s] special attention to high-risk clients (such as politically exposed persons [PEP]) . . . Clients are assessed as part of due diligence and are regularly screened against internal and external criteria. In 2017, we continued to roll out an extended screening program, which serves as the basis for further enhancement with regards to screening effectiveness and efficiency."  SAC ¶ 145.

Each of these statements was included as a part of Deutsche Bank's disclosures concerning its ongoing efforts to strengthen and remediate deficiencies with AML and KYC processes.  *See* 2017 Form 20-F at 28-29; 2017 Non-Financial Report at 42.  None of these statements gives rise to an actionable violation of the securities laws.

### 1.   Deutsche Bank's Statements Concerning its Compliance Controls Were Aspirational and Are Not Actionable

Plaintiffs' attempt to transform Deutsche Bank's statements concerning compliance procedures into misstatements that support their securities fraud claims fails on its face, because it is well-established that "vague and general statements of optimism" and "aspirational goal statements" are not actionable.  *Hall* v. *Johnson & Johnson*, 2019 WL 7207491, at *15 (D. N.J. Dec. 27, 2019) (Wolfson, C.J.) (citing *In re Advanta Corp. Securities Litigation*, 180 F.3d 525, 538 (3d Cir. 1999), *overruled in part on other grounds*, *Tellabs*, 551 U.S. 308).

Plaintiffs allege that Deutsche Bank "made materially false and misleading statements regarding Deutsche Bank's [KYC] processes, a critical part of the Bank's AML procedures," including statements that "Deutsche Bank has 'developed effective procedures for assessing clients . . . in order to facilitate comprehensive compliance,'" that its "KYC procedures start with intensive checks," and that "its 'robust and strict' KYC program 'includes strict identification requirements.'"  SAC ¶ 4.  But Deutsche Bank's statements regarding its belief as to the effectiveness of its internal controls were statements of opinion, not guarantees, which cannot

sustain securities claims.  *See, e.g.*, *City of Pontiac Policemen's & Firemen's Retirement System* v. *UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014) ("It is well-established that general statements about reputation, integrity, and compliance with ethical norms are inactionable 'puffery,' meaning that they are 'too general to cause a reasonable investor to rely upon them.'"); *In re UBS AG Securities Litigation*, 2012 WL 4471265, at *34 (S.D.N.Y. Sept. 28, 2012) (statements that UBS went "above and beyond what laws and regulations require" and that UBS "adheres to high ethical standards" to be non-actionable puffery).

Indeed, courts have already dismissed actions based on nearly identical statements in Deutsche Bank's public disclosures.  For example, in a decision affirmed by the Second Circuit Court of Appeals, the Southern District in *In re DB* rejected as inactionable statements that Deutsche Bank "compl[ied] with all laws or regulations," "[did] not engage with any external party that [wa]s involved in illegal or improper activities," was "geared to strict conformity with the law and has been achieving good results for years," and "[wa]s committed to ensuring the robust risk management of financial crime."  2017 WL 4049253, at *6 n.4.  In finding these alleged misstatements inadequate, the court reaffirmed the well-settled notion that "statements of general corporate optimism," such as those described above and those listed in the Complaint, "do not give rise to securities violations."  *Id.* at *6; *see also Green*, 2019 WL 4805804, at *3 (statements concerning the effectiveness of Deutsche Bank's internal controls were not actionable).  Because Plaintiffs premise their securities claims on precisely this type of statement, their claims must be dismissed.

## 2.  The Alleged Misstatements Are Immaterial as a Matter of Law

In order to state a claim for securities fraud, "a plaintiff must show that the defendant made a statement [or omission] that was '*misleading* as to a *material* fact.'"  *In re Cognizant*, 2020 WL 3026564, at *10 (citation omitted).  A misrepresentation or omission of fact is material

"if there is a substantial likelihood that a reasonable shareholder would consider it important" in making an investment decision, and there is a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic Inc.* v. *Levinson*, 485 U.S. 224, 231-32 (1988) (citation omitted); *Fan* v. *StoneMor Partners LP*, 927 F.3d 710, 716 (3d Cir. 2019) ("Materiality may be found when certain information, if disclosed, 'would have been viewed by the reasonable investor as having significantly altered the total mix of information available to that investor.'") (citation omitted).

The "total mix" for purposes of the materiality inquiry includes all information reasonably available to the shareholders, including information contained in SEC filings. *See Goldsmith* v. *Weibo Corp.*, 2018 WL 2733694, at *11 (D. N.J. June 7, 2018) (Chesler, J.). This also includes information in the public domain. *See Garber* v. *Legg Mason, Inc.*, 347 F. App'x 665, 668 (2d Cir. 2009) (Summary Order) (noting that when deciding whether there has been a material misrepresentation or omission, a court should consider "the 'total mix' of information made available," including "information already in the public domain and facts known or reasonably available to the shareholders") (citations omitted); *United Food & Commercial Workers Union Local 880 Pension Fund* v. *Chesapeake Energy Corp.*, 774 F.3d 1229, 1238 (10th Cir. 2014) (same). Here, the investing public was provided with more than enough information to understand the state of Deutsche Bank's AML and KYC processes.

*First*, as detailed above and in the Complaint, Deutsche Bank has been subject repeatedly to regulatory scrutiny, particularly in relation to its efforts to remediate AML deficiencies, and has disclosed each of those regulatory inquiries to the extent required, as well as Deutsche Bank's efforts to address them. SAC ¶ 2 ("Deutsche Bank has been the subject of repeated

-17-

scandals, investigations and regulatory enforcements for years because of its anti-money laundering ('AML') compliance failures and deficiencies in its disclosure controls and procedures, causing it to have one of the lowest gradings offered by the U.S. Federal Reserve."); *id.* ¶ 34 ("Many recent financial crimes and AML scandals have left deep scars on Deutsche Bank's reputation, once the world's largest financial institution by assets."); *id.* ¶ 74 ("On January 30, 2017, as part of a settlement agreement, the U.K. Financial Conduct Authority ('Authority') fined Deutsche Bank for permitting billions of dollars in laundered money to occur through the Bank's facilities. . . .  That assessment commenced in 2015 and 'found serious deficiencies in Deutsche Bank's AML control framework and serious CDD [customer due diligence], EDD [enhanced due diligence], and ongoing monitoring failings.'"); *id.* ¶ 75 ("Specifically, the Authority found that '[a]ll of the medium and low risk files reviewed during the SAMLP [the Authority's Systematic Anti-Money Laundering Programme] had inadequate CDD, including: missing identification and verification documents; inadequate information about UBOs [ultimate beneficial owners]; a lack of information about corporate ownership structures . . . and a failure to identify PEPs as connected parties. ***Similarly, almost all of the higher risk files had inadequate EDD, with deficiencies such as: limited evidence of meetings with customers; and inappropriate disregarding of negative press coverage.  The common theme in both the CDD and EDD was a failure to evidence source of funds and wealth where appropriate*** and a lack of understanding of the customer's business.'"); *id.* ¶ 76 ("Moreover, in late 2016 and early 2017, during their meetings with the Authority, Deutsche Bank admitted to the Authority that there were around 5000 orphan accounts within the Bank as of 2014, which 'had not been onboarded in line with KYC requirements.'").  Deutsche Bank's 2015 Form 20-F, which was filed prior to the purported Class Period, also disclosed a variety of control

deficiencies faced by Deutsche Bank.  *See* Ramesh Decl. Ex. 2 (2015 Form 20-F) at 33 ("We are investigating the circumstances around equity trades entered into by certain clients in Moscow and London and have advised regulators and law enforcement authorities in several jurisdictions about those trades . . . .  The total volume of the transactions under review is significant. Our internal investigation of potential violations of law, regulation and policy and into the related internal control environment remains ongoing; to date it has identified certain violations of our policies and deficiencies in our control environment."); *see also* 2016 Form 20-F at 98 (disclosing failure of Bank employees to issue suspicious activity reports under the Anti-Money Laundering Act in connection with the trading of $CO_2$ emission rights).

*Second*, Deutsche Bank self-disclosed shortfalls in its internal control environment in its 2017, 2018, and 2019 Forms 20-F within the Class Period — the very documents Plaintiffs claim to be materially false or misleading.  *See, e.g.*, 2017 Form 20-F at 28-29 ("We have identified the need to strengthen our internal control environment . . . Both our internal control environment and the infrastructure that underlies it fall short in a number of areas of our standards for completeness and comprehensiveness and are not well integrated across the Bank. . . . [R]eviews and audits have identified various areas for improvement relating to a number of elements of our control environment. . . .").  These public filings also acknowledge, before each alleged misstatement identified by Plaintiffs, that there are "inherent limitations to the effectiveness of any control system, including disclosure controls and procedures.  Accordingly, even effective disclosure controls and procedures can provide only reasonable assurance of achieving their control objectives."  *Id.* at 96; Compl. ¶ 33.

No reasonable investor could have been misled by Deutsche Bank's aspirational statements regarding AML remediation efforts and effective internal controls over financial

reporting.  *See Fan*, 927 F.3d at 716-17 ("statements Plaintiffs identify as fraudulently misleading are rendered immaterial given the pertinent disclosures") (citing *Ieradi* v. *Mylan Labs., Inc.*, 230 F.3d 594, 599-600 (3d Cir. 2000) (discussing how disclosures present in Defendant's Form 10-Qs were sufficient to alert a reasonable investor to the relevant risks)).

### 3.   Plaintiffs Do Not Adequately Allege the Falsity of the Alleged Misstatements

The Complaint improperly conflates alleged failures in Deutsche Bank's internal controls with misstatements concerning Deutsche Bank's attempts to improve those systems over time. Specifically, Plaintiffs allege misrepresentations concerning deficiencies in Deutsche Bank's AML and KYC processes (*see, e.g.*, SAC ¶¶ 4, 46, 47, 136, 145, 162, 175) and attempt to link these publicly acknowledged deficiencies to regulatory actions against Deutsche Bank concerning Jeffery Epstein, Russian and Eastern European oligarchs, and individuals and organizations purportedly connected to criminal activities.  This overreaching fails because, as in *In re DB*, "[t]he complaint alleges no facts to suggest that the Bank did not, for example, review or strengthen its compliance and AML programs, that the Bank did not frequently review its AML goals."  2017 WL 4049253, at *6.  While Plaintiffs allege that Deutsche Bank's AML and KYC procedures may have been deficient, they do not, and cannot, allege that Deutsche Bank did not actually make efforts to improve them, even if those efforts were ultimately less than completely successful.  *Id.* at *7 ("These statements are not actionable because 'Plaintiff alleges neither facts showing that the descriptions of the processes were false or misleading at the time they were included in the public statements, nor facts showing that the processes were not followed.'").  Moreover, while Plaintiffs allege that "[d]uring the Class Period, the Bank failed to comply with KYC procedures" (SAC ¶ 34), the Complaint omits Deutsche Bank's repeated warnings in the same filings that it "may be unable to complete these initiatives as quickly as we

intend or as our regulators demand, and our efforts may be insufficient to remediate existing

deficiencies and prevent future deficiencies or to result in fewer litigations or regulatory and

enforcement investigations, proceedings and criticism in the future." 2017 Form 20-F. These

fulsome disclosures preclude Plaintiffs' claims. *Sfiraiala*, 729 F. App'x at 59 (considering "all

of plaintiffs' arguments on [] appeal and find[ing] in them no basis for reversal").

Plaintiffs' entire theory of liability is premised on the concept that Deutsche Bank failed

to address the numerous deficiencies and failures of Deutsche Bank's AML and KYC controls.

*See, e.g.*, SAC ¶ 61 ("CW3, recounted that during the Class Period, there were critical audit

findings in three different areas showing that Deutsche Bank's AML processes were deficient.");

*id.* ¶ 66 ("CW4 also recounted that during his/her employment with the Bank, an audit of the

Bank's Enhanced Due Diligence ('EDD') research and reporting process found that the EDD

reports lacked key details and supporting files – such as the outcome of a client that was found to

be under investigation."); *id.* ¶ 67 ("In a similar vein, CW5 recalled that during his/her tenure at

Deutsche Bank, including in 2017 and 2018, there were numerous 'critical audit findings' related

to improper KYC and customer due diligence practices when dealing with high-net-worth

clients."); *id.* ¶ 68 ("CW6 recounted that his/her team frequently presented concerns about the

sources of funds of oligarchs who were the Bank's clients, and about their questionable business

practices during Risk Identification Forums ('RIF'), up to and including October 2020."); *id.* ¶

134 ("CW11 said the AFC unit regularly approved new clients, despite their cases being

escalated because of red flags linked to adverse news findings, location, industry and other

information that came up during the KYC/due diligence process."). At best, this laundry list of

allegations reflects a claim of corporate mismanagement, which is not actionable. *See In re*

*Hertz Global Holdings Inc.*, 905 F.3d 106, 117 (3d Cir. 2018) ("We have long held 'that an

allegation of mismanagement on the part of a defendant will not alone support' a securities fraud claim.") (citation omitted); *Takata*, 2020 WL 2079375, at \*13 ("It is well-settled law that corporate mismanagement is not actionable under Section 10(b).") (citation omitted); *In re Magnum Hunter*, 26 F. Supp. 3d at 284, 292  ("[T]he allegations support an inference of the defendant having had . . . control deficiencies . . . [however] there is no factual basis in the complaint to infer that, when the company made its statements . . . it was acting with a knowledge of falsity or an intent to defraud . . . Mere allegations of corporate mismanagement are not actionable.").

### 4.  **Plaintiffs Fail to Plead an Actionable Omission**

Plaintiffs allege that Deutsche Bank failed to disclose that it was not conducting due diligence on high-net-worth clients.  SAC ¶¶ 142, 146, 157, 161, 172.  But Deutsche Bank had no duty to disclose any such information because it had already reported all relevant material information in the robust disclosures it included in its filings.  *See In re DB*, 2017 WL 4049253, at \*7 ("Plaintiffs' argu[ment] that Defendants had a duty to disclose the Bank's internal control deficiencies . . . fails.").  As discussed in Section I.A.3, this type of alleged omission may only support a nonactionable claim for corporate mismanagement; it cannot sustain Plaintiffs' claim for securities fraud.

A duty to disclose arises when disclosure is necessary to make other related statements not misleading or where required by statute.  *Williams* v. *Globus Medical, Inc*., 869 F.3d 235, 241 (3d Cir. 2017) ("[Section] 10(b) and Rule 10b-5(b) do not create an affirmative duty to disclose any and all material information."); *see also Chiarella* v. *United States*, 445 U.S. 222, 235 (1980) ("We hold that a duty to disclose under § 10(b) does not arise from the mere possession of nonpublic market information."); *In re Eros International Securities Litigation*, 2017 WL 6405846, at \*6 (S.D.N.Y. Sept. 22, 2017) ("Disclosure is not required simply because

-22-

an investor might find the information relevant or of interest."), *aff'd*, 735 F. App'x 15 (2d Cir. 2018).  "[D]isclosure is not a rite of confession, and companies do not have a duty to disclose uncharged, unadjudicated wrongdoing."  *In re Galena Biopharma, Inc. Securities Litigation*, 2019 WL 5957859, at *10 (D. N.J. Nov. 12, 2019) (Vazquez, J.) (citing *In re Morgan Stanley Information Fund Securities Litigation*, 592 F.3d 347, 365 (2d Cir. 2010)).  No duty to disclose arises here, where Deutsche Bank fully disclosed all relevant information.

### B.  Plaintiffs Fail to Adequately Allege Scienter

Plaintiffs' Section 10(b) claim fails for the additional and independent reason that Plaintiffs do not allege facts supporting a strong inference of scienter — a state of mind "embracing intent to deceive, manipulate, or defraud."  *Tellabs*, 551 U.S. at 319.  A securities fraud claim will not survive a motion to dismiss unless it "state[s] with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind [*i.e.*, scienter]."  15 U.S.C. § 78u–4(b)(2)(A); *Fain* v. *USA Technologies, Inc.*, 707 F. App'x 91, 95 (3d Cir. 2017) (Unpublished) (The PSLRA requires that a complaint state "with particularity facts giving rise to a 'strong inference' that the defendants acted with intent to deceive, manipulate, or defraud.").  For an inference of scienter to qualify as "strong," it "must be more than merely 'reasonable' or 'permissible' — it must be cogent and compelling, thus strong in light of other explanations."  *Tellabs*, 551 U.S. at 324; *see also Winer Family Trust*, 503 F.3d at 327 (finding that the inference must be "at least as compelling as any opposing inference" of non-fraudulent intent).  "When the defendant is a corporate entity . . . the pleaded facts must create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter."  *In re DB*, 2017 WL 4049253, at *8.  Plaintiffs' generic allegations do not satisfy this high standard.

### 1. Plaintiffs Do Not Allege That Deutsche Bank Had Any Motive to Defraud

Plaintiffs' theory of scienter rests entirely upon conclusory allegations that the prospect of profits incentivized Defendants to commit the alleged fraud. This is precisely the type of "generic corporate motive" that cannot support the requisite strong inference of scienter. *In re Amarin Corp.*, 2015 WL 3954190, at *11 (D. N.J. June 29, 2015) (Wolfson, J). Indeed, lone allegations of "motive and opportunity," as Plaintiffs have asserted here, are not independently sufficient to plead scienter. *Id* at *10. Instead, "plaintiffs must assert a concrete and personal benefit" to the individuals who allegedly perpetrated the fraud. *Avaya*, 564 F.3d at 278.

Plaintiffs' profit motive claims here are similar to those rejected by the Third Circuit in *Avaya*. In affirming dismissal of a motion to dismiss, the Third Circuit found that plaintiffs failed to allege a sufficient motive and opportunity where they merely alleged "general motives to aid the company" and inflate stock prices. *Id*. at 279. Here, Plaintiffs make nearly identical claims, only alleging that Defendants acted with the same motives common to virtually all corporate officers and corporations. *See, e.g.*, SAC ¶ 6 (alleging that "Deutsche Bank's relentless pursuit of profits has been its modus operandi for years, commencing with its former CEOs onboarding, retaining and servicing Russian oligarchs and other unsavory high-net-worth individuals and their affiliated companies."), SAC ¶ 42 ("To profiteer from the fees and referrals generated by Epstein, Deutsche Bank continuously allowed Epstein to use the Bank's services to cover up old crimes and to facilitate new ones—a major compliance failure and reputational stain on the Bank."); SAC ¶ 48 ("Deutsche Bank repeatedly put the pursuit of profits above its responsibilities to safeguard against financial and other crimes, and repeatedly traded its reputation for profits."); SAC ¶ 82 (reputational concerns were "meaningless to Deutsche Bank, whose main goal was profiteering"). These allegations are wholly insufficient to support the requisite strong inference of scienter. *Avaya*, 564 F.3d at 278.

### 2. Plaintiffs Do Not Adequately Allege Conscious Misbehavior or Recklessness

Unable to allege any plausible motive to commit fraud, Plaintiffs must instead meet the more onerous burden of pleading, with particularity, facts that constitute "strong circumstantial evidence of conscious misbehavior or recklessness." *In re Cognizant*, 2018 WL 3772675, at *13 (citing *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1418 (3d Cir. 1997)). This they cannot do. Conscious misbehavior means "intentional fraud or other deliberate illegal behavior." *Pathfinder Management, Inc*. v. *Mayne Pharma PTY*, 2008 WL 3192563, at *12-*13 (D. N.J. Aug. 5, 2008) (Martini, J.) ("[I]t is not enough for plaintiffs to merely allege that defendants 'knew their statements were fraudulent or that defendants 'must have known' their statements were false.") (citing *McLean* v. *Alexander*, 599 F.2d 1190, 1197 (3d Cir. 1979)). Reckless disregard requires that Plaintiffs show "an extreme departure from the standards of ordinary care, . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *In re Cognizant*, 2018 WL 3772675, at *14 (citing *Avaya*, 564 F.3d at 267 n.42).

Plaintiffs' inability to allege that any Defendant had knowledge of or access to any information contrary to any purported misrepresentation precludes them from adequately alleging either conscious misbehavior or recklessness. *See Winer Family Trust*, 503 F.3d at 328; *see also In re DB*, 2017 WL 4049253, at *8 (finding no scienter where plaintiffs failed to "allege specific facts allowing for a 'strong inference' that defendants acted recklessly in their statements to the public"). Not only are Plaintiffs unable to allege that Deutsche Bank did not implement any remediation efforts to resolve alleged AML weaknesses, but Plaintiffs also fail to allege that any Individual Defendant was aware of any specific contradictory information at the time they made the statements at issue (*see infra* Section I.B.3). *See Sfiraiala*, 729 F. App'x at

59 ("[P]laintiffs' reliance on regulatory reports . . . further fails to raise an inference of scienter because the reports largely do not concern . . . the subject matter of the alleged misrepresentations.").  For example, Plaintiffs allege that Defendant Cryan "became personally involved with a 2016 SAR filed by Bank of America on Deutsche Bank" regarding "concerns that Deutsche Bank's KYC procedures were not robust and permitted money laundering."  SAC ¶ 59.  This conclusory allegation neither indicates that John Cryan engaged in any wrongdoing nor that he possessed any information that would lead him to believe that Deutsche Bank's statements concerning its AML and KYC processes were false when made.

Deutsche Bank's open acknowledgment of its internal control challenges and its disclosures of its effort to resolve them supports the more plausible, benign inference that Deutsche Bank was earnestly attempting to resolve ongoing issues.  *See Sfiraiala*, 729 F. App'x at 59; *Kumar* v. *Kulicke & Soffa Industries, Inc.*, 2019 WL 5081896, at *9 (E.D. Pa. Oct. 9, 2019) (remedial efforts "after the discovery of weaknesses supports the non-culpable inference that [defendant] was attempting to improve its processes to prevent future mistakes"); *see also Messner* v. *United States Technologies, Inc.*, 2016 WL 1466543, at *11 (E.D. Pa. Apr. 13, 2016) (recognizing that a company's plans for "significant remedial actions" supported a non-culpable inference because the plans demonstrated that the defendants had discovered an error, and were attempting to improve their business practices in an effort to reduce the likelihood of another reporting error), *aff'd sub. nom.*, *Fain*, 707 F. App'x 91.

### 3.  Plaintiffs' Allegations Concerning Confidential Witness Statements Do Not Support an Inference of Scienter

Plaintiffs' reliance on allegations based on information from purported confidential witnesses does not mitigate the requirement that Plaintiffs plead scienter with particularity.  *See Avaya*, 564 F.3d at 263 ("[The] PSLRA imposes a particularity requirement on all allegations,

whether they are offered in support of a statement's falsity or of a defendant's scienter."). Because the confidential witness statements alleged in the Complaint do not connect the confidential witnesses' supposed personal knowledge to Defendants' personal knowledge, they do not support an inference of scienter.  *See Martin* v. *GNC Holdings, Inc.*, 757 F. App'x 151, 154 (3d Cir. 2018) (Unpublished) (dismissing securities claims for lack of scienter where confidential witnesses failed to provide specific facts about defendants "learning of potentially tainted products prior to making the actionable statements" concerning the quality of defendants' products); *In re Hertz Global Holdings, Inc. Securities Litigation*, 2015 WL 4469143, at *20 (D. N.J. July 22, 2015) (Arleo, J.) ("The CW allegations . . . imply nothing about Defendants' views on [the relevant] issues.  The CW allegations therefore fail to support a strong inference of scienter."); *In re Synchronoss Technologies, Inc. Securities Litigation*, 2019 WL 2849933, at *9 (D. N.J. July 2, 2019) (Wolfson, C.J.) (finding confidential witness allegations failed to establish that defendant knew alleged misstatements were false when made); *National Junior Baseball League*, 720 F. Supp. 2d at 555-56 ("In sum, in over fifty paragraphs of statements made by confidential witnesses, not one witness claims to have met, emailed with, spoken to, or otherwise heard or read anything by, either of the Individual Defendants . . . which would sufficiently raise a strong inference of scienter that Individual Defendants knew their public statements and disclosures were false.").

For example, Plaintiffs rely on CW1 to allege that Deutsche Bank onboarded and maintained relationships with high-risk individual clients who were introduced by members of Deutsche Bank's Board despite red flags of misconduct.  SAC ¶ 49.  To support this claim, Plaintiffs describe CW1's impression of a 2018 incident in which Defendant Cryan personally intervened to facilitate the sale of property to "a controversial Russian PEP," allegedly

overruling the U.S. Reputational Risk Committee's decision to block the sale.  SAC ¶ 57.  But Plaintiffs also allege that CW1 left Deutsche Bank in mid-2015, well before the alleged incident purportedly occurred.  SAC ¶ 23.  Because there is no basis to plausibly assert that CW1 had any personal knowledge of the alleged event, the Court should disregard these allegations.  *See Schiro* v. *Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 305 (S.D.N.Y. 2019) ("In order for a court to credit the allegations of confidential witnesses, the witnesses must be 'described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged.'") (citing *Novak* v. *Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000)).

Similarly, Plaintiffs rely on CW2 to allege that Deutsche Bank's Management Board approved onboarding and extending loans to high-risk clients over the objections of other Deutsche Bank employees.  SAC ¶ 58.  As an initial matter, this allegation should be set aside because Plaintiffs fail to allege that anyone ever shared any specific concerns or objections regarding any of these clients with any specific Defendant, much less the details of any particular incident tied to any certain date or time.  *See Schiro*, 396 F. Supp. 3d at 304 ("As a matter of common sense, 'red flags are only suggestive of fraud to those who were or should have been aware of them.'") (citation omitted); *Glaser* v. *The9, Ltd.*, 772 F. Supp. 2d 573, 589-90 (S.D.N.Y. 2011) ("[E]ven confidential high level executives' statements will be insufficient absent some allegation that the witness communicated with the individual defendants claimed against in the case, or else that the witness was privy to the individual defendants' knowledge.").  Plaintiffs also fail to sufficiently plead any basis for CW2's knowledge, and instead ask the Court to simply infer that CW2 had direct knowledge of the described events.  *See Schiro*, 396 F. Supp. 3d at 305.  These conclusory allegations cannot support an inference of scienter.  *See Patel*

v. *L-3 Communications Holdings Inc.*, 2016 WL 1629325, at \*9 (S.D.N.Y. Apr. 21, 2016)
(finding no scienter where plaintiffs failed to allege "what the Whistleblower actually told
personnel"); *Novak*, 216 F.3d at 309 ("Where plaintiffs contend defendants had access to
contrary facts, they must specifically identify the reports or statements containing this
information.").

### 4.  Plaintiffs Do Not Offer Any Other Basis From Which to Infer Scienter

Plaintiffs' allegations that the Individual Defendants signed public filings (*e.g.*, SAC ¶¶
136, 138, 145, 149) are also insufficient to establish scienter, *In re Cendant Corp. Securities
Litigation*, 76 F. Supp. 2d 539, 547 (D. N.J. 1999) (Walls, J.) ("Allegations that a director or
officer signed public disclosures and/or was involved in the company's daily operations, standing
alone, will not satisfy the pleading requirements of the PSLRA or Rule 9(b)."), as are claims that
Individual Defendants should have known that their statements were false simply by virtue of
their corporate positions.  *Patel* v. *Zoompass Holdings, Inc.*, 2018 WL 10154207, at \*9 (D. N.J.
Aug. 8, 2018) (Linares, C.J.) (finding that allegations that defendants "should have known that
their statements were false or misleading because of their position within the company is the type
of '[g]eneralized imputation of knowledge' that is insufficient to support an inference of
scienter.") (citing *In re Advanta*, 180 F.3d at 539); *Palladin Partners* v. *Gaon*, 2006 WL
2460650, at \*13 (D. N.J. Aug. 22, 2006) (Martini, J.) ("[M]ere membership on an audit
committee is 'insufficient to establish a strong inference of scienter unless plaintiffs could plead
that the audit committee was given information that should have alerted [defendant] to the fact
that the company's financials were false.'") (citation omitted).

Plaintiffs also may not rely on a theory of "collective scienter" to establish scienter as to
the Individual Defendants, because Plaintiffs provide no basis on which to impute the knowledge
of other Deutsche Bank employees to them.  *See, e.g.*, *In re Tyson Foods, Inc. Securities*

*Litigation*, 2004 WL 1396269, *12 (D. Del. June 17, 2004), *aff'd*, 155 F. App'x 53 (3d Cir.

2005) (dismissing securities fraud claims against a corporate defendant where there was

insufficient evidence of scienter on the part of individual corporate officers and directors of the

company).

II.       **PLAINTIFFS' CONTROL PERSON CLAIM FAILS AS A MATTER OF LAW**

Because a "control person" claim under section 20(a) is derivative in nature, it requires

that Plaintiffs plead a predicate violation of the federal securities laws.  Control person liability

cannot exist in the absence of an independent, primary violation of the federal securities laws.  *In*

*re Advanta*, 180 F.3d at 541; *In re Milestone Scientific Securities Litigation*, 103 F. Supp. 2d

425, 474 (D. N.J. 2000) (Lechner, J).  Thus, Section 20(a) liability must be predicated upon an

independent, primary violation of the federal securities laws.  *In re Rockefeller Center*

*Properties, Inc. Securities Litigation*, 311 F.3d 198, 211 (3d Cir. 2002).  Because Plaintiffs fail to

state a claim under Section 10(b), the control person claim under Section 20(a) fails as a matter

of law.  *See In re Advanta*, 180 F.3d at 541.

Plaintiffs' control person claim fails for an additional reason:  the total absence of any

particularized allegations of culpable conduct by the allegedly controlling persons in the

particular transaction at issue.  *See In re Take-Two Interactive Securities Litigation*, 551 F. Supp.

2d 247, 307-08 (S.D.N.Y. 2008) ("Plaintiffs must plead culpable participation with particularity,

as required by the PSLRA.") (citations omitted).

## CONCLUSION

For the foregoing reasons, Plaintiffs' Second Amended Complaint should be dismissed.

Dated: April 15, 2021                         Respectfully submitted,

                                              /s/ Mark C. Errico
                                              Mark C. Errico
                                              Squire Patton Boggs (US) llp
                                              382 Springfield Avenue
                                              Summit, New Jersey 07901
                                              973-848-5600
                                              973-848-5601
                                              mark.errico@squirepb.com

                                              David G. Januszewski (admitted *pro hac vice*)
                                              Sheila C. Ramesh (admitted *pro hac vice*)
                                              Cahill Gordon & Reindel llp
                                              32 Old Slip
                                              New York, New York 10005
                                              212-701-3000
                                              djanuszewski@cahill.com
                                              sramesh@cahill.com

                                              *Attorneys for Defendants Deutsche Bank
                                              Aktiengesellschaft, John Cryan, Christian
                                              Sewing, Marcus Schenck, and James Von
                                              Moltke*