# EXHIBIT 9

Deutsche Bank



# Annual Report
# 2018

# Deutsche Bank

## The Group at a glance

| Key financial information | 2018 | 2017 |
|---|---|---|
| Post-tax return on average shareholders' equity | 0.4 % | (1.2) % |
| Post-tax return on average tangible shareholders' equity | 0.5 % | (1.4) % |
| Cost/income ratio[1] | 92.7 % | 93.4 % |
| Compensation ratio[2] | 46.7 % | 46.3 % |
| Noncompensation ratio[3] | 46.0 % | 47.0 % |
| Total net revenues, in € m. | 25,316 | 26,447 |
| Provision for credit losses, in € m. | 525 | 525 |
| Total noninterest expenses, in € m. | 23,461 | 24,695 |
| Adjusted costs[4] | 22,810 | 23,891 |
| Income (loss) before income taxes, in € m. | 1,330 | 1,228 |
| Net income (loss), in € m. | 341 | (735) |
| Basic earnings per share | € (0.01) | € (0.53) |
| Diluted earnings per share | € (0.01) | € (0.53) |
| Share price at period end | € 6.97 | € 15.88 |
| Share price high | € 16.46 | € 17.82 |
| Share price low | € 6.68 | € 13.11 |

| | Dec 31, 2018 | Dec 31, 2017 |
|---|---|---|
| CRR/CRD 4 Leverage Ratio (fully loaded) | 4.1 % | 3.8 % |
| CRR/CRD 4 Leverage Ratio (phase in) | 4.3 % | 4.1 % |
| Fully loaded CRR/CRD 4 leverage exposure, in € bn. | 1,273 | 1,395 |
| Common Equity Tier 1 capital ratio (fully loaded) | 13.6 % | 14.0 % |
| Common Equity Tier 1 capital ratio (phase in) | 13.6 % | 14.8 % |
| Risk-weighted assets, in € bn. | 350 | 344 |
| Total assets, in € bn. | 1,348 | 1,475 |
| Shareholders' equity, in € bn. | 62 | 63 |
| Book value per basic share outstanding | € 29.69 | € 30.16 |
| Tangible book value per basic share outstanding | € 25.71 | € 25.94 |
| Other Information | | |
| Branches | 2,064 | 2,425 |
| Thereof: in Germany | 1,409 | 1,570 |
| Employees (full-time equivalent) | 91,737 | 97,535 |
| Thereof: in Germany | 41,669 | 42,526 |

[1] Total noninterest expenses as a percentage of net interest income before provision for credit losses, plus noninterest income.
[2] Compensation and benefits as a percentage of total net interest income before provision for credit losses, plus noninterest income.
[3] Noncompensation noninterest expenses, which is defined as total noninterest expenses less compensation and benefits, as a percentage of total net interest income before provision for credit losses, plus noninterest income.
[4] The reconciliation of adjusted costs to noninterest expenses is provided in section "Supplementary Information (Unaudited): Non-GAAP Financial Measures: Adjusted costs" of this document.

Due to rounding, numbers presented throughout this document may not sum precisely to the totals provided and percentages may not precisely reflect the absolute figures.

# Content

## Deutsche Bank Group

| | |
|---|---|
| III | Letter from the Chairman of the Management Board |
| VI | Management Board |
| VII | Report of the Supervisory Board |
| XVI | Supervisory Board |
| XIX | Strategy |

## 1 — Management Report

| | |
|---|---|
| 2 | Operating and Financial Review |
| 33 | Outlook |
| 39 | Risks and Opportunities |
| 44 | Risk Report |
| 154 | Compensation Report |
| 199 | Corporate Responsibility |
| 199 | Employees |
| 204 | Internal Control over Financial Reporting |
| 206 | Information pursuant to Section 315a (1) of the German Commercial Code and Explanatory Report |
| 210 | Corporate Governance Statement pursuant to Sections 289f and 315d of the German Commercial Code |

## 2 — Consolidated Financial Statements

| | |
|---|---|
| 212 | Consolidated Statement of Income |
| 213 | Consolidated Statement of Comprehensive Income |
| 214 | Consolidated Balance Sheet |
| 215 | Consolidated Statement of Changes in Equity |
| 221 | Consolidated Statement of Cash Flows |
| 223 | Notes to the Consolidated Financial Statements |
| 265 | Notes to the Consolidated Income Statement |
| 271 | Notes to the Consolidated Balance Sheet |
| 326 | Additional Notes |
| 383 | Confirmations |

## 3 — Corporate Governance Statement/ Corporate Governance Report

| | |
|---|---|
| 393 | Management Board and Supervisory Board |
| 408 | Reporting and Transparency |
| 408 | Related Party Transactions |
| 409 | Auditing and Controlling |
| 411 | Compliance with the German Corporate Governance Code |

## 4 — Supplementary Information

| | |
|---|---|
| 416 | Non-GAAP Financial Measures |
| 420 | Declaration of Backing |
| 422 | Imprint/Publications |

# Deutsche Bank Group

| III | Letter from the Chairman of the Management Board |
|-----|--------------------------------------------------|
| VI  | Management Board                                 |
| VII | Report of the Supervisory Board                  |
| XVI | Supervisory Board                                |
| XIX | Strategy                                         |

# PAGES iii-3 OMITTED PURSUANT TO D. N.J. ECF POLICIES AND PROCEDURES

Income before income taxes was € 1.3 billion in 2018 compared to € 1.2 billion in 2017, an increase of € 103 million or 8 % mainly driven by lower noninterest expenses partly offset by lower revenues.

Income tax expense was € 989 million in 2018, compared to € 2.0 billion in 2017 which included a one-time tax charge of € 1.4 billion attributable to the remeasurement of US deferred tax assets as a result of the US tax reform. The effective tax rate of 74 % in 2018 was mainly impacted by changes in the recognition and measurement of deferred tax assets and share-based payment-related tax effects.

The bank reported a net income of € 341 million in 2018, compared to a net loss of € 735 million in 2017. The improvement was primarily driven by the absence of the prior year's one-time tax charge and lower noninterest expenses.

The bank's CRR/CRD 4 fully loaded Common Equity Tier 1 (CET 1) ratio was 13.6 % at the end of 2018 compared to 14.0 % at the end of 2017, primarily driven by an increase in Risk weighted assets.

# Deutsche Bank Group

## Deutsche Bank: Our Organization

Headquartered in Frankfurt am Main, Germany, we are the largest bank in Germany and one of the largest financial institutions in Europe and the world, as measured by total assets of € 1,348 billion as of December 31, 2018. As of that date, we employed 91,737 full-time equivalent internal employees and operated in 59 countries out of 2,064 branches worldwide, of which 68 % were in Germany. We offer a wide variety of investment, financial and related products and services to private individuals, corporate entities and institutional clients around the world.

As of December 31, 2018, we were organized into the following three corporate divisions:

– Corporate & Investment Bank (CIB)
– Private & Commercial Bank (PCB)
– Asset Management (AM)

The three corporate divisions are supported by infrastructure functions. In addition, Deutsche Bank has a local and regional organizational layer to facilitate a consistent implementation of global strategies.

We have operations or dealings with existing or potential customers in most countries in the world. These operations and dealings include working through:

– subsidiaries and branches in many countries;
– representative offices in many other countries; and
– one or more representatives assigned to serve customers in a large number of additional countries.

We have made the following significant capital expenditures or divestitures since January 1, 2016, that are not allocated to the capital expenditures or divestitures of corporate divisions described below:

In August 2016, Deutsche Bank Group entered into an agreement to sell Deutsche Bank S.A., its subsidiary in Argentina, to Banco Comafi S.A. The transaction is part of the Group's plan to rationalize its global footprint. In June 2017, the transaction was successfully completed.

On October 26, 2016, Deutsche Bank entered into an agreement to sell its Mexican bank and broker dealer subsidiaries to Investa Bank S.A., Institución de Banca Múltiple. Investa Bank S.A. has since been renamed to Accendo Banco. Closing of the transaction was originally expected in the first half of 2018, but remains subject to regulatory approvals and other customary conditions. During the fourth quarter of 2018, Deutsche Bank notified Accendo Banco that the Group is exercising its right to terminate the purchase agreement.

Capital expenditures or divestitures related to the divisions are included in the respective Corporate Division Overview.

## Management Structure

The Management Board has structured the Group as a matrix organization, comprising (i) Corporate Divisions, (ii) Infrastructure Functions and (iii) Regions.

Pursuant to the German Stock Corporation Act, the Management Board is responsible for the executive management of Deutsche Bank. Its members are appointed and removed by the Supervisory Board, which is a separate corporate body. Our Management Board focuses on, among other topics, strategic management, corporate governance, financial accounting and reporting, resource allocation, control and risk management, and is assisted by functional committees.

Within each corporate division and region, coordination and management functions are handled by operating committees and executive committees, which help ensure that the implementation of the strategy of individual business divisions and the plans for the development of infrastructure areas are aligned to our global business objectives.

### Corporate & Investment Bank (CIB)

#### Corporate Division Overview

CIB comprises our Global Transaction Banking, Origination & Advisory, Sales & Trading (FIC) and Sales & Trading (Equity) businesses. The division brings together wholesale banking expertise across, coverage, risk management, sales and trading, Investment Banking and infrastructure across Deutsche Bank. This enables CIB to align resourcing and capital across our client and product perimeter to effectively serve the Bank's clients.

In CIB, we made the following significant capital divestiture since January 1, 2016 and no significant capital expenditures:

In early October 2017, Deutsche Bank Group signed a binding agreement to sell its Alternative Fund Services business, a unit of the Global Transaction Banking division, to Apex Group Limited. The transaction supported the Group's announced strategic priorities and was completed in the second quarter of 2018.

#### Products and Services

Global Transaction Banking (GTB) is a global provider of cash management, trade finance and securities services, delivering the full range of commercial banking products and services for both corporate clients and financial institutions worldwide.

Origination and Advisory is responsible for mergers and acquisitions (M&A) as well as debt and equity advisory and origination. Regional and industry-focused coverage teams ensure the delivery of the entire range of financial products and services to our corporate and institutional clients.

Sales & Trading (FIC) and Sales & Trading (Equity) combine sales, trading and structuring of a wide range of financial market products, including bonds, equities and equity-linked products, exchange-traded and over-the-counter derivatives, foreign exchange, money market instruments, and structured products, while Research provides analysis of markets, products and trading strategies for clients.

All our trading activities are covered by our risk management procedures and controls which are described in detail in the Risk Report.

#### Distribution Channels and Marketing

As part of our strategy, we are re-focusing and optimizing our client coverage model to the benefit of our core clients. We are exiting client relationships where we consider returns to be too low or risks to be too high while also strengthening our client on-boarding and know-your-client (KYC) procedures.

Coverage of our clients is provided by the Institutional and Treasury Coverage group, which combines our Equity and Debt sales teams, Financial Solutions Group and Corporate Banking Coverage. This new consolidated group is intended to benefit the division through closer cooperation and enhanced synergies leading to increased cross selling of products/solutions to our clients, while working closely with the Investment Banking Coverage team within Corporate Finance.

# PAGES 6-311 OMITTED PURSUANT TO D. N.J. ECF POLICIES AND PROCEDURES

2 – Consolidated Financial Statements

## Current Individual Proceedings

Set forth below are descriptions of civil litigation and regulatory enforcement matters or groups of matters for which the Group has taken material provisions, or for which there are material contingent liabilities that are more than remote, or for which there is the possibility of material business or reputational risk; similar matters are grouped together and some matters consist of a number of proceedings or claims. The disclosed matters include matters for which the possibility of a loss is more than remote but for which the Group cannot reliably estimate the possible loss. Sets of matters are presented in English-language alphabetical order based on the titles the Group has used for them.

**Danske Bank Estonia Investigations.** Deutsche Bank has received requests for information from regulatory and law enforcement agencies concerning the Bank's correspondent banking relationship with Danske Bank, including the Bank's historical processing of correspondent banking transactions on behalf of customers of Danske Bank's Estonia branch prior to cessation of the correspondent banking relationship with that branch in 2015. Deutsche Bank is providing information to and otherwise cooperating with the investigating agencies. The Bank is also conducting an internal investigation into these matters, including of whether any violations of law, regulation or policy occurred and the effectiveness of the related internal control environment.

The Group has not established a provision or contingent liability with respect to this matter.

**FX Investigations and Litigations.** Deutsche Bank has received requests for information from certain regulatory and law enforcement agencies globally who investigated trading in, and various other aspects of, the foreign exchange market. Deutsche Bank cooperated with these investigations. Relatedly, Deutsche Bank has conducted its own internal global review of foreign exchange trading and other aspects of its foreign exchange business.

On October 19, 2016, the US Commodity Futures Trading Commission (CFTC), Division of Enforcement issued a letter ("CFTC Letter") notifying Deutsche Bank that the CFTC Division of Enforcement "is not taking any further action at this time and has closed the investigation of Deutsche Bank" regarding foreign exchange. As is customary, the CFTC Letter states that the CFTC Division of Enforcement "maintains the discretion to decide to reopen the investigation at any time in the future." The CFTC Letter has no binding impact on other regulatory and law enforcement agency investigations regarding Deutsche Bank's foreign exchange trading and practices, which remain pending.

On December 7, 2016, it was announced that Deutsche Bank reached an agreement with CADE, the Brazilian antitrust enforcement agency, to settle an investigation into conduct by a former Brazil-based Deutsche Bank trader. As part of that settlement, Deutsche Bank paid a fine of BRL 51 million and agreed to continue to comply with the CADE's administrative process until it is concluded. This resolves CADE's administrative process as it relates to Deutsche Bank, subject to Deutsche Bank's continued compliance with the settlement terms.

On February 13, 2017, the US Department of Justice (DOJ), Criminal Division, Fraud Section, issued a letter ("DOJ Letter") notifying Deutsche Bank that the DOJ has closed its criminal inquiry "concerning possible violations of federal criminal law in connection with the foreign exchange markets." As is customary, the DOJ Letter states that the DOJ may reopen its inquiry if it obtains additional information or evidence regarding the inquiry. The DOJ Letter has no binding impact on other regulatory and law enforcement agency investigations regarding Deutsche Bank's foreign exchange trading and practices, which remain pending.

On April 20, 2017, it was announced that Deutsche Bank AG, DB USA Corporation and Deutsche Bank AG New York Branch reached an agreement with the Board of Governors of the Federal Reserve System to settle an investigation into Deutsche Bank's foreign exchange trading and practices. Under the terms of the settlement, Deutsche Bank entered into a cease-and-desist order, and agreed to pay a civil monetary penalty of US$ 137 million. In addition, the Federal Reserve ordered Deutsche Bank to "continue to implement additional improvements in its oversight, internal controls, compliance, risk management and audit programs" for its foreign exchange business and other similar products, and to periodically report to the Federal Reserve on its progress.

On June 20, 2018, it was announced that Deutsche Bank AG and Deutsche Bank AG New York Branch reached an agreement with the New York State Department of Financial Services (DFS) to settle an investigation into Deutsche Bank's foreign exchange trading and sales practices. Under the terms of the settlement, Deutsche Bank entered into a consent order, and agreed to pay a civil monetary penalty of US$ 205 million. In addition, the DFS ordered Deutsche Bank to continue to implement improvements in its oversight, internal controls, compliance, risk management and audit programs for its foreign exchange business, and to periodically report to the DFS on its progress.

Investigations conducted by certain other regulatory agencies are ongoing, and Deutsche Bank has cooperated with these investigations.

On August 6, 2018, the US District Court for the Southern District of New York issued a final order approving Deutsche Bank's US$190 million settlement and plaintiffs' dismissal with prejudice of the consolidated action (*In re Foreign Exchange Benchmark Rates Antitrust Litigation*). The consolidated action was brought on behalf of a putative class of over-the-counter traders and a putative class of central-exchange traders, who are domiciled in or traded in the United States or its territories, and alleged illegal agreements to restrain competition with respect to and to manipulate both benchmark rates and spot rates, particularly the spreads quoted on those spot rates. On July 10, 2018, the US Court of Appeals for the Second Circuit affirmed the district court's dismissal of *Doris Sue Allen v. Bank of America, et al.*, a putative class action that tracked the allegations in the consolidated action and asserted that such purported conduct gave rise to, and resulted in a breach of, defendants' fiduciary duties under the US Employment Retirement Income Security Act of 1974. On September 6, 2018, the US District Court for the Southern District of New York denied Axiom Investment Advisors, LLC's ("Axiom") motion for class certification in *Axiom v. Deutsche Bank AG*. Axiom's motion for voluntary dismissal with prejudice was granted on January 18, 2019. This putative class action alleged that Deutsche Bank rejected FX orders placed over electronic trading platforms through the application of a function referred to as "Last Look" and that these orders were later filled at prices less favorable to putative class members. One US putative class action remains pending against Deutsche Bank. Filed on September 26, 2016, amended on March 24, 2017, and later consolidated with a similar action that was filed on April 28, 2017, the "Indirect Purchasers" action (*Contant, et al. v. Bank of America Corp., et al.*) tracks the allegations in the consolidated action and asserts that such purported conduct injured "indirect purchasers" of FX instruments. These claims are brought pursuant to the Sherman Act and various states' consumer protection statutes. On March 15, 2018, the court granted Deutsche Bank's motion to dismiss this action. Plaintiffs filed a motion to replead and proposed an amended complaint on April 5, 2018, which Deutsche Bank opposed. On October 25, 2018, the US District Court for the Southern District of New York granted plaintiffs' motion and a second amended complaint was filed on November 28, 2018. Discovery has commenced in the Indirect Purchasers action. Filed on November 7, 2018, *Allianz, et al. v. Bank of America Corporation, et al.*, was brought on an individual basis by a group of asset managers who opted out of the settlement in the consolidated action. Plaintiffs filed an amended complaint on March 1, 2019. Deutsche Bank's response to that complaint is due on April 1, 2019. Limited discovery has commenced pending resolution of defendants' motion to dismiss.

Deutsche Bank also has been named as a defendant in two Canadian class proceedings brought in the provinces of Ontario and Quebec. Filed on September 10, 2015, these class actions assert factual allegations similar to those made in the consolidated action in the United States and seek damages pursuant to the Canadian Competition Act as well as other causes of action. Plaintiffs in the Ontario action have moved for class certification and completed service of their class certification motion record on June 23, 2017. Deutsche Bank has opposed class certification, and a hearing on the class certification motion is scheduled for June 10 to 14, 2019.

Deutsche Bank has also been named as a defendant in two putative class actions filed in Israel. Filed in September 2018, these actions assert factual allegations similar to those made in the consolidated action in the United States and seek damages pursuant to Israeli antitrust law as well as other causes of action. These actions are in preliminary stages.

The Group has not disclosed whether it has established a provision or contingent liability with respect to these matters because it has concluded that such disclosure can be expected to prejudice seriously their outcome.

Interbank and Dealer Offered Rates Matters. *Regulatory and Law Enforcement Matters.* Deutsche Bank has responded to requests for information from, and cooperated with, various regulatory and law enforcement agencies, in connection with industry-wide investigations concerning the setting of the London Interbank Offered Rate (LIBOR), Euro Interbank Offered Rate (EURIBOR), Tokyo Interbank Offered Rate (TIBOR) and other interbank and/or dealer offered rates.

As previously reported, Deutsche Bank paid € 725 million to the European Commission pursuant to a settlement agreement dated December 4, 2013 in relation to anticompetitive conduct in the trading of interest rate derivatives.

Also as previously reported, on April 23, 2015, Deutsche Bank entered into separate settlements with the DOJ, the CFTC, the UK Financial Conduct Authority (FCA), and the New York State Department of Financial Services (DFS) to resolve investigations into misconduct concerning the setting of LIBOR, EURIBOR, and TIBOR. Under the terms of these agreements, Deutsche Bank agreed to pay penalties of US$ 2.175 billion to the DOJ, CFTC and DFS and GBP 226.8 million to the FCA. As part of the resolution with the DOJ, DB Group Services (UK) Limited (an indirectly-held, wholly-owned subsidiary of Deutsche Bank) pled guilty to one count of wire fraud in the US District Court for the District of Connecticut and Deutsche Bank entered into a Deferred Prosecution Agreement with a three year term pursuant to which it agreed (among other things) to the filing of an Information in the US District Court for the District of Connecticut charging Deutsche Bank with one count of wire fraud and one count of price fixing in violation of the Sherman Act. On April 23, 2018, the Deferred Prosecution Agreement expired, and the US District Court for the District of Connecticut subsequently dismissed the criminal Information against Deutsche Bank. The fines referred to above, which include a US$ 150 million fine paid in April 2017 following the March 28, 2017 sentencing of DB Group Services (UK) Limited, have been paid in full and do not form part of the Bank's provisions.

As previously reported, on March 20, 2017, Deutsche Bank paid CHF 5.4 million to the Swiss Competition Commission (WEKO) pursuant to a settlement agreement in relation to Yen LIBOR.

On October 25, 2017, Deutsche Bank entered into a settlement with a working group of US state attorneys general resolving their interbank offered rate investigation. Among other conditions, Deutsche Bank agreed to make a settlement payment of US$ 220 million. The settlement amount has been paid in full and does not form part of the Bank's provisions.

Other investigations of Deutsche Bank concerning the setting of various interbank and/or dealer offered rates remain ongoing.

The Group has not disclosed whether it has established a provision or contingent liability with respect to the remaining investigations because it has concluded that such disclosure can be expected to prejudice seriously their outcome.

*Overview of Civil Litigations.* Deutsche Bank is party to 45 US civil actions concerning alleged manipulation relating to the setting of various interbank and/or dealer offered rates which are described in the following paragraphs, as well as single actions pending in each of the UK, Israel and Argentina. Most of the civil actions, including putative class actions, are pending in the US District Court for the Southern District of New York (SDNY), against Deutsche Bank and numerous other defendants. All but four of the US civil actions were filed on behalf of parties who allege losses as a result of manipulation relating to the setting of US dollar LIBOR. The four civil actions pending against Deutsche Bank that do not relate to US dollar LIBOR are also pending in the SDNY, and include one consolidated action concerning Pound Sterling (GBP) LIBOR, one action concerning Swiss franc (CHF) LIBOR, one action concerning two Singapore Dollar (SGD) benchmark rates, the Singapore Interbank Offered Rate (SIBOR) and the Swap Offer Rate (SOR), and one action concerning the Canadian Dealer Offered Rate (CDOR).

Claims for damages for all 45 of the US civil actions discussed have been asserted under various legal theories, including violations of the US Commodity Exchange Act, federal and state antitrust laws, the US Racketeer Influenced and Corrupt Organizations Act, and other federal and state laws. The Group has not disclosed whether it has established a provision or contingent liability with respect to these matters because it has concluded that such disclosure can be expected to prejudice seriously their outcome.

*US dollar LIBOR.* With three exceptions, all of the US civil actions concerning US dollar LIBOR are being coordinated as part of a multidistrict litigation (the "US dollar LIBOR MDL") in the SDNY. In light of the large number of individual cases pending against Deutsche Bank and their similarity, the civil actions included in the US dollar LIBOR MDL are now subsumed under the following general description of the litigation pertaining to all such actions, without disclosure of individual actions except when the circumstances or the resolution of an individual case is material to Deutsche Bank.

Following a series of decisions in the US dollar LIBOR MDL between March 2013 and December 2016 narrowing their claims, plaintiffs are currently asserting antitrust claims, claims under the US Commodity Exchange Act and state law fraud, contract, unjust enrichment and other tort claims. The court has also issued decisions dismissing certain plaintiffs' claims for lack of personal jurisdiction and on statute of limitations grounds.

On December 20, 2016, the district court issued a ruling dismissing certain antitrust claims while allowing others to proceed. Multiple plaintiffs have filed appeals of the district court's December 20, 2016 ruling to the US Court of Appeals for the Second Circuit, and those appeals are proceeding in parallel with the ongoing proceedings in the district court. Briefing of the appeals is complete.

On July 13, 2017, Deutsche Bank executed a settlement agreement in the amount of US$ 80 million with plaintiffs to resolve a putative class action pending as part of the US dollar LIBOR MDL asserting claims based on alleged transactions in Eurodollar futures and options traded on the Chicago Mercantile Exchange (*Metzler Investment GmbH* v. *Credit Suisse Group AG*). The settlement agreement was submitted to the court for preliminary approval on October 11, 2017. The settlement amount is already fully reflected in existing litigation provisions and no additional provisions have been taken for this settlement. The settlement agreement is subject to further review and approval by the court.

On February 6, 2018, Deutsche Bank executed a settlement agreement in the amount of US$ 240 million with plaintiffs to resolve a putative class action pending as part of the US dollar LIBOR MDL asserting claims based on alleged transactions in US dollar LIBOR-linked financial instruments purchased over the counter directly from LIBOR panel banks (*Mayor & City Council of Baltimore* v. *Credit Suisse AG*). The agreement was submitted to the court for approval, and the court granted final approval of the settlement on October 25, 2018. Accordingly, the action is not included in the total number of actions above. The settlement amount, which Deutsche Bank has paid, is no longer reflected in Deutsche Bank's litigation provisions.

Plaintiff in one of the non-MDL cases proceeding in the SDNY moved to amend its complaint following a dismissal of its claims. On March 20, 2018, the court denied plaintiff's motion for leave to amend and entered judgment in the action, closing the case. Plaintiff has appealed the court's decision, and briefing of the appeal is complete.

On January 15 and 31, 2019, plaintiffs filed two putative class action complaints in the SDNY against several financial institutions, alleging that the defendants, members of the panel of banks that provided US dollar LIBOR submissions, the organization that administers LIBOR, and their affiliates, conspired to suppress US dollar LIBOR submissions from February 1, 2014 through the present. These actions were subsequently consolidated. A third putative class action complaint was filed on March 4, 2019. These actions are not part of the US dollar LIBOR MDL.

There is a further UK civil action regarding US dollar LIBOR brought by the US Federal Deposit Insurance Corporation, in which a claim for damages has been asserted pursuant to Article 101 of The Treaty on the Functioning of the European Union, Section 2 of Chapter 1 of the UK Competition Act 1998 and US state laws. Deutsche Bank is defending this action.

A further class action regarding LIBOR, EURIBOR and TIBOR has been filed in Israel seeking damages for losses incurred by Israeli individuals and entities. Deutsche Bank is contesting service and jurisdiction.

*Yen LIBOR and Euroyen TIBOR.* On July 21, 2017, Deutsche Bank executed a settlement agreement in the amount of US$ 77 million with plaintiffs to resolve two putative class actions pending in the SDNY alleging manipulation of Yen LIBOR and Euroyen TIBOR (*Laydon* v. *Mizuho Bank, Ltd.* and *Sonterra Capital Master Fund Ltd.* v. *UBS AG*). The agreement was submitted to the court for approval, and the court granted final approval of the settlement on December 7, 2017.  Accordingly, these two actions are not included in the total number of actions above. The settlement amount, which Deutsche Bank paid on August 1, 2017, is no longer reflected in Deutsche Bank's litigation provisions.

2 – Consolidated Financial Statements

*EURIBOR.* On May 10, 2017, Deutsche Bank executed a settlement agreement in the amount of US$ 170 million with plaintiffs to resolve a putative class action pending in the SDNY alleging manipulation of EURIBOR (*Sullivan* v. *Barclays PLC*). The agreement was submitted to the court for approval, and the court granted final approval of the settlement on May 18, 2018. Accordingly, the action is not included in the total number of actions above. The settlement amount, which Deutsche Bank has paid, is no longer reflected in Deutsche Bank's litigation provisions.

*GBP LIBOR.* A putative class action alleging manipulation of the Pound Sterling (GBP) LIBOR remains pending in the SDNY. On December 21, 2018, the court partially granted defendants' motions to dismiss the action, dismissing all claims against Deutsche Bank. On January 22, 2019, the plaintiffs moved for partial reconsideration of the court's decision; that motion is fully briefed.

*CHF LIBOR.* A putative class action alleging manipulation of the Swiss Franc (CHF) LIBOR remains pending in the SDNY. It is the subject of fully briefed motions to dismiss.

*SIBOR and SOR.* A putative class action alleging manipulation of the Singapore Interbank Offered Rate (SIBOR) and Swap Offer Rate (SOR) remains pending in the SDNY. On October 25, 2018, the plaintiff filed a third amended complaint, which is the subject of a fully briefed motion to dismiss. On December 26, 2018, plaintiff moved the court for leave to file a fourth amended complaint; that motion is fully briefed.

*CDOR.* A putative class action alleging manipulation of the Canadian Dealer Offered Rate (CDOR) is pending in the SDNY. On March 14, 2019, the court granted defendants' motions to dismiss the amended complaint, dismissing all actions against Deutsche Bank.

**Investigations Into Referral Hiring Practices and Certain Business Relationships.** Certain regulators and law enforcement authorities in various jurisdictions, including the US Securities and Exchange Commission and the DOJ, are investigating, among other things, Deutsche Bank's compliance with the US Foreign Corrupt Practices Act and other laws with respect to the bank's hiring practices related to candidates referred by clients, potential clients and government officials, and the Bank's engagement of finders and consultants. Deutsche Bank is responding to and continuing to cooperate with these investigations. Certain regulators in other jurisdictions have also been briefed on these investigations. The Group has recorded a provision with respect to certain of these regulatory investigations. The Group has not disclosed the amount of this provision because it has concluded that such disclosure can be expected to prejudice seriously the outcome of these regulatory investigations. Based on the facts currently known, it is not practicable at this time for the Bank to predict the timing of a resolution.

**Kirch.** The public prosecutor's office in Munich (*Staatsanwaltschaft München I*) has conducted and is currently conducting criminal investigations in connection with the Kirch case inter alia with regard to former Deutsche Bank Management Board members. The Kirch case involved several civil proceedings between Deutsche Bank AG and Dr. Leo Kirch as well as media companies controlled by him. The key issue was whether an interview given by Dr. Rolf Breuer, then Spokesman of Deutsche Bank's Management Board, in 2002 with Bloomberg television, during which Dr. Breuer commented on Dr. Kirch's (and his companies') inability to obtain financing, caused the insolvency of the Kirch companies. In February 2014, Deutsche Bank and the Kirch heirs reached a comprehensive settlement, which has ended all legal disputes between them.

The allegations of the public prosecutor are that the relevant former Management Board members failed to correct in a timely manner factual statements made by Deutsche Bank's litigation counsel in submissions filed in one of the civil cases between Kirch and Deutsche Bank AG before the Munich Higher Regional Court and the Federal Court of Justice, after allegedly having become aware that such statements were not correct, and/or made incorrect statements in such proceedings, respectively.

On April 25, 2016, following the trial before the Regional Court Munich regarding the main investigation involving Jürgen Fitschen and four other former Management Board members, the Regional Court acquitted all of the accused, as well as the Bank, which was a secondary participant in such proceedings. On April 26, 2016, the public prosecutor filed an appeal. An appeal is limited to a review of legal errors rather than facts. On October 18, 2016, a few weeks after the written judgment was served, the public prosecutor provided notice that it will uphold its appeal only with respect to former Management Board members Jürgen Fitschen, Dr. Rolf Breuer and Dr. Josef Ackermann and that it will withdraw its appeal with respect to former Management Board members Dr. Clemens Börsig and Dr. Tessen von Heydebreck for whom the acquittal thereby becomes binding. On January 24, 2018, the Attorney General's Office applied to convene an oral hearing before the Federal Supreme Court to decide about the Munich public prosecutor's appeal.

The other investigations by the public prosecutor (which also deal with attempted litigation fraud in the Kirch civil proceedings) are ongoing. Deutsche Bank is fully cooperating with the Munich public prosecutor's office.

The Group does not expect these proceedings to have significant economic consequences for it and has not recorded a provision or contingent liability with respect thereto.

Notes to the Consolidated Balance Sheet
Provisions

**Mortgage-Related and Asset-Backed Securities Matters and Investigation.** *Regulatory and Governmental Matters.* Deutsche Bank, along with certain affiliates (collectively referred in these paragraphs to as "Deutsche Bank"), have received subpoenas and requests for information from certain regulators and government entities, including members of the Residential Mortgage-Backed Securities Working Group of the US Financial Fraud Enforcement Task Force, concerning its activities regarding the origination, purchase, securitization, sale, valuation and/or trading of mortgage loans, residential mortgage-backed securities (RMBS), commercial mortgage-backed securities (CMBS), collateralized debt obligations (CDOs), other asset-backed securities and credit derivatives. Deutsche Bank is cooperating fully in response to those subpoenas and requests for information.

On December 23, 2016, Deutsche Bank announced that it reached a settlement-in-principle with the DOJ to resolve potential claims related to its RMBS business conducted from 2005 to 2007. The settlement became final and was announced by the DOJ on January 17, 2017. Under the settlement, Deutsche Bank paid a civil monetary penalty of US$ 3.1 billion and agreed to provide US$ 4.1 billion in consumer relief.

In September 2016, Deutsche Bank received administrative subpoenas from the Maryland Attorney General seeking information concerning Deutsche Bank's RMBS and CDO businesses from 2002 to 2009. On June 1, 2017, Deutsche Bank and the Maryland Attorney General reached a settlement to resolve the matter for US$ 15 million in cash and US$ 80 million in consumer relief (to be allocated from the overall US$ 4.1 billion consumer relief obligation agreed to as part of Deutsche Bank's settlement with the DOJ).

The Group has recorded provisions with respect to some of the outstanding regulatory investigations but not others, a portion of which relates to the consumer relief being provided under the DOJ settlement. The Group has not disclosed the amount of these provisions because it has concluded that such disclosure can be expected to prejudice seriously the resolution of these matters.

*Issuer and Underwriter Civil Litigation.* Deutsche Bank has been named as defendant in numerous civil litigations brought by private parties in connection with its various roles, including issuer or underwriter, in offerings of RMBS and other asset-backed securities. These cases, described below, allege that the offering documents contained material misrepresentations and omissions, including with regard to the underwriting standards pursuant to which the underlying mortgage loans were issued, or assert that various representations or warranties relating to the loans were breached at the time of origination. The Group has recorded provisions with respect to several of these civil cases, but has not recorded provisions with respect to all of these matters. The Group has not disclosed the amount of these provisions because it has concluded that such disclosure can be expected to prejudice seriously the resolution of these matters.

Deutsche Bank is a defendant in a class action relating to its role as one of the underwriters of six RMBS offerings issued by Novastar Mortgage Corporation. No specific damages are alleged in the complaint. The lawsuit was brought by plaintiffs representing a class of investors who purchased certificates in those offerings. The parties reached a settlement to resolve the matter for a total of US$ 165 million, a portion of which was paid by the Bank. On August 30, 2017, FHFA/Freddie Mac filed an objection to the settlement and shortly thereafter appealed the district court's denial of their request to stay settlement approval proceedings, which appeal was resolved against FHFA/Freddie Mac. The court approved the settlement on March 7, 2019 over FHFA/Freddie Mac's objections. The parties have 60 days from entry of the order to file an appeal.

Deutsche Bank is a defendant in three actions related to RMBS offerings brought by the US Federal Deposit Insurance Corporation (FDIC) as receiver for: (a) Colonial Bank (alleging no less than US$ 213 million in damages against all defendants), (b) Guaranty Bank (alleging no less than US$ 901 million in damages against all defendants), and (c) Citizens National Bank and Strategic Capital Bank (alleging an unspecified amount in damages against all defendants). In each of these actions, the appellate courts reinstated claims previously dismissed on statute of limitations grounds and petitions for rehearing and certiorari to the US Supreme Court were denied. In the case concerning Colonial Bank, on June 21, 2017, the FDIC filed a second amended complaint, which defendants moved to dismiss on September 7, 2017. On March 2, 2018, the court granted in part and denied in part defendants' motion to dismiss. In the case concerning Guaranty Bank, on September 14, 2017, the court granted in part Deutsche Bank's motion for summary judgment regarding the proper method of calculating pre-judgment interest. On August 31, 2018, the court vacated the March 2019 trial date. On September 27, 2018, the court ordered that the case must go to mediation before January 11, 2019, and that it is stayed in the meantime. The parties engaged in mediation on November 27, 2018. No settlement was reached during the mediation. The court re-opened the case and, on January 2, 2019, set a trial date of August 26, 2019. In the case concerning Citizens National Bank and Strategic Capital Bank, on July 31, 2017, the FDIC filed a second amended complaint, which defendants moved to dismiss on September 14, 2017. The case is stayed pending resolution of defendants' motion to dismiss.

2 – Consolidated Financial Statements

Deutsche Bank is a defendant in an action brought by Royal Park Investments (as purported assignee of claims of a special-purpose vehicle created to acquire certain assets of Fortis Bank) alleging common law claims related to the purchase of RMBS. The complaint did not specify the amount of damages sought. On April 17, 2017, the court dismissed the complaint, and on February 13, 2018, the plaintiff filed its appeal. On October 9, 2018, the dismissal was affirmed by the appellate court. Plaintiff filed a motion for leave to appeal to the New York Court of Appeals on November 8, 2018. Defendants filed an opposition on November 21, 2018, which completed the briefing. On January 15, 2019, the New York Court of Appeals denied the motion.

In June 2014, HSBC, as trustee, brought an action in New York state court against Deutsche Bank to revive a prior action, alleging that Deutsche Bank failed to repurchase mortgage loans in the ACE Securities Corp. 2006-SL2 RMBS offering. The revival action was stayed during the pendency of an appeal of the dismissal of a separate action wherein HSBC, as trustee, brought an action against Deutsche Bank alleging breaches of representations and warranties made by Deutsche Bank concerning the mortgage loans in the same offering. On March 29, 2016, the court dismissed the revival action, and on April 29, 2016, plaintiff filed a notice of appeal. Plaintiff's appeal has been adjourned to the appellate court's September 2019 term.

Deutsche Bank is a defendant in two cases brought initially by RMBS investors and subsequently by HSBC, as trustee, in New York state court. The cases allege breaches of loan-level representations and warranties in the ACE Securities Corp. 2006-FM1 and ACE Securities Corp. 2007-ASAP1 RMBS offerings, respectively. Both cases were dismissed on statute of limitations grounds by the trial court on March 28, 2018. Plaintiff has appealed the dismissals, which appeals remain pending.

In the actions against Deutsche Bank solely as an underwriter of other issuers' RMBS offerings, Deutsche Bank has contractual rights to indemnification from the issuers, but those indemnity rights may in whole or in part prove effectively unenforceable where the issuers are now or may in the future be in bankruptcy or otherwise defunct.

*Trustee Civil Litigation.* Deutsche Bank is a defendant in civil lawsuits brought by various groups of investors concerning its role as trustee of certain RMBS trusts. The actions generally allege claims for breach of contract, breach of fiduciary duty, breach of the duty to avoid conflicts of interest, negligence and/or violations of the US Trust Indenture Act of 1939, based on the trustees' alleged failure to perform adequately certain obligations and/or duties as trustee for the trusts.

Two putative class actions brought by a group of investors, including funds managed by BlackRock Advisors, LLC, PIMCO-Advisors, L.P., and others recently were settled. One of these putative class actions was pending in the Superior Court of California until the court dismissed the action with prejudice on January 11, 2019. The second putative class action was pending in the US District Court for the Southern District of New York and was dismissed with prejudice on December 6, 2018. Deutsche Bank was also a defendant in a lawsuit brought by the Western and Southern Life Insurance Company and five related entities, but on September 28, 2017, plaintiffs filed a notice of voluntary dismissal of their claims.

Deutsche Bank is currently a defendant in six separate civil lawsuits – two putative class actions and four individual lawsuits.

The putative class actions were brought by Royal Park Investments SA/NV, concern 10 trusts, and are pending in the US District Court for the Southern District of New York.

In the first case, which plaintiff filed on June 18, 2014, plaintiff alleges that the trusts suffered total realized collateral losses of more than US$ 3.1 billion, although the complaint does not specify a damage amount. On March 29, 2018, the court issued an order denying plaintiff's renewed motion for class certification, and on August 7, 2018, the court of appeals denied plaintiff's motion for leave to immediately appeal the denial of class certification. On September 28, 2018, the court denied plaintiff's motion seeking permission to prove liability and damages using a statistical sample of the loans at issue in the case. Discovery is ongoing. On August 4, 2017, Royal Park filed a separate, additional class action complaint against the trustee asserting claims for breach of contract, unjust enrichment, conversion, breach of trust, equitable accounting and declaratory and injunctive relief arising out of the payment from trust funds of the trustee's legal fees and expenses in the other, ongoing Royal Park litigation. On August 13, 2018, the court stayed the action pending resolution of the underlying Royal Park litigation and denied the trustee's motion to dismiss without prejudice to its refiling once the stay is lifted.

The four individual lawsuits include actions by (a) the National Credit Union Administration Board ("NCUA"), as an investor in 37 trusts, which allegedly suffered total realized collateral losses of US$ 8.5 billion; (b) certain CDOs (collectively, "Phoenix Light") that hold RMBS certificates issued by 43 RMBS trusts, and seeking "hundreds of millions of dollars in damages"; (c) Commerzbank AG, as an investor in 50 RMBS trusts, seeking recovery for alleged "hundreds of millions of dollars in losses;" and (d) IKB International, S.A. in Liquidation and IKB Deutsche Industriebank AG (collectively, "IKB"), as an investor in 30 RMBS trusts, seeking more than US$ 268 million of damages. In the NCUA case, NCUA notified the court on August 31, 2018 that it was dismissing claims relating to 60 out of the 97 trusts originally at issue; NCUA's motion for leave to amend its complaint and Deutsche Bank's motion to dismiss the complaint if the court grants NCUA's motion for leave to amend are fully briefed as of December 19, 2018. In the Phoenix Light case, the plaintiffs filed an amended complaint on September 27, 2017, and the trustees filed an answer to the complaint on November 13, 2017. On December 7, 2018, the parties filed motions for summary judgment. In the Commerzbank case, the plaintiff filed an amended complaint on November 30, 2017, and the trustees filed an answer to the complaint on January 29, 2018. On December 7, 2018, the parties filed motions for summary judgment. In the IKB case, the court heard oral argument on the trustee's motion to dismiss on May 3, 2017, but has not yet issued a decision. On June 20, 2017, the IKB plaintiffs stipulated to the dismissal with prejudice of all claims asserted against Deutsche Bank concerning four trusts. Discovery is ongoing.

The Group has established contingent liabilities and provisions with respect to certain of these matters but the Group has not disclosed the amounts because it has concluded that such disclosure can be expected to prejudice seriously the outcome of these matters.

**Postbank Voluntary Public Takeover Offer.** On September 12, 2010, Deutsche Bank announced the decision to make a voluntary takeover offer for the acquisition of all shares in Deutsche Postbank AG (Postbank). On October 7, 2010, the Bank published the official offer document. In its takeover offer, Deutsche Bank offered Postbank shareholders consideration of € 25 for each Postbank share. The takeover offer was accepted for a total of approximately 48.2 million Postbank shares.

In November 2010, a former shareholder of Postbank, Effecten-Spiegel AG, which had accepted the takeover offer, brought a claim against Deutsche Bank alleging that the offer price was too low and was not determined in accordance with the applicable law of the Federal Republic of Germany. The plaintiff alleges that Deutsche Bank had been obliged to make a mandatory takeover offer for all shares in Postbank, at the latest, in 2009. The plaintiff avers that, at the latest in 2009, the voting rights of Deutsche Post AG in Postbank had to be attributed to Deutsche Bank AG pursuant to Section 30 of the German Takeover Act. Based thereon, the plaintiff alleges that the consideration offered by Deutsche Bank AG for the shares in Postbank in the 2010 voluntary takeover offer needed to be raised to € 57.25 per share.

The Regional Court Cologne *(Landgericht)* dismissed the claim in 2011 and the Cologne appellate court dismissed the appeal in 2012. The Federal Court set aside the Cologne appellate court's judgment and referred the case back to the appellate court. In its judgment, the Federal Court stated that the appellate court had not sufficiently considered the plaintiff's allegation that Deutsche Bank AG and Deutsche Post AG "acted in concert" in 2009.

Starting in 2014, additional former shareholders of Postbank, who accepted the 2010 tender offer, brought similar claims as Effecten-Spiegel AG against Deutsche Bank which are pending with the Regional Court Cologne and the Higher Regional Court of Cologne, respectively. On October 20, 2017, the Regional Court Cologne handed down a decision granting the claims in a total of 14 cases which were combined in one proceeding. The Regional Court Cologne took the view that Deutsche Bank was obliged to make a mandatory takeover offer already in 2008 so that the appropriate consideration to be offered in the takeover offer should have been € 57.25 per share. Taking the consideration paid into account, the additional consideration per share owed to shareholders which have accepted the takeover offer would thus amount to € 32.25. Deutsche Bank appealed this decision and the appeal has been assigned to the 13th Senate of the Higher Regional Court of Cologne, which also is hearing the appeal of Effecten-Spiegel AG.

On November 8, 2017, a hearing took place before the Higher Regional Court of Cologne in the Effecten-Spiegel case. In that hearing, the Higher Regional Court indicated that it disagreed with the conclusions of the Regional Court Cologne and took the preliminary view that Deutsche Bank was not obliged to make a mandatory takeover offer in 2008 or 2009. Initially the Higher Regional Court resolved to announce a decision on December 13, 2017. However, this was postponed to February 2018 because the plaintiff challenged the three members of the 13th Senate of the Higher Regional Court of Cologne for alleged prejudice. The challenge was rejected by the Higher Regional Court of Cologne at the end of January 2018. In February 2018, the court granted a motion by Effecten-Spiegel AG to re-open the hearing.

The Higher Regional Court informed the parties by notice dated February 19, 2019 that it has doubts that an acting in concert can be based on the contractual clauses which the Regional Court Cologne found to be sufficient to assume an acting in concert (and to grant the plaintiffs' claims in October 2017). Against this background, the Higher Regional Court resolved to take further evidence and to call a number of witnesses in both cases who shall be heard from October 30, 2019 until at least December 11, 2019 in weekly hearings. The individuals to be heard include current and former board members of Deutsche Bank, Deutsche Post AG and Postbank as well as other persons involved in the Postbank transaction. The court further informed the parties that it is considering to request from Deutsche Bank the production of relevant transaction documents. The hearings to take evidence initially scheduled for March 27, 2019 and (as a precautionary measure) April 3 and May 29, 2019 were canceled.

Stefan Krause, a former Deutsche Bank Management Board member, (who is to testify on request of the plaintiffs) has invoked the right to refuse to give testimony because in February 2018 a law firm representing some plaintiffs in the above-mentioned civil actions had filed a criminal complaint with the public prosecutor in Frankfurt am Main against certain Deutsche Bank personnel alleging that they engaged in fraudulent conduct in connection with the takeover offer. However, the competent public prosecutors rejected opening proceedings. The Higher Regional Court Cologne has set March 20, 2019 as the date for a hearing on the legality of the refusal to testify in court.

Deutsche Bank has been served with a large number of additional lawsuits filed against Deutsche Bank shortly before the end of 2017, almost all of which are now pending with the Regional Court Cologne. Some of the new plaintiffs allege that the consideration offered by Deutsche Bank AG for the shares in Postbank in the 2010 voluntary takeover should be raised to € 64.25 per share.

The claims for payment against Deutsche Bank in relation to these matters total almost € 700 million (excluding interest).

The Group has established a contingent liability with respect to these matters but the Group has not disclosed the amount of this contingent liability because it has concluded that such disclosure can be expected to prejudice seriously the outcome of these matters.

**Further Proceedings Relating to the Postbank Takeover.** In September 2015, former shareholders of Postbank filed in the Regional Court Cologne shareholder actions against Postbank to set aside the squeeze-out resolution taken in the shareholders meeting of Postbank in August 2015. Among other things, the plaintiffs allege that Deutsche Bank was subject to a suspension of voting rights with respect to its shares in Postbank based on the allegation that Deutsche Bank failed to make a mandatory takeover offer at a higher price in 2009. The squeeze out is final and the proceeding itself has no reversal effect, but may result in damage payments. The claimants in this proceeding refer to legal arguments similar to those asserted in the Effecten-Spiegel proceeding described above. In a decision on October 20, 2017, the Regional Court Cologne declared the squeeze-out resolution to be void. The court, however, did not rely on a suspension of voting rights due to an alleged failure of Deutsche Bank to make a mandatory takeover offer, but argued that Postbank violated information rights of Postbank shareholders in Postbank's shareholders meeting in August 2015. Postbank has appealed this decision.

The legal question of whether Deutsche Bank had been obliged to make a mandatory takeover offer for all Postbank shares prior to its 2010 voluntary takeover may also impact two pending appraisal proceedings (Spruchverfahren). These proceedings were initiated by former Postbank shareholders with the aim to increase the cash compensation offered in connection with the squeeze-out of Postbank shareholders in 2015 and the cash compensation offered and annual guaranteed dividend paid in connection with the execution of a domination and profit and loss transfer agreement (Beherrschungs- und Gewinnabführungsvertrag) between DB Finanz-Holding AG (now DB Beteiligungs-Holding GmbH) and Postbank in 2012. The Regional Court Cologne issued resolutions indicating that it is inclined to consider a potential obligation of Deutsche Bank to make a mandatory takeover offer for Postbank at an offer price of € 57.25 when determining the adequate cash compensation in the appraisal proceedings. The cash compensation paid in connection with the domination and profit and loss transfer agreement was € 25.18 and was accepted for approximately 0.5 million shares. The squeeze-out compensation paid in 2015 was € 35.05 and approximately 7 million shares were squeezed-out.

The Group has not disclosed whether it has established a provision or contingent liability with respect to this matter because it has concluded that such disclosure can be expected to prejudice seriously its outcome.

Notes to the Consolidated Balance Sheet
Provisions

**Russia/UK Equities Trading Investigation.** Deutsche Bank has investigated the circumstances around equity trades entered into by certain clients with Deutsche Bank in Moscow and London that offset one another. The total volume of transactions reviewed is significant. Deutsche Bank's internal investigation of potential violations of law, regulation and policy and into the related internal control environment has concluded, and Deutsche Bank has assessed the findings identified during the investigation; to date it has identified certain violations of Deutsche Bank's policies and deficiencies in Deutsche Bank's control environment. Deutsche Bank has advised regulators and law enforcement authorities in several jurisdictions (including Germany, Russia, the UK and the United States) of this investigation. Deutsche Bank has taken disciplinary measures with regards to certain individuals in this matter.

On January 30 and 31, 2017, the DFS and the FCA announced settlements with the Bank related to their investigations into this matter. The settlements conclude the DFS and the FCA's investigations into the Bank's anti-money laundering (AML) control function in its investment banking division, including in relation to the equity trading described above. Under the terms of the settlement agreement with the DFS, Deutsche Bank entered into a consent order, and agreed to pay civil monetary penalties of US$ 425 million and to engage an independent monitor for a term of up to two years. Under the terms of the settlement agreement with the FCA, Deutsche Bank agreed to pay civil monetary penalties of approximately GBP 163 million. On May 30, 2017, the Federal Reserve announced its settlement with the Bank resolving this matter as well as additional AML issues identified by the Federal Reserve. Deutsche Bank paid a penalty of US$ 41 million. Deutsche Bank also agreed to retain independent third parties to assess its Bank Secrecy Act/AML program and review certain foreign correspondent banking activity of its subsidiary Deutsche Bank Trust Company Americas. The Bank is also required to submit written remediation plans and programs.

Deutsche Bank continues to cooperate with regulators and law enforcement authorities, including the DOJ which has its own ongoing investigation into these securities trades. The Group has recorded a provision with respect to the remaining investigation. The Group has not disclosed the amount of this provision because it has concluded that such disclosure can be expected to prejudice seriously the outcome of this matter.

**Sovereign, Supranational and Agency Bonds (SSA) Investigations and Litigations.** Deutsche Bank has received inquiries from certain regulatory and law enforcement authorities, including requests for information and documents, pertaining to SSA bond trading. Deutsche Bank is cooperating with these investigations.

On December 20, 2018, the European Commission sent a Statement of Objections to Deutsche Bank regarding a potential breach of EU antitrust rules in relation to secondary market trading of SSA bonds denominated in US dollars. The sending of a Statement of Objections is a step in the European Commission's investigation and does not prejudge the outcome of the investigation. Deutsche Bank has proactively cooperated with the European Commission in this matter and as a result has been granted immunity. In accordance with the European Commission's guidelines, Deutsche Bank does not expect a financial penalty.

Deutsche Bank is a defendant in several putative class action complaints filed in the US District Court for the Southern District of New York by alleged direct and indirect market participants claiming violations of antitrust law and common law related to alleged manipulation of the secondary trading market for SSA bonds. Deutsche Bank has reached an agreement to settle the actions by direct market participants for the amount of US$48.5 million and has recorded a provision in the same amount. The settlement is subject to court approval. The action filed on behalf of alleged indirect market participants is in its early stages.

Deutsche Bank is also a defendant in putative class actions filed on November 7, 2017 and December 5, 2017 in the Ontario Superior Court of Justice and Federal Court of Canada, respectively, claiming violations of antitrust law and the common law relating to alleged manipulation of secondary trading of SSA bonds. The complaints rely on allegations similar to those in the US class actions involving SSA bond trading, and seek compensatory and punitive damages. The cases are in their early stages.

Deutsche Bank was named as a defendant in several putative class action complaints filed in the US District Court for the Southern District of New York alleging violations of US antitrust law and a claim for unjust enrichment relating to Mexican government bond trading. The case is in its early stages.

Deutsche Bank has also been named as a defendant in four putative class action complaints filed in February and March 2019 in the US District Court for the Southern District of New York alleging violations of antitrust law and common law related to alleged manipulation of the secondary trading market for US Agency bonds. These cases are in the early stages.

Other than as noted above, the Group has not disclosed whether it has established provisions or contingent liabilities with respect to the matters referred to above because it has concluded that such disclosure can be expected to prejudice seriously their outcome.

2 – Consolidated Financial Statements

**Trust Preferred Securities Litigation.** Deutsche Bank and certain of its affiliates and former officers are the subject of a consolidated putative class action, filed in the United States District Court for the Southern District of New York, asserting claims under the federal securities laws on behalf of persons who purchased certain trust preferred securities issued by Deutsche Bank and its affiliates between October 2006 and May 2008. In a series of opinions, the court dismissed all claims as to four of the six offerings at issue, but allowed certain alleged omissions claims relating to the November 2007 and February 2008 offerings to proceed. The district court limited claims relating to the two offerings remaining in the case to alleged failures (i) to disclose "any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations" and (ii) to disclose "the most significant factors that make the offering speculative or risky" pursuant to Items 303 and 503 of Regulation S-K. Defendants have served Answers denying all wrongdoing. On October 2, 2018, the district court certified a plaintiff class as to both offerings. Merits discovery is ongoing.

The Group has not disclosed whether it has established a provision or contingent liability with respect to this matter because it has concluded that such disclosure can be expected to prejudice seriously its outcome.

**US Treasury Securities Investigations and Litigations.** Deutsche Bank has received inquiries from certain regulatory and law enforcement authorities, including requests for information and documents, pertaining to US Treasuries auctions, trading, and related market activity. Deutsche Bank is cooperating with these investigations.

Deutsche Bank's subsidiary Deutsche Bank Securities Inc. (DBSI) was a defendant in several putative class actions alleging violations of US antitrust law, the US Commodity Exchange Act and common law related to the alleged manipulation of the US Treasury securities market. These cases have been consolidated in the Southern District of New York. On November 16, 2017, plaintiffs filed a consolidated amended complaint, which did not name DBSI as a defendant. On December 11, 2017, the court dismissed DBSI from the class action without prejudice.

The Group has not disclosed whether it has established a provision or contingent liability with respect to these matters because it has concluded that such disclosure can be expected to prejudice seriously their outcome.

# PAGES 323-424 OMITTED PURSUANT TO D. N.J. ECF POLICIES AND PROCEDURES