**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ALI KARIMI, Individually and On Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>      v.<br><br>DEUTSCHE BANK AKTIENGESELLSCHAFT, JOHN CRYAN, CHRISTIAN SEWING, MARCUS SCHENCK, and JAMES VON MOLTKE,<br><br>               Defendants. | Case No. 2:20-cv-08978-ES-MAH<br><br><u>**Oral Argument Requested**</u> |

<u>**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a), OR IN THE ALTERNATIVE, DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**</u>

Mark Errico
SQUIRE PATTON BOGGS (US) LLP
382 Springfield Avenue
Summit, New Jersey 07869
(973) 848-5668
mark.errico@squirepb.com

David G. Januszewski (admitted *pro hac vice*)
Sheila C. Ramesh (admitted *pro hac vice*)
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, New York 10005
(212) 701-3000
djanuszewski@cahill.com
sramesh@cahill.com

*Attorneys for Defendants Deutsche Bank Aktiengesellschaft, John Cryan, Christian Sewing, Marcus Schenck, and James Von Moltke*

July 1, 2021

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ....................................................................................................................... 2

I.     The Action Should Be Transferred to New York ............................................................ 2

     A.     Plaintiffs' Choice of Forum Does Not Warrant Deference .................................... 3

     B.     The Balance of Factors Weighs in Favor of Transfer to the Southern District of New York ........................................................................................................... 5

II.     Plaintiffs Fail to State a Claim of Securities Fraud ...................................................... 7

     A.     Deutsche Bank's Alleged Misstatements Were Neither Misleading Nor Material ................................................................................................................ 7

     B.     Plaintiffs' Allegations of Corporate Mismanagement Fail as a Matter of Law.... 10

     C.     Defendants Had No Duty to Disclose Alleged Internal Control Weaknesses ...... 12

     D.     Plaintiffs' Scienter Allegations Are Inadequate ................................................. 13

III.     Plaintiffs' Section 20(a) Claim Fails as a Matter of Law ............................................. 17

CONCLUSION .................................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 3M Co.*,
  2020 U.S. App. LEXIS 36961 (3d Cir. Nov. 18, 2020) (Non-Precedential)................2, 3, 4, 5

*Anderson* v. *TransUnion, LLC*,
  2018 WL 334495 (E.D. Pa. Jan. 9, 2018) ...............................................................................5n

*Belmont* v. *MB Investment Partners, Inc.*,
  708 F.3d 470 (3d Cir. 2013)....................................................................................................17

*In re Cancer Genetics, Inc. Securities Litigation*,
  2020 WL 3276740 (D.N.J. Feb. 26, 2020) (Salas, J.).............................................................9

*In re Citigroup, Inc. Securities Litigation*,
  330 F. Supp. 2d 367 (S.D.N.Y. 2004)....................................................................................13

*In re Cognizant Technology Solutions Corp. Securities Litigation*,
  2020 WL 3026564 (D.N.J. June 5, 2020) (Salas, J.), *motion to certify appeal
  denied*, 2021 WL 1016111 (D.N.J. Mar. 17, 2021) ...............................................................17

*Derensis* v. *Coopers & Lybrand Chartered Accountants*,
  930 F. Supp. 1003 (D.N.J. 1996) ...........................................................................................17

*In re Deutsche Bank Aktiengesellschaft Securities Litigation*,
  2017 WL 4049253 (S.D.N.Y. June 28, 2017), *aff'd sub nom. Sfiraiala* v.
  *Deutsche Bank Aktiengesellschaft*, 729 F. App'x 55 (2d Cir. 2018) (Summary
  Order) ........................................................................................................7, 10, 12, 17

*In re Digital Island Securities Litigation*,
  223 F. Supp. 2d 546 (D. Del. 2002)......................................................................................18n

*Fan* v. *StoneMor Partners LP*,
  927 F.3d 710 (3d Cir. 2019).....................................................................................................8

*Frato* v. *Swing Staging, Inc.*,
  2011 WL 3625064 (D.N.J. Aug. 17, 2011) (Salas, J.).............................................................3

*In re Galena Biopharma, Inc. Securities Litigation*,
  2019 WL 5957859 (D.N.J. Nov. 12, 2019) ............................................................................12

*Geraci* v. *Red Robin International, Inc.*,
  2019 WL 2574976 (D.N.J. June 24, 2019) ..............................................................................4

*Green* v. *Deutsche Bank Aktiengesellschaft*,
  2019 WL 4805804 (S.D.N.Y. Sept. 30, 2019).........................................................................7

*Hayes* v. *Gross*,
  982 F.2d 104 (3d Cir. 1992)................................................................................... 10-11

*In re Heckmann Corp. Securities Litigation*,
  869 F. Supp. 2d 519 (D. Del. 2012)..................................................................................18n

*Job Haines Home for the Aged* v. *Young*,
  936 F. Supp. 223 (D.N.J. 1996) ..................................................................................... 4-5

*Kumar* v. *Kulicke & Soffa Industries, Inc.*,
  2019 WL 5081896 (E.D. Pa. Oct. 9, 2019)...................................................................14

*Lord Abbett Affiliated Fund, Inc.* v. *Navient Corp.*,
  363 F. Supp. 3d 476 (D. Del. 2019).............................................................................10

*McNulty* v. *J.H. Miles & Co.*,
  913 F. Supp. 2d 112 (D.N.J. 2012) ...............................................................................3

*In re Merck & Co., Inc. Securities, Derivative & ERISA Litigation*,
  2012 WL 3779309 (D.N.J. Aug. 29, 2012) ..............................................................18n

*In re: Nice Systems, Ltd. Securities Litigation*,
  135 F. Supp. 2d 551 (D.N.J. 2001) ............................................................................18n

*Payne* v. *DeLuca*,
  433 F. Supp. 2d 547 (W.D. Pa. 2006).......................................................................13

*Police and Fire Retirement System of Detroit* v. *La Quinta Holdings*,
  2017 WL 4082482 (S.D.N.Y. Aug. 24, 2017), *aff'd*, 735 F. App'x 11 (2d Cir.
  2018) ..........................................................................................................................8

*Ravens* v. *Republic New York Corp.*,
  2002 WL 1969651 (E.D. Pa. Apr. 24, 2002) ...........................................................10

*Sfiraiala* v. *Deutsche Bank Aktiengesellschaft*,
  729 F. App'x 55 (2d Cir. 2018) (Summary Order)..................................................15

*Snowstorm Acquisition Corp.* v. *Tecumseh Products Co.*,
  739 F. Supp. 2d 686 (D. Del. 2010)..........................................................................18n

*Starr Investments Cayman II, Inc.* v. *China MediaExpress Holdings, Inc.*,
  2014 WL 4180331 (D. Del. Aug. 21, 2014) ............................................................18n

*Steamfitters Local 449 Pension Fund* v. *Alter*,
  2011 WL 4528385 (E.D. Pa. Sept. 30, 2011) .........................................................18n

*Stichting Pensioenfonds ABP* v. *Merck & Co., Inc.*,
  2012 WL 3235783 (D.N.J. Aug. 1, 2012) ...........................................................18n

*In re Synchronoss Technologies, Inc. Securities Litigation*,
  2020 WL 2786936 (D.N.J. May 29, 2020) ............................................................16

*Ulferts* v. *Franklin Resources, Inc.*,
  554 F. Supp. 2d 568 (D.N.J. 2008) ....................................................................12

*Universal American Corp.* v. *Partners Healthcare Solutions Holdings, L.P.*,
  61 F. Supp. 3d 391 (D. Del. 2014).....................................................................18n

*Wilson* v. *Bernstock*,
  195 F. Supp. 2d 619 (D.N.J. 2002) ....................................................................14

*Zazzali* v. *Alexander Partners, LLC*,
  2013 WL 5416871 (D. Del. Sept. 25, 2013) ........................................................18n

Defendants Deutsche Bank Aktiengesellschaft ("Deutsche Bank"), John Cryan, Christian Sewing, Marcus Schenck, and James Von Moltke (the "Individual Defendants") respectfully submit this reply memorandum in further support of their motion to transfer this action to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a), or, in the alternative, to dismiss the Second Amended Class Action Complaint ("Complaint" or "SAC") pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiffs' opposition brief only confirms that this action is a transparent attempt to re-litigate the Prior Dismissed Actions[1] based on more recent statements in Deutsche Bank's public disclosures.  These disclosures are substantially similar to those underlying the claims that the Southern District of New York and the Second Circuit have repeatedly found insufficient to state a securities claim.  The same result should follow here.

Plaintiffs offer no basis to support a different result in this action, other than their attempt to forum shop by filing in this District, rather than the Southern District of New York.  Plaintiffs essentially concede that neither they nor their claims have any identifiable connection to this District.  Plaintiffs can muster no plausible explanation for why their claims should be litigated here.

Regardless, whether brought in New York or New Jersey, Plaintiffs' claims fail on the merits.  Their opposition brief reprises the Complaint's pattern of cherry-picking language from

---

[1]     Capitalized terms not otherwise defined herein have the meanings ascribed to them in Deutsche Bank's Memorandum of Law in Support of its Motion to Transfer or in the Alternative, Dismiss this Action ("Moving Br.") (Dkt. No. 52-1).

Deutsche Bank's disclosures, while simultaneously ignoring contemporaneous statements (often in the same document) disclosing alleged weaknesses in Deutsche Bank's internal control systems.  Plaintiffs also conveniently overlook press reports, public regulatory settlements, and litigations detailing those same alleged control deficiencies.  Plaintiffs' focus on aspirational statements stripped of their context and related caveats cannot render Deutsche Bank's disclosures actionable.  Nor can Plaintiffs manufacture scienter based on a handful of confidential witness statements where the same disclosures reflect cautionary language and ongoing remedial efforts.  Plaintiffs' fundamental pleading failures require dismissal of their claims.

## ARGUMENT

### I.    THE ACTION SHOULD BE TRANSFERRED TO NEW YORK

Plaintiffs' opposition to transfer rests almost entirely on their futile attempt to distinguish this action from the Third Circuit's decision in *In re 3M Co.*, 2020 U.S. App. LEXIS 36961 (3d Cir. Nov. 18, 2020) (Non-Precedential).  In undertaking this attempt, however, Plaintiffs resort to the same flawed arguments that the Third Circuit rejected in granting mandamus relief requiring transfer in *In re 3M*.  *Id.* at *7.  Chief among these is Plaintiffs' claim that their choice of forum in securities actions is entitled to special deference.  In *In re 3M*, the Third Circuit specifically held that where, as here, "a plaintiff brings its charges in a venue that is not its home forum . . . that choice of forum is entitled to less deference."  *Id.* at *6.  *In re 3M* also reaffirmed the well-established concept that securities class actions do not implicate local interests simply because the putative class *might* include New Jersey residents.  *Id.* at *5.  Plaintiffs ignore these directives and try to recast *In re 3M* as hinging solely upon the location in which many of the alleged misstatements at issue in the case were made.  *See* Opp'n at 11-12.  But Plaintiffs cannot escape the fundamental deficiency of their forum-shopping effort:  there is no nexus at all

between this action and this District.  As a result, this action should be transferred to the

Southern District of New York.

        **A.**        **Plaintiffs' Choice of Forum Does Not Warrant Deference**

       Plaintiffs ask for deference to their choice of forum.  But a "plaintiff's choice of forum is

not dispositive." *McNulty* v. *J.H. Miles & Co.*, 913 F. Supp. 2d 112, 116-17 (D.N.J. 2012).

Instead, and as Deutsche Bank set forth in its moving brief, any deference due to a plaintiff's

selection is minimal where, as here, the "operative facts of [the] action bear little connection to

the [chosen forum]."  *Frato* v. *Swing Staging, Inc.*, 2011 WL 3625064, at *4 (D.N.J. Aug. 17,

2011) (Salas, J.); *see* Moving Br. at 19-20.

       Tellingly, Plaintiffs are silent as to what, if any, connection either they or this action have

to this District.  As an initial matter, Plaintiffs fail to acknowledge the Third Circuit case law

confirming that "[w]hen a plaintiff brings its charges in a venue that is not its home forum . . .

that choice of forum is entitled to less deference."  *In re 3M*, 2020 U.S. App. LEXIS 36961, at *6

(declining to defer to plaintiffs' original selection of the District of New Jersey as their forum

where plaintiffs were from "Rhode Island, New York, and Luxembourg").  Here, neither Lead

Plaintiff nor Named Plaintiff claims to reside in, transact business in, or to have purchased his

securities in New Jersey.  Named Plaintiff Ali Karimi purports to live in Connecticut, not New

Jersey.  *See* Class Action Complaint, Civil Cover Sheet (July 15, 2020) (Dkt. No. 1-1).

       Nor can Plaintiffs connect their claims to this District, as they have already conceded that

this action bears no more connection to New Jersey than any other forum.  *See* Opp'n at 11

(alleged misstatements "were published in *each* district in the United States . . . . the securities

fraud claims arose *at least equally in each jurisdiction in this country*") (emphasis added).

Instead, Plaintiffs claim that transfer to New York is inappropriate because their claims arose in

Germany, where the alleged statements were made.  Opp'n at 12-13.  Plaintiffs do not, and

cannot, explain why this District is a more appropriate forum than the Southern District of New York. Nor does the Third Circuit's decision in *In re 3M* excuse this failure. In *In re 3M*, the Third Circuit ordered mandamus relief that resulted in the transfer of the underlying action to Minnesota, where the alleged misstatements were made. *In re 3M*, 2020 U.S. App. LEXIS 36961, at *6-7. But the Court's analysis hinged on the fact that the statements at issue *did not arise in New Jersey*, as opposed to whether the statements arose in the transferee district. *See id.* at *6 (explaining that the fault in the District Court's analysis was its "fail[ure] to meaningfully consider whether Respondents' claims arose *outside* of New Jersey") (emphasis added); *see also id.* at *5 (securities class action aimed at redressing economic harm suffered by 3M's investors did not implicate a "strong local interest"). By focusing on where the statements were made, rather than any nexus of their claims to New Jersey, Plaintiffs conveniently avoid explaining their own allegations, which rest heavily on New York-based conduct. *See, e.g.*, Moving Br. at 19-20.

Plaintiffs' claim that their choice of venue is entitled to deference is further undercut by the very authority on which they rely, as most of those cases involve claims brought by individual rather than class plaintiffs. *See* Opp'n at 10. This Court has recognized that "the plaintiff's choice of a forum becomes substantially less important when he sues representatively on behalf of a class." *Job Haines Home for the Aged* v. *Young*, 936 F. Supp. 223, 228 (D.N.J. 1996) (citation and internal quotation marks omitted); *see also Geraci* v. *Red Robin International, Inc.*, 2019 WL 2574976, at *4 (D.N.J. June 24, 2019) ("Even assuming that Plaintiff is not forum shopping . . . the putative class is present throughout the nation and '[t]he residence of the class representative becomes a mere happenstance.'") (citation omitted).

**B.      The Balance of Factors Weighs in Favor of Transfer to the Southern District of New York**

Plaintiffs fail to meaningfully challenge Deutsche Bank's argument that New York is a more convenient forum for this action.[2]  Rather than supporting them, Plaintiffs' claim that putative class members are scattered across the country favors transfer.  *See In re 3M*, 2020 U.S. App. LEXIS 36961, at *5 (where respondents sought to represent a class of "75,000 3M investors situated around the globe," "nothing about [the] case [was] 'local' to New Jersey"); *see also Job Haines Home for the Aged* v. *Young*, 936 F. Supp. 223, 228 (D.N.J. 1996) ("In a class action the named plaintiff's testimony and other input is likely to be minimal.  Furthermore, plaintiff classes are often comprised of residents of many states . . . . The residence of the class representative becomes a mere happenstance.").  While this Court considered whether the convenience of litigating in the named plaintiff's home forum outweighed transfer in *Young*, the case for transfer is even stronger here, where New Jersey is not Plaintiffs' home forum.

Indeed, Plaintiffs never argue that New Jersey is a more convenient location for them.  Instead, they argue that New York is somehow *not* more convenient for Deutsche Bank.  Opp'n at 13.  This argument is misguided in that it intentionally ignores that Deutsche Bank's U.S.

---

[2]      Rather than substantively respond to Deutsche Bank's arguments on the balance of factors, Plaintiffs criticize Deutsche Bank for not submitting affidavits in support of its motion to transfer.  Opp'n at 10.  Contrary to Plaintiffs' assertions, the Third Circuit has never categorically required that parties moving for a transfer of venue submit documentary evidence to carry their burden.  Instead, the authority on which Plaintiffs rely merely reflects instances in which courts *have* considered such evidence.  Here, the basis for transfer arises on the face of Plaintiffs' own pleading, obviating the need for affidavits or other documentary evidence.  *See, e.g.*, *Anderson* v. *TransUnion, LLC*, 2018 WL 334495, at *1 (E.D. Pa. Jan. 9, 2018) (granting motion to transfer venue and explaining that such motions "generally require the court to accept as true the allegations of the pleadings" and that while "[t]he parties may submit affidavits in support of their positions, and may stipulate as to certain facts," the "plaintiff is entitled to rely on the allegations of the complaint absent evidentiary challenge.") (citation and internal quotation marks omitted).

operations are controlled primarily from its New York branch.  As a result, Plaintiffs' claim that

most of the relevant witnesses and documents in this action will be located in Germany is

speculative.  *See* Opp'n at 14.  In fact, their own allegations suggest otherwise.  *See, e.g.*, SAC ¶

86 (alleging that Deutsche Bank representatives met with a client in New York), ¶ 88 (referring

to risk committee meeting allegedly chaired by the general manager of Deutsche Bank's New

York Branch), ¶ 94 (referring to Deutsche Bank's compliance operations in Florida and New

York), ¶ 95 (relying on New York State Department of Financial Services findings concerning

Deutsche Bank's risk procedures), ¶ 192 (referring to risk committee members based in New

York), ¶ 196 (referring to alleged misconduct by Deutsche Bank Trust Company Americas,

which, along with Deutsche Bank AG, New York Branch, is located in New York).

        Plaintiffs' claim that the alleged misrepresentations and omissions arose in Germany, not

New York, fail to support their opposition to transfer, as that allegation does not render New

Jersey a more convenient forum than New York.  *See* Opp'n at 15-16.  New York is undeniably

the more convenient forum.  In contrast, the only connections to New Jersey that Plaintiffs can

muster are that Deutsche Bank *may* have had *some* office space in New Jersey at some point in

time (SAC ¶ 104 ("[U]pon information and belief, Deutsche Bank and/or an affiliate or

subsidiary of the Bank maintained an office at Harborside Financial Center Platform, Jersey

City, New Jersey, 07311 during the Class Period")) and that because Deutsche Bank's shares

trade on the New York Stock Exchange there are "presumably" class members located in New

Jersey (*id*.).

        Against this backdrop, Plaintiffs' assertion that they are not forum shopping because they

"have a nexus to this state" is puzzling.  *See* Opp'n at 17.  There is no sign of what that nexus

could be.  Nor is there any merit in Plaintiffs' attempt to distinguish this action from prior,

dispositive Second Circuit precedent.  *See id.*  Plaintiffs rely on either superficial distinctions

between their claims here and those in the Prior Dismissed Actions, *In re Deutsche Bank*

*Aktiengesellschaft Securities Litigation*, 2017 WL 4049253 (S.D.N.Y. June 28, 2017) ("*In re*

*DB*"), *aff'd sub nom. Sfiraiala* v. *Deutsche Bank Aktiengesellschaft*, 729 F. App'x 55 (2d Cir.

2018) (Summary Order), and *Green* v. *Deutsche Bank Aktiengesellschaft*, 2019 WL 4805804

(S.D.N.Y. Sept. 30, 2019), *see* Opp. Br. at 17 (claiming this action "involves a different class

period[,] different plaintiffs[, and] a different class of investors"), or on vague and conclusory

assertions, *see id.* (claiming this action involves "different factual allegations," "different legal

issues," and "different damages").  In reality, this action recycles the same faulty premise that the

Southern District of New York and the Second Circuit have already rejected:  that alleged

weaknesses in Deutsche Bank's internal control processes can give rise to a securities fraud

claim.  *See In re DB*, 2017 WL 4049253, at *6-7 (statements concerning Deutsche Bank's AML,

KYC, and other risk controls were not actionable because they (1) were not false (2) were

aspirational, or (3) reflected mere corporate mismanagement); *Green*, 2019 WL 4805804, at *1-2

(statements concerning effectiveness of Deutsche Bank's internal controls over financial

reporting were not misleading).  After failing to convince Courts in the Second Circuit to adopt

their tenuous theory of alleged mismanagement as securities fraud, Plaintiffs' complaint here is

an obvious attempt to take a shot in a new forum.  The gambit should be rejected, and the case

should be transferred.

## II.      PLAINTIFFS FAIL TO STATE A CLAIM OF SECURITIES FRAUD

### A.      Deutsche Bank's Alleged Misstatements Were Neither Misleading Nor Material

In the years leading up to the Class Period, Deutsche Bank, similar to other institutions,

grappled with the challenges associated with updating and strengthening its compliance and

internal controls processes.  As Deutsche Bank's Moving Brief recounts in detail, these challenges were well-publicized *before and during* the Class Period in press reports, public settlements with regulators, and Deutsche Bank's own disclosures.  *See, e.g.*, Moving Br. at 20 (quoting language from Deutsche Bank's public disclosures regarding its know-your-client ("KYC") procedures); *see also* SAC ¶ 94 ("According to media reports, in 2015 and 2016, AML compliance officers in Deutsche Bank's offices in New York and Jacksonville, Florida, again raised many concerns. . . ."), ¶ 74 (referring to a 2017 settlement with the U.K. Financial Conduct Authority).  In this context, no investor reasonably could have been misled as to the state of Deutsche Bank's control processes.  *See Fan* v. *StoneMor Partners LP*, 927 F.3d 710, 716 (3d Cir. 2019) (company's statements "laud[ing] its financial health" were immaterial given disclosures concerning its indebtedness and noting that "[t]his disclosure, among others, would alert reasonable investors to the real business risks facing [the company]").

Plaintiffs nonetheless claim that the cases cited by Deutsche Bank are inapposite because the investors in those cases received "clear and consistent" disclosures about the relevant facts or were "sufficiently on notice" regarding regulatory inquiries.  *See* Opp'n at 22-23 n.9.  In so doing, Plaintiffs again choose not to engage with inconvenient facts.  They ignore the multiple disclosures that adequately informed investors of potential weaknesses in Deutsche Bank's internal control environment, as well as the details concerning increased scrutiny from various regulatory authorities.  *See, e.g.*, Moving Br. at 5 (discussing the consent order between Deutsche Bank and the New York DFS); *see also Police and Fire Retirement System of Detroit* v. *La Quinta Holdings*, 2017 WL 4082482, at *5 (S.D.N.Y. Aug. 24, 2017) (both disclosures made by the company and other information already in the public domain reasonably available to shareholders should be considered), *aff'd*, 735 F. App'x 11 (2d Cir. 2018).

Indeed, Plaintiffs only address a single settlement with the British Authority, which they claim failed to discuss Deutsche Bank's KYC practices during the Class Period. *See* Opp'n at 27. In the same paragraph, however, Plaintiffs point to a news article published during the Class Period that describes the very deficiencies they allege went unaddressed. *Id.* at 27-28. That article details, among other things, problems with control verifications and the onboarding of Politically Exposed Persons. While Plaintiffs claim that Deutsche Bank "flatly denied" the news report (*id.* at 28), this too mischaracterizes the text of the article, which explains that "when presented with the findings of the reviews" Deutsche Bank stated "[w]e still need to improve in terms of internal processes." July 1, 2021 Declaration of David G. Januszewski, Ex. 1 (Reuters article titled "Exclusive: Deutsche Bank reports show chinks in money laundering armor") (stating also that "[w]hat the documents show is that our internal processes are still too complicated . . . [s]o it is not about effectiveness, but about the efficiency of our processes."). That article also quoted Individual Defendant Christian Sewing as stating, only one month prior to the article's publication that "weaknesses had 'arisen over many years . . . . We're not yet where we want to be, but we're steadily getting there.'" *Id.*

Despite Deutsche Bank's consistent disclosures of issues with its internal control systems, Plaintiffs maintain that statements characterizing Deutsche Bank's procedures as "effective," "intensive," or "comprehensive" were materially false. In so doing, Plaintiffs ignore the wealth of case law characterizing similar statements as aspirational, and thus, non-actionable. *See, e.g.*, *In re Cancer Genetics, Inc. Securities Litigation*, 2020 WL 3276740, at *3 (D.N.J. Feb. 26, 2020) (Salas, J.) ("[N]on-specific statements of optimism or hope that are simply too vague to be actionable. . . . This is particularly so given the overall context of the Defendants' statements, including additional language that accompanied the Defendants' statements when

made.") (citation omitted); *see also Lord Abbett Affiliated Fund, Inc.* v. *Navient Corp.*, 363 F.
Supp. 3d 476, 487 (D. Del. 2019) (statements describing company's "very, very strong
compliance culture," "demonstrated compliance infrastructure," and "rigorous training
programs" constituted non-actionable puffery); *In re DB*, 2017 WL 4049253, at *6 (statements
that Deutsche Bank employed certain internal control policies were not actionable under the
securities laws where Plaintiffs did not allege "that the controls did not exist, but merely that
they were ineffective").

    **B.**    <u>**Plaintiffs' Allegations of Corporate Mismanagement Fail as a Matter of Law**</u>

       Like their complaint, Plaintiffs' opposition brief conflates allegations of corporate
mismanagement with alleged material misstatements or omissions.  Page after page of their brief
does little more than catalogue a series of alleged regulatory missteps which they claim
culminated in a violation of the federal securities laws.  But the alleged failure of corporate
management to address potential weaknesses in internal policies, procedures, compliance, or
internal controls, reflects, at most, corporate mismanagement (which is not actionable), not
securities fraud.  *See* Moving Br. at 32-33.

       The authorities upon which Plaintiffs rely do not suggest otherwise.  Each of those cases
concerns representations that were objectively false in light of information of which the
defendants were aware at the time they made those statements.  For example, in *Ravens* v.
*Republic New York Corp.*, the District Court for the Eastern District of Pennsylvania held that
Defendants' representation that they were not aware of any facts that would materially impact
the company's forthcoming merger was materially false in light of their active participation in an
ongoing noteholder fraud.  2002 WL 1969651, at *7, *10, (E.D. Pa. Apr. 24, 2002).  Similarly,
the plaintiffs in *Hayes* v. *Gross* alleged that representations concerning the company's loan loss
reserves were sufficient and within FIRREA guidelines were materially false in light of

allegations that defendants were aware that the company's loss reserves were grossly inadequate and that they were "hopelessly incapable" of complying with FIRREA.  982 F.2d 104, 106 (3d Cir. 1992) (cited in Opp'n at 32).  Critically absent from the Complaint, however, are allegations that Deutsche Bank's statements concerning its own control systems were objectively false.

Indeed, by cherry-picking language from Deutsche Bank's disclosures, Plaintiffs ignore other language qualifying or contextualizing the challenged statements.  This lapse is particularly ironic given Plaintiffs' own authority cautioning the Court "that a determination as to whether a statement is false and misleading *always depends on context*."  Opp'n at 24 (emphasis added; citation omitted).  Here, the context that Plaintiffs conveniently omit reveals the very deficiencies and shortcomings of Deutsche Bank's control systems that Plaintiffs allege were hidden from shareholders.  *See* Moving Br. at 8 ("In order to improve [our AML and KYC procedures], we are undertaking several major initiatives. . . . However, *we may be unable to complete these initiatives as quickly as we intend* or as our regulators demand, *and our efforts may be insufficient to prevent all future deficiencies*.") (emphasis added); *id.* at 9 (Deutsche Bank "may not always have the personnel with the appropriate experience, seniority and skill levels to compensate for shortcomings in [its] processes and infrastructure, or to identify, manage or control risks"); *id.* (explaining that Deutsche Bank has had difficulty *"remediat[ing] existing weaknesses and manag[ing] risks inherent in [its] activity"*) (emphasis added); *id.* (identifying an ongoing need to strengthen internal control systems in light of the shortcoming associated with the existing control environment).  Despite Plaintiffs' efforts to reframe the relevant standard, the appropriate question here is not whether Deutsche Bank's internal controls were somehow deficient; it is whether Deutsche Bank's representations concerning those control systems were false or misleading.  Just as in the Prior Dismissed Actions, Plaintiffs have failed to

-11-

allege "facts to suggest that the Bank did not, for example, review or strengthen its compliance and AML programs" or "frequently review its AML goals." *In re DB*, 2017 WL 4049253, at *6.

      C.      **<u>Defendants Had No Duty to Disclose Alleged Internal Control Weaknesses</u>**

Plaintiffs argue that Deutsche Bank's alleged failure to disclose supposed weaknesses in its internal controls constituted an omission sufficient to sustain their securities fraud claims. *See* Opp'n at 30. As Deutsche Bank set forth in its moving brief, "companies do not have a duty to disclose uncharged, unadjudicated wrongdoing." *In re Galena Biopharma, Inc. Securities Litigation*, 2019 WL 5957859, at *10 (D.N.J. Nov. 12, 2019) (Vazquez, J.); *see* Mov. Br. at 33. Plaintiffs also contend that having "chose[n] to speak about [its] KYC processes" Deutsche Bank was obligated to disclose that it had allegedly exempted high-profile clients from diligence. Opp'n at 30. But, again, a company's "obligation to disclose material information in prospectuses or other statements is not absolute." *Ulferts* v. *Franklin Resources, Inc.*, 554 F. Supp. 2d 568, 574 (D.N.J. 2008) (citation omitted); *see also In re DB*, 2017 WL 4049253, at *7 ("[R]evealing one fact about a subject does not trigger a duty to reveal all facts on the subject."); Moving Br. at 22-23. Here, Plaintiffs do not (and cannot) contend that Deutsche Bank failed to disclose potential weaknesses in its internal control systems. *See, e.g.*, April 23, 2021 Declaration of Sheila C. Ramesh Ex. 3 (Dkt. No. 52-5) (2017 Form 20-F) at 29 ("Both our internal control environment and the infrastructure that underlies it fall short in a number of areas of our standards for completeness and comprehensiveness and are not well integrated across the Bank."). Instead, their claim appears to be that Deutsche Bank did not do enough to address those areas for improvement or did not address them quickly enough. *See* Opp'n at 32-33 ("The serious allegations here . . . concern knowingly onboarding and servicing individuals engaged in criminality—issues that go to the heart of compliance with laws and regulations, and corporate integrity."). Such alleged conduct is not, as a matter of law, actionable as securities fraud. *See*

*In re Citigroup, Inc. Securities Litigation*, 330 F. Supp. 2d 367, 375 (S.D.N.Y. 2004) (dismissing allegations defendants failed to adhere to risk management policies as mismanagement claims).

      **D.**      <u>**Plaintiffs' Scienter Allegations Are Inadequate**</u>

          *1.*      *Plaintiffs Do Not Sufficiently Allege Motive*

In response to Deutsche Bank's argument that the Complaint pleads only generic profit motives insufficient to support scienter (Moving Br. at 23), Plaintiffs seek to recast the Complaint as alleging a motive based on the "Individual Defendants' continued desire to retain access to the highest levels of Russian businessmen and politicians." Opp'n at 41 (citing SAC ¶¶ 50-52). As an initial matter, this is a clumsy attempt to repackage their insufficient profit-seeking theory of scienter. *Payne* v. *DeLuca*, 433 F. Supp. 2d 547, 565 (W.D. Pa. 2006) ("Of course, the goal of every director and officer of a business entity is to assure its longevity and market position, not only for personal motives such as compensation or the prestige of being associated with a successful organization, but also for the more general purposes of attracting investors and achieving the goals of the corporation, including profitability.").

Even if this allegation could support an inference of scienter (which it cannot), Plaintiffs fail to sufficiently allege it. Indeed, Plaintiffs only claim that *former* Deutsche Bank CEOs and executives, Josef Ackermann and Juergen Fitschen, both of whom left Deutsche Bank before the Class Period, engaged in potentially relevant conduct. *See* SAC ¶ 51 (alleging that "*for Ackermann*" the prestige associated with attending meetings of the Foreign Investment Advisory Council ("FIAC") "was boosted by several personal meetings with Russian president Vladimir Putin") (emphasis added); ¶ 52 (alleging that Ackermann boasted that "*he* was 'well on his way to getting a Russian diplomatic passport'") (emphasis added); *see also* ¶ 51 (referring to a 2013 speech given by *Fitschen* to the FIAC). Plaintiffs do not offer any non-conclusory allegation tying their proposed theory of motive to any conduct during the Class Period, much less any

named Defendant, as they must.  *Wilson* v. *Bernstock*, 195 F. Supp. 2d 619, 633 (D.N.J. 2002) ("Motive entails allegations that the *individual corporate defendants* stood to gain in a concrete and personal way from one or more of the allegedly false or misleading statements and wrongful nondisclosures.") (emphasis added, citation omitted).

     2.     *Plaintiffs Fail to Sufficiently Allege Conscious Misbehavior or Recklessness*

Plaintiffs confusingly argue both that: (a) information identified by the British Authority could not have adequately informed investors of Deutsche Bank's alleged control weaknesses during the Class Period (Opp'n at 27), and (b) the same information supports a strong inference of scienter (Opp'n at 33-34).  This contradiction defeats their theory of scienter and underscores the weakness of their claims.  Similarly, Plaintiffs' references to internal audit reports identifying potential control weaknesses during the Class Period cannot support an inference of scienter where, as here, Plaintiffs cannot identify specific contradictory information of which any Individual Defendant was aware at the time he allegedly made the relevant statements.  *See* Opp'n at 35.  For example, while CW3 claims that Deutsche Bank's Chief Auditor was copied on reports describing these alleged weaknesses, Plaintiffs' conclusory allegation that he "*would have* reported *any* audit results to Deutsche Bank's CEO" is purely speculative.  *Id.*  Moreover, and as described in detail above, Plaintiffs' claim that Deutsche Bank denied the possibility of KYC deficiencies is contradicted by the plain text of the very article on which Plaintiffs rely. *See supra* Part II.A.  Despite Plaintiffs' argument to the contrary, the "denial" of internal control weaknesses cannot support scienter, where Deutsche Bank acknowledged those potential weaknesses, both in the press and in its own disclosures.  Regardless, Plaintiffs do not (and cannot) deny that Deutsche Bank undertook substantial remediation efforts during the Class Period.  *See* Moving Br. at 5-6.  This action, which Plaintiffs ignore, firmly rebuts an inference of scienter.  *Kumar* v. *Kulicke & Soffa Industries, Inc.*, 2019 WL 5081896, at *9 (E.D. Pa. Oct.

-14-

9, 2019) ("Defendants contend that considering remedial action after the discovery of weaknesses supports the non-culpable inference that Kulicke was attempting to improve its processes to prevent future mistakes. . . . This Court agrees.") (citation omitted); *see also Sfiraiala*, 729 F. App'x at 59 (allegations concerning Deutsche Bank's agreement to improve its anti-money laundering controls could not support conscious misbehavior or recklessness where there was no indication that Deutsche Bank failed to comply with that agreement).

3.    *The Confidential Witness Allegations Cannot Remedy the Gaps in Plaintiffs' Scienter Allegations*

In their opposition brief, Plaintiffs ignore that Deutsche Bank highlighted potential deficiencies regarding their confidential witness allegations.  Instead, they attempt to argue past these fundamental flaws, which does not save their scienter claims.  As an initial matter, and as described in Deutsche Bank's Moving Brief (at 37-39), these allegations are riddled with inconsistencies or other details that undermine their trustworthiness.  For example, CW1 departed Deutsche Bank in 2015, years before the beginning of the alleged Class Period, and Plaintiffs' ambiguous pleading makes it unclear whether CW7 left before or after the start of the alleged Class Period in 2017.  SAC ¶¶ 23, 29.

Plaintiffs claim that pre-Class Period allegations support an inference about conditions during the Class Period (Opp'n at 39 n.18), but this misses the point.  These witnesses do not seek to describe *only* pre-Class Period conditions.  Instead, Plaintiffs rely on these witnesses to provide information about which those witnesses could not possibly have knowledge or which is contradicted elsewhere in the Complaint.  CW1 describes conduct in April 2018 and beyond, despite leaving Deutsche Bank a year earlier.  *See* SAC ¶¶ 56-57.  Moreover, while CW1 claims that Deutsche Bank conducted *no* diligence on Epstein (SAC ¶ 54),[3] the Complaint devotes

---

[3]    CW1 later claims that Deutsche Bank conducted no "*real* due diligence" on Epstein.

paragraphs to describing high level meetings among Deutsche Bank personnel to discuss his onboarding (SAC ¶¶ 81-87).  This is no semantic failure.  To the extent Plaintiffs allege that the diligence on Epstein was *insufficient* or that Deutsche Bank erred by taking him on as a client, that claim sounds in corporate mismanagement, not securities fraud.  *See supra*, Part II.B.  Indeed, the confidential witness allegations are riddled with similar allegations concerning corporate mismanagement as opposed to securities fraud.  *See, e.g.*, SAC ¶ 69 (CW7 alleged that clients who "were able to make the bank money . . . [were] going to come on board regardless); *see also* Moving Br. at 31-32.

Even if these allegations were sufficient to sustain an actionable securities claim (which they are not), Plaintiffs muster no response to Deutsche Bank's argument that they fail to connect the confidential witness allegations to any allegedly misleading public statement.  *See* Moving Br. at 37.  *In re Synchronoss Technologies, Inc. Securities Litigation*, is instructive on this point.  There, the Court rejected substantially similar confidential witness allegations as insufficient to establish scienter.  2020 WL 2786936, at *8 (D.N.J. May 29, 2020).  While the confidential witnesses "provided detailed allegations regarding the alleged practice of manipulating expenses through the use of [a] 'flash file,'" those witnesses could supply "no particular allegations that any 'flash file' document contained specific facts that contradicted any identified public statement."  *Id.*  Having failed to link "the alleged improper reclassification of expenses and any particular public statements," the Court concluded that no inference of scienter could be made from those allegations.  *Id.*  Here, too, the confidential witnesses do not allege that Deutsche Bank was not, in fact, making good faith efforts to improve its internal control processes.  Nor do the confidential witness allegations undermine Deutsche Bank's repeated and detailed warnings

---

SAC ¶ 85 (emphasis added).

as to how those efforts could be frustrated or delayed.  *See In re DB*, 2017 WL 4049253, at *8 ("[C]onfidential source allegations must show that individual defendants actually possessed the knowledge highlighting the falsity of public statements; conclusory statements that defendants 'were aware' of certain information, and mere allegations that defendants 'would have' or 'should have' had such knowledge [are] insufficient.") (citation omitted).

## III.   PLAINTIFFS' SECTION 20(A) CLAIM FAILS AS A MATTER OF LAW

Having failed to state a claim of primary liability under Section 10(b), Plaintiffs also fail, as a matter of law, to state a claim for secondary liability under Section 20(a).  *See* Moving Br. at 40-41.  But even if Plaintiffs had properly stated a claim under Section 10(b), they have also failed to rebut Deutsche Bank's argument that they do not sufficiently allege the Individual Defendants' culpable participation in the alleged securities violations.  Instead, Plaintiffs merely argue that the "trend" in this District is to omit "culpable participation" as a necessary element of a Section 20(a) claim.  Opp'n at 42.  The language on which Plaintiffs rely to overcome this requirement is not nearly as pervasive as they contend.  *See Derensis* v. *Coopers & Lybrand Chartered Accountants*, 930 F. Supp. 1003, 1012-13 (D.N.J. 1996).  The Third Circuit has yet to resolve the split among the District Courts.  *See Belmont* v. *MB Investment Partners, Inc.*, 708 F.3d 470, 485-86 (3d Cir. 2013) (reserving issue); *In re Cognizant Technology Solutions Corp. Securities Litigation*, 2020 WL 3026564, at *33-34 (D.N.J. June 5, 2020) (Salas, J.) (recognizing split), *motion to certify appeal denied*, 2021 WL 1016111 (D.N.J. Mar. 17, 2021).  Meanwhile, many District Courts in the Circuit continue to require allegations of culpable participation at the pleading stage.[4]

---

[4]     *See, e.g.*, *Starr Investments Cayman II, Inc.* v. *China MediaExpress Holdings, Inc.*, 2014 WL 4180331, at *3 (D. Del. Aug. 21, 2014); *Universal American Corp.* v. *Partners Healthcare Solutions Holdings, L.P.*, 61 F. Supp. 3d 391, 398 (D. Del. 2014); *Zazzali* v. *Alexander Partners, LLC*, 2013 WL 5416871, at *11-12 (D. Del. Sept. 25, 2013); *In re*

Plaintiffs attempt to avoid the culpable participation requirement because they know they cannot satisfy it with their insufficient scienter allegations. Opp'n at 42.  As discussed *supra*, those allegations are inadequate (*see supra* Part II.D), and, moreover, do not show that any Individual Defendant "substantially participated" in others' wrongdoing.

## **CONCLUSION**

This action should be transferred to the Southern District of New York, or in the alternative, the Complaint should be dismissed with prejudice.

Dated: July 1, 2021

/s/ Mark C. Errico
Mark C. Errico
Squire Patton Boggs (US) LLP
382 Springfield Avenue
Summit, New Jersey 07901
(973) 848-5600
mark.errico@squirepb.com

David G. Januszewski (admitted *pro hac vice*)
Sheila C. Ramesh (admitted *pro hac vice*)
Cahill Gordon & Reindel LLP
32 Old Slip
New York, New York 10005
(212) 701-3000
djanuszewski@cahill.com
sramesh@cahill.com

*Attorneys for Defendants Deutsche Bank Aktiengesellschaft, John Cryan, Christian Sewing, Marcus Schenck, and James Von Moltke*

---

*Merck & Co., Inc. Securities, Derivative & ERISA Litigation*, 2012 WL 3779309, at *9-10 (D.N.J. Aug. 29, 2012); *Stichting Pensioenfonds ABP* v. *Merck & Co., Inc.*, 2012 WL 3235783, at *11 (D.N.J. Aug. 1, 2012); *In re Heckmann Corp. Securities Litigation*, 869 F. Supp. 2d 519, 543 (D. Del. 2012); *Steamfitters Local 449 Pension Fund* v. *Alter*, 2011 WL 4528385, at *11 (E.D. Pa. Sept. 30, 2011); *Snowstorm Acquisition Corp.* v. *Tecumseh Products Co.*, 739 F. Supp. 2d 686, 707 (D. Del. 2010); *In re Digital Island Securities Litigation*, 223 F. Supp. 2d 546, 561-63 (D. Del. 2002); *In re: Nice Systems, Ltd. Securities Litigation*, 135 F. Supp. 2d 551, 588 (D.N.J. 2001).