**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ALI KARIMI, Individually and On Behalf of All
Others Similarly Situated,

                                   Plaintiffs,

                  v.

DEUTSCHE BANK AKTIENGESELLSCHAFT, JOHN
CRYAN, AND CHRISTIAN SEWING,

                                   Defendants.

---

**Case No. 1:22-cv-02854 (JSR)**

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

**Page(s)**

I.  PRELIMINARY STATEMENT ........................................................................ 1

II. NATURE OF THE ACTION .......................................................................... 3

    A.  Procedural History of the Litigation ................................................... 4

        1.  The Initial Complaint and the Lead Plaintiff Appointment Process ........... 4

        2.  Lead Counsel's Investigation and the Amended Complaint ...................... 4

        3.  Motions to Transfer and Dismiss the SAC ......................................... 5

        4.  Discovery and Class Certification .................................................. 5

        5.  Mediation ............................................................................. 6

    B.  Summary of Key Terms of the Proposed Settlement .............................. 6

        1.  Relief to Class Members and Release of Claims ................................. 6

        2.  Class Notice and Settlement Administration ...................................... 7

            a)  Notice ......................................................................... 7

            b)  Administration .............................................................. 8

        3.  Papers in Support of the Settlement, Award of Lead Counsel Fees and Expenses, and Plaintiffs' Compensatory Award ................................. 8

        4.  Objections ............................................................................ 8

        5.  Opt-Outs .............................................................................. 9

        6.  Termination of the Settlement ..................................................... 9

        7.  No Admission of Liability .......................................................... 9

III. STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(E) ................. 10

IV. ARGUMENT ....................................................................................... 11

    A.  The Settlement Is Fair, Reasonable, and Adequate ............................. 11

        1.  Plaintiffs and Lead Counsel Adequately Represented the Class ............. 11

|   | 2. | The Settlement Is the Result of Arm's Length Negotiations | 12 |
|---|----|-----------------------------------------------------------|----|
|   | 3. | The Settlement Is an Excellent Result for the Class | 12 |
|   |    | a)  Complexity, Expense and Duration of Litigation | 13 |
|   |    | b)  Establishing Liability and Damages | 13 |
|   |    | c)  Risks of Maintaining Class Action Status | 15 |
|   |    | d)  Range of Reasonableness in Light of the Best Possible Recovery and Attendant Risks of Litigation | 15 |
|   | 4. | Rule 23(e)(2)(C)(ii)-(iv) | 16 |
|   | 5. | The Settlement Treats All Settlement Class Members Equitably Relative to Each Other | 18 |
|   | 6. | The Remaining Grinnell Factors Are Neutral or Weigh in Favor of Preliminary Approval | 18 |
| B. |   | Certification of The Settlement Class for Settlement Purposes Is Appropriate | 19 |
|   | 1. | The Settlement Class Satisfies the Requirements of Rule 23(a) | 20 |
|   | 2. | The Settlement Class Satisfies the Requirements of Rule 23(b)(3) | 21 |
|   | 3. | Lead Counsel Should Be Appointed Counsel For the Settlement Class | 23 |
|   | 4. | The Court Should Approve the Proposed Form and Method of Notice | 23 |
| V. |   | PROPOSED SCHEDULE OF EVENTS | 25 |
| CONCLUSION |   |   | 26 |

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)..................................................................................................19, 21, 22

*Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*,
  133 S. Ct. 1184 (2013)..........................................................................................................21

*Cent. States SE & SW Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
  504 F.3d 229 (2d Cir. 2007)..................................................................................................20

*Chatelain v. Prudential-Bache Sec., Inc.*,
  805 F. Supp. 209 (S.D.N.Y. 1992)........................................................................................15

*Christine Asia Co., Ltd. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019).......................................................................17

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)..............................................................................10, 11, 18, 19

*Consol. Edison, Inc. v. Ne. Utilities*,
  332 F. Supp. 2d 639 (S.D.N.Y. 2004)...................................................................................23

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001)....................................................................................................12

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006)..................................................................................................19

*Fishoff v. Coty Inc.*,
  2010 WL 305358 (S.D.N.Y. Jan. 25, 2010),
  *aff'd*, 634 F.3d 647 (2d Cir. 2011) ......................................................................................14

*Green v. Deutsche Bank Aktiengesellschaft*,
  2019 WL 4805804 (S.D.N.Y. Sept. 30, 2019).......................................................................2

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ....................................................................................21, 25

*In re "Agent Orange" Prods. Liab. Litig.*,
  597 F. Supp. 740 (E.D.N.Y. 1984),
  *aff'd*, 818 F.2d 145 (2d Cir. 1987) ......................................................................................15

*In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012)...................................................................................18

*In re Citigroup, Inc. Sec. Litig.*,
   965 F. Supp. 2d 369 (S.D.N.Y. 2013)................................................................18

*In re Deutsche Bank Aktiengesellschaft Securities Litigation*,
   2017 WL 4049253 (S.D.N.Y. June 28, 2017) .....................................................2

*In re EVCI Career Colls.*,
   2007 WL 2230177 (S.D.N.Y. July 27, 2007) ....................................................11

*In re Facebook, Inc.*,
   822 F. App'x 40 (2d Cir. 2020) ........................................................................12

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
   343 F. Supp. 3d 394 (S.D.N.Y. 2018)................................................................12

*In re IPO Sec. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009)................................................................17

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) ......................................................................18

*In re Metlife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010)...............................................................19

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
   310 F.R.D. 230 (S.D.N.Y. 2015) ................................................................20, 22

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ......................................................................12

*In re Patriot Nat'l, Inc. Sec. Litig.*,
   828 Fed. Appx. 760 (2d Cir. Oct. 2, 2020)...................................................11, 21

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019).........................................................................10

*In re Petrobras Sec. Litig.*, No. 14-CV-9662 (JSR),
   2018 WL 4521211 (S.D.N.Y. Sept. 21, 2018),
   *aff'd*, 778 F. App'x 46 (2d Cir. 2019) ................................................................8

*In re Pfizer Inc. Sec. Litig.*,
   282 F.R.D. 38 (S.D.N.Y. 2012) ........................................................................20

*In re Sadia, S.A. Sec. Litig.*,
   269 F.R.D. 298 (S.D.N.Y. 2010) ......................................................................20

*In re Twinlab Corp. Sec. Litig.*,
   187 F. Supp. 2d 80 (E.D.N.Y. 2002) ................................................................20

*In re Vivendi, S.A. Sec. Litig.*,
   838 F.3d 223 (2d Cir. 2016)....................................................................................21

*In re Vivendi Universal, S.A.*,
   242 F.R.D. 76 (S.D.N.Y. 2007) ..............................................................................21

*Kalnit v. Eichler*,
   99 F. Supp. 2d 327 (S.D.N.Y. 2000),
   *aff'd*, 264 F.3d 131 (2d Cir. 2001) .........................................................................14

*Landmen Partners Inc. v. The Blackstone Grp., L.P.*,
   2013 WL 11330936 (S.D.N.Y. Dec. 13, 2013) .....................................................17

*Lea v. Tal Educ. Grp.*,
   2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021)........................................................17

*Maley v. Del Global Tech. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002).....................................................................17

*Moloney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
   2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) .......................................................17

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950).................................................................................................24

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985).................................................................................................22

*Plymouth Cnty. Ret. Sys. v. GTT Commc'ns, Inc.*,
   2021 WL 1659848 (E.D. Va. Apr. 23, 2021) ........................................................17

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015).....................................................................................21

*Sfiraiala v. Deutsche Bank Aktiengesellschaft ("In re DB Appeal")*,
   729 F. App'x 55 (2d Cir. 2018) .................................................................................2

*Shapiro v. JPMorgan Chase & Co.*,
   2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) .......................................................23

*Strougo v. Barclays PLC*,
   312 F.R.D. 307 (S.D.N.Y. 2016) ............................................................................23

*Vargas v. Capital One Fin. Advisors*,
   559 F. App'x 22 (2d Cir. 2014) ...............................................................................23

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982).......................................................................................19

## Statutes

15 U.S.C. § 78u-4 ...................................................................................................17, 23, 24

Class Action Fairness Act, 28 U.S.C. § 1715 ...............................................................7

PSLRA .......................................................................................................................23, 25

Securities Exchange Act of 1934 Section 10(b) ..........................................................4

## Rules

Fed. R. Civ. P. 23 ...............................................................................................*passim*

Rule 10b-5.............................................................................................................4

Lead Plaintiff Yun Wang ("Wang" or "Lead Plaintiff") and Named Plaintiff Ali Karimi ("Karimi" or "Named Plaintiff," and, with Wang, "Plaintiffs"), individually and on behalf of all Settlement Class Members, respectfully submit this memorandum in support of their unopposed motion seeking: (i) preliminary approval of the proposed Settlement presented in the Stipulation and Agreement of Settlement dated September 23, 2022 (the "Stipulation")[1]; (ii) certification of the proposed Settlement Class; (iii) approval of the form and manner of giving notice of the proposed Settlement to the Settlement Class Members; (iv) a date for a Settlement Fairness Hearing (the "Settlement Hearing") and deadlines for the mailing and publication of the Postcard Notice ("Postcard") and Summary Notice, for Settlement Class Member objections and Settlement Class Member opt-out notices, for the filing of Plaintiffs' motion for Final Approval of the Settlement, and for the filing of Lead Counsel's application for an award of attorneys' fees and reimbursement of expenses and a compensatory award to Plaintiffs.

## I.    PRELIMINARY STATEMENT

Plaintiffs have achieved an excellent resolution of this litigation.  The proposed Settlement will resolve all claims against Defendants[2] in exchange for a sizable cash payment of $26,250,000 (the "Settlement Amount") for the benefit of the Settlement Class.   This recovery represents *approximately 49.4%* of the likely recoverable damages in this case, which is well above the median recovery of 1.8% of estimated damages for all securities class actions settled in 2021. This is powerful evidence that the Settlement is substantively fair to investors.

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation, attached as Exhibit 1 to the Declaration of Emma Gilmore ("Gilmore Decl."), which is filed concurrently herewith.

[2] Defendants are Deutsche Bank Aktiengesellschaft ("Deutsche Bank" or the "Company"), and John Cryan and Christian Sewing (collectively, the "Individual Defendants," and, together with Deutsche Bank, "Defendants").

The Settlement is also procedurally fair.  By the time the Settlement was reached, Plaintiffs and their counsel were well-informed about the strengths and weaknesses of the claims and Defendants' defenses. Before reaching the Settlement, Lead Counsel: (i) conducted a comprehensive investigation into Defendants' allegedly wrongful acts, which included consultation with loss causation and damages experts; (ii) drafted a comprehensive 73-page Second Amended Class Action Complaint (the "SAC") based on an extensive investigation and filed the SAC in the District of New Jersey; (iii) opposed Defendants' motion to transfer venue to this Court; (iv) and successfully opposed, in part, Defendants' motion to dismiss the SAC. Plaintiffs' defeat of Defendants' motion to dismiss is especially striking given the challenges Plaintiffs faced in asserting their claims. For example, courts have been reluctant to sustain claims where, as here, investors allege that they were misled about a financial institution's internal controls, even when it relates to money laundering.  Indeed, in moving to dismiss, Defendants cited *two* prior cases brought against Deutsche Bank alleging misrepresentations concerning internal controls, both of which were dismissed, with one dismissal affirmed by the Second Circuit on scienter grounds. *See* ECF No. 52-1 at 1-3 (citing *In re Deutsche Bank Aktiengesellschaft Securities Litigation*, 2017 WL 4049253 (S.D.N.Y. June 28, 2017), *aff'd sub nom. Sfiraiala v. Deutsche Bank Aktiengesellschaft ("In re DB Appeal")*, 729 F. App'x 55 (2d Cir. 2018) (Summary Order); *Green v. Deutsche Bank Aktiengesellschaft*, 2019 WL 4805804 (S.D.N.Y. Sept. 30, 2019).

After the Court denied Defendants' motion to dismiss, Lead Counsel (v) filed the Third Amended Complaint (the "TAC"), which lengthened the Class Period based on new allegations; (vi) served and responded to various demands for the production of documents and interrogatories, engaged in meet and confers with respect to discovery requests, exchanged discovery deficiency letters and communications with Defendants, produced their own documents and received over

76,000 documents from Defendants and engaged in an extensive review of documents received from Defendants; (vii) engaged an expert in support of Plaintiffs' pending motion for Class Certification; (viii) moved for class certification; (ix) prepared Plaintiffs and the class certification expert for depositions; (x) defended the deposition of each of the Plaintiffs and their class certification expert; (xi) drafted and exchanged mediation statements; (xii) participated in a two-day in-person mediation session before former United States District Judge Layn R. Phillips; and (xiii) engaged in negotiations regarding the terms of the proposed Settlement. The Settlement is, therefore, the result of arm's-length negotiations conducted by informed and experienced counsel, in conjunction with a well-respected mediator.

As discussed below, Plaintiffs and Lead Counsel believe the proposed Settlement meets the standards for preliminary approval and is in the best interests of the Settlement Class. Plaintiffs thus respectfully request that the Court grant the Settlement preliminary approval.

## II.    NATURE OF THE ACTION

This is a securities class action brought by investors alleging that Defendants made materially false and misleading statements and/or omissions about Deutsche Bank's "Know Your Customer" processes and procedures, including their effectiveness. For example, Defendants represented to investors that the bank's procedures "start with intensive checks," are "robust and strict" and "include strict identification requirements." Plaintiffs further alleged that the price of Deutsche Bank's common stock was artificially inflated as a result of Defendants' allegedly false and misleading statements, and declined when the truth emerged.

A.     **Procedural History of the Litigation**

1.   **The Initial Complaint and the Lead Plaintiff Appointment Process**

On July 15, 2020, Karimi filed a securities class action against Defendants in the District of New Jersey ("D.N.J."). ECF No. 1. On December 28, 2020, D.N.J Judge Kevin McNulty appointed Wang as Lead Plaintiff and appointed Pomerantz LLP as Lead Counsel. ECF No. 31.

2.   **Lead Counsel's Investigation and the Amended Complaint**

Following Lead Counsel's appointment, counsel conducted a comprehensive investigation into Deutsche Bank's allegedly wrongful acts, which included, among other things: (1) reviewing and analyzing (a) Deutsche Bank's filings with the U.S. Securities and Exchange Commission ("SEC"), (b) public reports and announcements, research reports prepared by analysts, and news articles concerning Deutsche Bank, (c) Deutsche Bank's investor call transcripts, and (d) other publicly available material related to Deutsche Bank; and (2) conducting an extensive investigation (with the aid of a private investigator) that involved, *inter alia*, numerous interviews of former Deutsche Bank employees. Lead Counsel also consulted with damages and loss causation experts.

On March 1, 2021, Plaintiffs filed the 73-page SAC, which asserted claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder, and against the Individual Defendants under Section 20(a) of the Exchange Act. ECF No. 37. Among other things, the SAC alleged that Defendants violated Section 10(b) of the Exchange Act by misrepresenting the Company's KYC processes and procedures. The specific statements that Plaintiffs alleged were false and misleading included, *inter alia*, repeated assurances that Deutsche Bank had "developed effective procedures for assessing clients (Know Your Customer or KYC) and a process for accepting new clients in order to facilitate comprehensive compliance," and that "[o]ur KYC procedures start with intensive

checks before accepting a client and continue in the form of regular reviews." ¶¶142, 157, 172.[3] Plaintiffs further alleged that Defendants misrepresented that the bank's KYC program "includes strict identification requirements, name screening procedures and the ongoing monitoring and regular review of all existing business relationships," with "[s]pecial safeguards . . . implemented for . . . politically exposed persons…" *Id.* ¶¶144, 159, 174. In addition to alleging that these and other statements were false and misleading, the SAC alleged that the price of Deutsche Bank's common stock was artificially inflated during the Settlement Class Period as a result of Defendants' allegedly false and misleading statements, and declined when the truth was revealed.

### 3. Motions to Transfer and Dismiss the SAC

On April 23, 2021, Defendants moved to dismiss the SAC, or, in the alternative to transfer the action to the Southern District of New York. ECF No. 52. On June 1, 2021, Plaintiffs opposed both Defendants' motion to dismiss and the motion to transfer. ECF No. 58. On July 1, 2021, Defendants filed a reply in further support of their motions to dismiss and transfer. ECF No. 62.

On March 31, 2022, Judge Salas of the D.N.J. granted Defendants' motion to transfer the action to this Court. ECF Nos. 63-64. On May 16, 2022, this Court held oral argument on the motion to dismiss, and on May 18, 2022 advised the parties that the Court would grant Defendants' motion in part and deny it in part. ECF No. 81. On June 13, 2022, the Court issued its Opinion and Order granting Defendants' motion in part and denying it in part. ECF No. 86.

### 4. Discovery and Class Certification

On May 25, 2021, the parties and the Court participated in a telephonic scheduling conference, and on May 26, 2021, the Court entered a Civil Case Management Plan that, among other things, ordered Plaintiffs to move for Class Certification by July 18, 2022, Defendants to

---

[3] References to "¶__" or "¶¶__" are to paragraphs in the SAC.

oppose that motion by August 22, 2022, and Plaintiffs to reply in further support of their motion by September 19, 2022. Thereafter, the parties exchanged, responded to, and met and conferred regarding requests for documentary discovery and interrogatories. The parties also began to negotiate search terms for electronically stored information ("ESI") and proposed custodians. Defendants made several document productions in response to Plaintiffs' discovery requests.

On July 18, 2022, Plaintiffs moved for class certification in reliance on an expert report by Zachary D. Nye, Ph.D. Defendants took, and Plaintiffs defended, the depositions of each Plaintiff and Dr. Nye and opposed Plaintiffs' motion for class certification on August 22, 2022.

### 5. Mediation

On September 6 and 7, 2022, the parties participated in private mediation sessions with former U.S. District Judge Layn R. Phillips. Before the mediation, the parties exchanged detailed mediation statements and exhibits, which addressed, *inter alia*, liability, loss causation, and damages. During the mediation, the parties reached an agreement in principle to settle the action for $26,250,000.00 for the benefit of the Settlement Class, subject to the execution of a settlement stipulation and related papers. On September 8, 2022, the parties informed the Court of the agreement in principle, and the Court agreed to adjourn class certification briefing and oral argument, and ordered that preliminary approval papers be filed no later than September 23, 2022.

### B. Summary of Key Terms of the Proposed Settlement

#### 1. Relief to Class Members and Release of Claims

Defendants have agreed to settle the litigation for $26,250,000. The monies will be deposited in an escrow account maintained by the Escrow Agent and will be held in instruments or accounts backed by the Full Faith & Credit of the U.S. Government. If the Settlement is approved, none of the monies will revert to Deutsche Bank or its insurance carriers. If the

Settlement is not approved, or otherwise does not become effective, the monies other than notice and administrative expenses already incurred will revert.

### 2. Class Notice and Settlement Administration

#### a) Notice

Within 21 days of Preliminary Approval, a proposed Postcard substantially in the form set forth in Exhibit A-4 to the Stipulation will be mailed to each Settlement Class Member identified by records maintained by Deutsche Bank's transfer agent, as well as institutional investors, and a list of banks and brokerage firms that usually maintain custodial accounts. The Postcard Notice will direct Class Members to the website maintained by the Claims Administrator, www.deutschebanksecuritieslitigation.com, where each can find the Stipulation and its exhibits, the Preliminary Approval Order, and the Notice and Proof of Claim and Release Form, containing directions on how to complete and submit Proof of Claims forms electronically, as well as directions on how to request that a Proof of Claim form and related documents, including the Long Form Notice, are mailed to the Class Members. A Summary Notice will also be published through the internet, since that medium is most frequently accessed by investors, and is cost-effective.

The Postcard describes in plain English the terms of the Settlement, the documents found at www.deutschebanksecuritieslitigation.com, documents the considerations that led Lead Counsel and Plaintiffs to conclude that the Settlement is fair and adequate, describes the Plan of Allocation, and the maximum attorneys' fees award and expense reimbursement and proposed compensatory awards that may be sought.

The Postcard will also provide the date of the Settlement Hearing, as well as the procedures for objecting to the foregoing matters or opting out of the Settlement. It is respectfully requested that the Settlement Hearing be scheduled no earlier than 100 days after entry of the Preliminary Approval Order. This will allow mailing to be completed within 21 days; Settlement Class

Case 1:22-cv-02854-JSR   Document 100   Filed 09/23/22   Page 15 of 34

Members to have ample time to consider their options and, if they choose, to file objections or opt out of the Settlement Class; service of notices under the Class Action Fairness Act, 28 U.S.C. § 1715; and time for the parties to respond to such objections.

The Postcard will also set the date by which claims must be filed, which Lead Counsel requests be postmarked no later than seven (7) calendar days after the Settlement Hearing.

### b)  Administration

After a competitive bidding process, Lead Counsel selected AB Data Ltd. (the "Claims Administrator") to administer notice and process claims for the Settlement. The administrator is well known and experienced in the administration of securities fraud class action settlements.

### 3.  Papers in Support of the Settlement, Award of Lead Counsel Fees and Expenses, and Plaintiffs' Compensatory Award

No later than 35 days before the Settlement Hearing, Lead Counsel will submit papers in support of the Settlement and Plan of Allocation, as well as the request for the awards of attorney fees, expenses, and Plaintiffs' compensatory award. Those papers will explain why the Settlement should be approved, as well as Lead Counsel's efforts on behalf of the Class (including the time and rates of each attorney and paralegal who contributed to the outcome).

No less than 7 days before the Settlement Hearing, Lead Counsel may submit reply papers in support of the motion for final approval of Settlement, Plan of Allocation, request for an award of attorneys' fees and expenses, or request for a compensatory award to Plaintiffs.

### 4.  Objections

Any Settlement Class Member who objects to the Settlement or related matters must do so 21 days before the Hearing, and must send copies of such objections to the Court as well as designated counsel for the Settlement Class and Defendants. Any Settlement Class Member who

does not file a timely written objection to the Stipulation shall be foreclosed from seeking any adjudication or review of the Stipulation by appeal or otherwise.

To ensure the legitimacy of any such objections, the Settlement Class Member must file documents evidencing transactions in Deutsche Bank securities, as well as submit to this Court's jurisdiction for a possible deposition. *See In re Petrobras Sec. Litig.*, No. 14-CV-9662 (JSR), 2018 WL 4521211, at *4 (S.D.N.Y. Sept. 21, 2018), *aff'd*, 778 F. App'x 46 (2d Cir. 2019).

### 5.  Opt-Outs

Any Settlement Class Member who wishes to be excluded must do so by written request accompanied by Deutsche Bank transaction documentation, postmarked no later than 21 days before the Settlement Hearing. The opt-out must be sent to Lead Counsel, Defendants' Counsel, and the Claims Administrator (but not the Court).

### 6.  Termination of the Settlement

Defendants have the right to withdraw from the Settlement if Settlement Class Members owning a previously negotiated amount of Deutsche Bank securities elect to opt out of the Class. The threshold amount is set forth in a separate agreement that will not be filed with the Court unless Defendants choose to exercise their right of withdrawal or otherwise directed by the Court.

In the event that the Settlement is not approved by the Court, or does not become final due to any appeals or Defendants' withdrawal, the parties will return to their respective positions before the Settlement, and the litigation will proceed apace.

### 7.  No Admission of Liability

By entering into the Stipulation, the Defendants do not admit liability and continue to deny that they engaged in any misconduct or violated the law.

## III.      STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(E)

A class action settlement should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).[4]  Preliminary approval should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  *Id.*  Rule 23(e)(2)—which governs final approval—requires  courts to consider the following questions in determining whether a proposed settlement is fair, reasonable, and adequate:

(A)      have the class representatives and class counsel adequately represented the class;

(B)      was the proposal negotiated at arm's length;

(C)      is the relief provided for the class adequate, taking into account:

  i.      the costs, risks, and delay of trial and appeal;

  ii.      the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

  iii.      the terms of any proposed award of attorneys' fees, including timing of payment; and

  iv.      any agreement required to be identified under Rule 23(e)(3); and

(D)      does the proposal treat class members equitably relative to each other.

These Rule 23(e)(2) factors "add to, rather than displace, the *Grinnell* factors." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019).  The Second Circuit's traditional factors utilized to evaluate the propriety of a class action settlement (certain of which overlap with Rule 23(e)(2)) are still relevant:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement;[5] (3) the stage of the proceedings and the amount of

---

[4] Unless otherwise indicated, all emphasis is added and citations and quotations omitted.

[5] The Court does not yet have the benefit of the Settlement Class's reaction because notice of the proposed Settlement has not yet been provided to the Settlement Class.

> discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).  As set forth below, the proposed Settlement satisfies the criteria for preliminary approval under the Rule 23(e)(2) factors, as well as the relevant, non-duplicative *Grinnell* factors.

## IV.     ARGUMENT

### A.     The Settlement Is Fair, Reasonable, and Adequate

#### 1.   Plaintiffs and Lead Counsel Adequately Represented the Class

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class."  In assessing adequacy, "the primary factors are whether the representatives have any 'interests antagonistic to the interests of other class members' and whether the representatives 'have an interest in vigorously pursuing the claims of the class.'" *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 Fed. Appx. 760, 764 (2d Cir. Oct. 2, 2020) (citing cases).

*First*, Plaintiffs' claims are typical of and coextensive with the claims of the Settlement Class, and they have no antagonistic interests.  Plaintiffs suffered substantial losses as a result of Defendants' allegedly wrongful conduct, and their interest in obtaining the largest possible recovery is aligned with the other Settlement Class Members.  *See Patriot*, 828 Fed. Appx. at 764 (finding adequacy where plaintiffs were "motivated to recover as much as possible for each class member.").  Plaintiffs also diligently oversaw the litigation and communicated with Lead Counsel to discuss case developments, including settlement.  *See In re EVCI Career Colls.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007) ("a settlement reached under the supervision of appropriately selected Plaintiffs is entitled to an even greater presumption of reasonableness.").

*Second*, Plaintiffs retained counsel that are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases. *See* Gilmore Decl. Ex. 3. Lead Counsel vigorously prosecuted the Settlement Class's claims, and the parties were acutely aware of the strengths and weaknesses of the case before settling the action (*see* Sections I-II, *supra*). *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (courts have consistently given "'great weight' . . . to the recommendations of counsel").

### 2. The Settlement Is the Result of Arm's Length Negotiations

Rule 23(e)(2)(B) requires procedural fairness: that "the proposal was negotiated at arm's length." A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel." *Wal-Mart*, 396 F.3d at 116; *see also In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 409 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020) (involvement of a third-party mediator makes the settlement procedurally fair). Here, as explained above (Sec. II.A.5, *supra*), the parties arranged the mediation with Judge Phillips. The arm's-length nature of the settlement negotiations, and the involvement of a mediator with substantial experience mediating complex securities class actions, support finding the Settlement fair and free of collusion. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).

### 3. The Settlement Is an Excellent Result for the Class

Under Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). Each factor supports preliminary approval.

### a)  Complexity, Expense and Duration of Litigation

This action involves alleged violations of the federal securities laws, and Plaintiffs and Lead Counsel believe that the claims asserted against Defendants have merit.  They acknowledge, however, the expense and length of continued proceedings necessary to pursue their claims against Defendants through trial and appeals, as well as the very substantial risks they would face in establishing liability, loss causation, and damages (as discussed below).  Assuming Plaintiffs' claims were certified under Rule 23 (and not successfully reversed on a Rule 23(f) interlocutory appeal), and survived summary judgment, litigating the action through trial and post-trial appeals would have undoubtedly been a long and expensive endeavor.  Were the litigation to continue, a potential recovery—if any—would occur years from now, substantially delaying payment to the Settlement Class.  *GSE*, 414 F. Supp. 3d at 693.  By contrast, the Settlement provides an immediate and substantial recovery for the Settlement Class, without exposing the Settlement Class to the risk, expense, and delay of continued litigation.

### b)      Establishing Liability and Damages

In considering these factors, "a court 'should balance the benefits afforded the Class, including immediacy and certainty of recovery, against the continuing risks of litigation.'"  *Id.* at 694.  While Lead Counsel believes Plaintiffs' claims have merit, they also recognize that they faced substantial obstacles to proving liability, loss causation, and damages.  When compared to the certainty of the significant benefit conferred by the Settlement, these risks militate against further litigation and support a determination that the Settlement is fair, reasonable and adequate.

**Establishing Liability:**  The fact that Plaintiffs overcame Defendants' motion to dismiss in part is not a guarantee of ultimate success. Plaintiffs face ongoing risks associated with their pending motion for class certification (as described below) as well as Defendants' forthcoming summary judgment motions, in limine motions, trial, and likely appeals, which would extend the

litigation for years and might lead to a smaller recovery or no recovery at all. While Plaintiffs believe they effectively demonstrated that Defendants made materially false and misleading statements in violation of the federal securities laws, Defendants will contest at summary judgment and trial whether their statements are inactionable because they are too general and/or not objectively verifiable, Defendants publicly warned of risks, and/or the truth was on the market.

As noted above, *see supra* at 2, Plaintiffs face considerable challenges in continuing to assert their claims given that courts have been reluctant to sustain claims where, as here, investors allege that they were misled regarding a financial institution's application of internal controls.

In addition, Defendants will contest whether any alleged false and misleading statements were made with the requisite state of mind (*i.e.*, scienter) to support the securities fraud claims alleged. While Plaintiffs strongly disagree with this assertion, had the litigation continued there is simply no guarantee that the finder of fact would ultimately adopt Plaintiffs' view of the case. Indeed, scienter is commonly regarded to be the most difficult element to prove in a securities fraud claim. *See, e.g., Fishoff v. Coty Inc.*, 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010) ("[T]he element of scienter is often the most difficult and controversial aspect of a securities fraud claim"), *aff'd*, 634 F.3d 647 (2d Cir. 2011); *Kalnit v. Eichler*, 99 F. Supp. 2d 327, 345 (S.D.N.Y. 2000) (same), *aff'd*, 264 F.3d 131 (2d Cir. 2001).

**Loss Causation and Damages:** Plaintiffs would have also faced the significant risk that Defendants could argue that Plaintiffs' losses were not causally connected to the alleged false and misleading statements. Plaintiffs allege that the truth about Deutsche Bank's KYC processes leaked into the market through a series of corrective disclosures. The overwhelming majority of the alleged corrective disclosures, however, are subject to defenses that they were arguably not statistically significant. Accordingly, Defendants will likely assert that there was no statistically-

significant, Company-specific price drop on any corrective disclosure date, and thus that declines in Deutsche Bank's share price on the dates of the alleged corrective disclosures were not caused by the alleged corrective disclosures. If Defendants prevailed on these arguments, the amount of recoverable damages could be greatly diminished. Even if Plaintiffs overcame these arguments and prevailed at trial, that victory would not guarantee the Settlement Class a larger recovery.

### c)  Risks of Maintaining Class Action Status

While Plaintiffs and Lead Counsel are confident that the Settlement Class meets the requirements for certification, the class has not yet been certified, and Plaintiffs are aware there is a risk the Court could disagree. Even if the Court certified the class, there is always a risk that the certified class could be decertified at a later stage in the proceedings. *See Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992). Thus, the risks and uncertainty surrounding class certification support approval of the Settlement, as Defendants have opposed class certification. *See GSE*, 414 F. Supp. 3d at 694 ("this factor weighs in favor of settlement where it is likely that defendants would oppose class certification if the case were to be litigated").

### d)  Range of Reasonableness in Light of the Best Possible Recovery and Attendant Risks of Litigation

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prods. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). The proposed Settlement provides an all cash payment of $26,250,000 for the benefit of the Settlement Class. This is an excellent result in light of the risks of continued litigation. Plaintiffs' damages expert estimates that if Plaintiffs fully prevailed at summary judgment and trial, and the Court and jury accepted Plaintiffs' damages theory of $0.47 of inflation, the total potential maximum damages would be approximately $53.14

million.  Thus, the $26.250 million Settlement represents a recovery of ***approximately 49.4%***, well above the median recovery of 1.8% of estimated damages in securities class actions settled in 2021. *See* Gilmore Decl., Ex. 2 (Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* (NERA Jan. 25, 2022 at 24 (Fig. 22)).

### 4.  Rule 23(e)(2)(C)(ii)-(iv)

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"; "the terms of any proposed award of attorney's fees, including timing of payment"; and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv).  Each of these factors either supports approval of the Settlement or is neutral and does not suggest any basis for inadequacy of the Settlement.

**Rule 23 (e)(2)(C)(ii):**  The method for processing Settlement Class Members' claims includes well-established and effective procedures.  AB Data Ltd., the Claims Administrator selected by Lead Counsel (subject to Court approval), will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any claim deficiencies or request the Court to review their claim denial, and mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval.  Claims processing, like the method proposed here, is standard in securities class action settlements.  It has been long found to be effective, as well as necessary, insofar as neither Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process.[6]

---

[6] This is not a claims-made settlement.  If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted. *See* Stipulation ¶16.

**Rule 23(e)(2)(C)(iii):** As disclosed in the Notice, Lead Counsel will be applying for a percentage of the common fund fee award in an amount not to exceed 33.3% to compensate them for the services they have rendered on behalf of the Settlement Class.[7] A proposed attorneys' fee of up to 33.3% of the Settlement Fund (which includes interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained. It is also consistent with awards in similar complex class action cases.[8] Indeed, Courts routinely award attorneys' fees at that percentage of a settlement fund for similar and even higher recoveries.[9] More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, which may not be terminated based on a ruling with respect to attorneys' fees. *See* Stipulation ¶19. Plaintiffs will also seek awards of no more than $40,000 in the aggregate to reimburse Plaintiffs for their time and expense in representing the Settlement Class, as provided in 15 U.S.C. § 78u-4(a)(4).

**Rule 23(e)(2)(C)(iv):** The parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members who collectively purchased more than a specific number of shares of the Company's common stock eligible to participate in the Settlement request exclusion (or "opt out")

---

[7] As required by Local Civil Rule 23.1, the Notice also includes a description of certain fee-sharing agreements between Plaintiffs' Counsel in the Action. *See* Notice ¶ 66, n.4.

[8] *Lea v. Tal Educ. Grp.*, 2021 WL 5578665, at *12 (S.D.N.Y. Nov. 30, 2021) ("The percentage of the fund requests – one-third – is a percent that has been approved as reasonable in this Circuit.)" (citing cases); *Moloney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) ("Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit."); *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) ("request [for 33.3% of the Class Settlement Fund] falls comfortably within the range of fees typically awarded in securities class actions").

[9] *See Plymouth Cnty. Ret. Sys. v. GTT Commc'ns, Inc.*, 2021 WL 1659848, at *5 (E.D. Va. Apr. 23, 2021) (one-third of $25 million); *In re IPO Sec. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (33.33% of $510 million); *Landmen Partners Inc. v. The Blackstone Grp., L.P.*, 2013 WL 11330936, at *3 (S.D.N.Y. Dec. 13, 2013) (33.33% of $85 million).

from the Settlement. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019). The parties will produce this supplemental agreement for the Court's review, if requested.

### 5. The Settlement Treats All Settlement Class Members Equitably Relative to Each Other

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. The Settlement easily satisfies this standard. Under the proposed Plan of Allocation, detailed on pp. 13 of the proposed Notice (Ex. A-1 to Ex. 1 of the Gilmore Decl.), each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's recognized claim divided by the total of recognized claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. Courts have repeatedly approved similar plans. *See In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010).

### 6. The Remaining Grinnell Factors Are Neutral or Weigh in Favor of Preliminary Approval

*Grinnell* also outlined several factors that are not co-extensive with Rule 23(e)(2)'s new factors. These factors additionally support preliminary approval.

**The Stage of the Proceedings and the Amount of Discovery Completed:** This factor examines "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012). Here, Plaintiffs conducted an extensive investigation into Deutsche Bank; the parties submitted

substantial briefing relating to the motion to transfer, motion to dismiss, and motion for class certification, as well as exchanged detailed mediation briefs; the parties also exchanged, responded, met and conferred, extensively analyzed documents produced in discovery, and Defendants deposed each Plaintiff and their class certification expert. *See* Sections I-II *supra*.

**The Ability of Defendants to Withstand a Greater Judgment:**  Although Defendants have D&O insurance that may potentially contribute towards a settlement of this action, "Courts have recognized that the defendant's ability to pay is much less important than other factors, especially where 'the other *Grinnell* factors weigh heavily in favor of settlement approval.'"  *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010).

### B.    Certification of The Settlement Class for Settlement Purposes Is Appropriate

The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982).  A settlement class, like other certified classes, must satisfy all the requirements of Fed. R. Civ. P. 23(a) and (b). *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006).  The manageability concerns of Rule 23(b)(3), however, are not at issue for a settlement class.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested.").

Here, the parties have stipulated to the certification of the Settlement Class for settlement purposes only.  Stipulation ¶2.  For settlement purposes, Plaintiffs request that the Court certify the Settlement Class defined in the Stipulation, comprising "all persons and entities who purchased or otherwise acquired Deutsche Bank common stock during the Settlement Class Period (i) on any stock exchanges located in the United States, (ii) on any alternative trading systems located in the United States, or (iii) pursuant to other domestic transactions, and who were allegedly damaged

thereby," subject to certain exceptions. *Id.* ¶1(qq).  As set forth below, the proposed Settlement Class satisfies all the applicable requirements of Rule 23(a) and 23(b)(3).

### 1.    The Settlement Class Satisfies the Requirements of Rule 23(a)

**Numerosity**: The first element of the threshold for class certification requires that "the class [be] so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  "In securities fraud class actions relating to publicly owned and nationally listed corporations," numerosity "may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010).  Here, the Settlement Class is comprised of purchasers of Deutsche Bank common stock. Millions of Deutsche Bank shares traded during the relevant period, and the stock actively traded on the New York Stock Exchange. Thus, the number of Settlement Class Members is likely to be in the thousands.  The Settlement Class is thus sufficiently numerous.  *See id.*

**Common Questions:** Securities fraud cases easily meet the commonality requirement, which is satisfied where "putative class members have been injured by similar material misrepresentations and omissions." *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012).  Here, questions of law and fact regarding Plaintiffs' claims will be common to the Settlement Class, including whether Defendants' representations were materially misleading and made with scienter.  These questions are susceptible to common answers because their resolution does not differ based on the plaintiff's identity.  Accordingly, commonality is met. *In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 236 (S.D.N.Y. 2015).

**Typicality:** Typicality is established where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Cent. States SE & SW Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007).  Plaintiffs' claims are typical of the

Settlement Class because they are based on the alleged misrepresentations and omissions.  *See In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002).

**Adequacy:** As explained in Sec. IV.A.1., *supra*, Plaintiffs and Lead Counsel are adequate representatives.  *First*, Plaintiffs and Settlement Class Members purchased or otherwise acquired Deutsche Bank common stock on an open market located within the United States (*e.g.*, the New York Stock Exchange), during the Settlement Class Period, and they were all injured by the Defendants' allegedly materially false statements and omissions.  Plaintiffs were highly motivated to recover as much as possible in damages for the Settlement Class in light of their significant losses.  *Patriot*, 828 Fed. Appx. at 764.  If Plaintiffs were to prove their claims at trial, they would also prove the Settlement Class's claims.  *See Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013). *Second*, Plaintiffs have demonstrated their commitment to this litigation by retaining qualified counsel. *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 181 (S.D.N.Y. 2014) ("Pomerantz LLP has extensive experience and a stellar reputation in the field of class action and securities litigation.").

### 2.   The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The Settlement Class satisfies these requirements.

**Common Questions Predominate:** Predominance exists where questions capable of common proof are "more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015).  The Supreme Court has noted that predominance is a "test readily met in certain cases alleging . . . securities fraud." *Amchem*, 521 U.S. at 625.  Here, there are common questions of law and fact involving violations of the securities

laws based on a common course of conduct directed at the entire Settlement Class, and these questions predominate over any individualized questions that may exist. *See In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 90 (S.D.N.Y. 2007), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016). The predominance requirement has, therefore, been satisfied.

**A Class Action Is Superior:** Rule 23(b)(3) sets forth non-exhaustive factors to be considered in determining whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *See* Fed. R. Civ. P. 23(b)(3). Securities suits easily satisfy the superiority requirement, because "the alternatives are either no recourse for thousands of stockholders" or "a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake." *MF Glob.*, 310 F.R.D. at 239.

Here, there is no evidence that putative class members desire to bring separate individual actions. Indeed, without class actions, investors who have been defrauded by securities law violations, but whose losses do not run into several millions of dollars, would likely have no practical recourse. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("most of the plaintiffs would have no realistic day in court if a class action were not available"). Furthermore, it is desirable to concentrate the claims in this Court as it is already familiar with the factual and legal issues in the case. Finally, because this is a request for class certification for settlement purposes only, the Court need not inquire as to whether the case, if tried, would present management problems. *See Amchem*, 521 U.S. at 620.

### 3.  Lead Counsel Should Be Appointed Counsel For the Settlement Class

A court that certifies a class must also appoint class counsel.  *See* Fed. R. Civ. P. 23(g).
The Rule directs the Court to consider: "(1) the work counsel has done in identifying or
investigating potential claims in the action; (2) counsel's experience in handling class actions,
other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge
of the applicable law; and (4) the resources that counsel will commit to representing the class."
Fed. R. Civ. P. 23(g)(1)(A).  Pomerantz was appointed to serve Lead Counsel in December 2020,
and has vigorously prosecuted the action on behalf of Plaintiffs and the Settlement Class.  Indeed,
Lead Counsel has devoted substantial time, effort, and resources to identifying, investigating,
litigating and settling the claims in this matter.  Moreover, Lead Counsel is experienced in handling
class action litigation and are highly familiar with securities class action litigation.  For these
reasons, among others, Plaintiffs respectfully request that the Court appoint Lead Counsel to serve
as Class Counsel.  *See Strougo v. Barclays PLC*, 312 F.R.D. 307, 328 (S.D.N.Y. 2016).

### 4.  The Court Should Approve the Proposed Form and Method of Notice

Class notice of a settlement must meet the requirements of Rules 23(c)(2) and 23(e), the
PSLRA, and due process.  Under Rule 23(c)(2), the Court "must direct to class members the best
notice that is practicable under the circumstances."  *Vargas v. Capital One Fin. Advisors*, 559 F.
App'x 22, 26 (2d Cir. 2014).  In addition to how it is delivered, the notice "must fairly apprise the
prospective members of the class of the terms of the proposed settlement and of the options that
are open to them in connection with the proceedings," including the opportunity to opt out of or
object to the settlement.  *Id.* at 27; *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666,
at *17 (S.D.N.Y. Mar. 24, 2014).  The PSLRA and the Due Process Clause of the United States
Constitution impose similar requirements.  *See* 15 U.S.C. § 78u-4(a)(7); *Consol. Edison, Inc. v.
Ne. Utilities*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004).

Here, the proposed Notice provides detailed information concerning: (1) the rights of Settlement Class Members, including the manner in which objections can be lodged; (2) the nature, history, and progress of the litigation; (3) the proposed Settlement; (4) how to file a Claim Form; (5) a description of the Plan of Allocation; (6) the fees and litigation expenses to be sought by Lead Counsel; and (7) the necessary information to examine Court records.  Stipulation, Ex. A-1.

The proposed Notice also informs Settlement Class Members how to request exclusion from the Settlement and clearly states that all those who do not exclude themselves will be bound by the Settlement and Final Judgment.  *Id.*  Furthermore, the PSLRA-mandated disclosures are satisfied as the Notice: (1) states the amount of the Settlement on both an aggregate and average per share basis; (2) provides a brief statement explaining the reasons why the parties are proposing the Settlement; (3) states the amount of attorneys' fees and maximum amount of litigation expenses (both on an aggregate and average per share basis) that counsel will seek; and (4) provides the contact information for Claims Administrator and Lead Counsel to answer questions from Settlement Class Members.[10]  *Id.*; 15 U.S.C. § 78u-4(a)(7).

The proposed Preliminary Approval Order, Exhibit A to the Stipulation, mandates that Lead Counsel provide Settlement Class Members notice of the Settlement by mailing the Postcard by first-class mail to Settlement Class Members who can be identified with reasonable effort. Gilmore Decl. Ex. A to Ex. 1, ¶7(b).  Contemporaneously with the mailing of the Postcard, the Claims Administrator shall cause copies of the Notice and the Claim Form to be posted on a website to be developed for the Settlement, from which copies of the Notice and Claim Form can

---

[10] Plaintiffs request that AB Data Ltd. be appointed the Claims Administrator.  Lead Counsel sought proposals from multiple claims administration companies for the administration of the Settlement. After reviewing responses, Lead Counsel decided to retain AB Data Ltd. due to its substantial experience and its proposal's costs and caps on those costs.

be downloaded. *Id.* at ¶7(c). Additionally, Summary Notice will be disseminated electronically once on *PRNewswire* and in print once in *Investor's Business Daily*. *Id.* at ¶7(d).

The proposed Notice and its dissemination are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). "The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 (S.D.N.Y. 2014). The form and manner of providing notice to Settlement Class Members are the best practicable under the circumstances and satisfy due process, Rule 23, and the PSLRA.

## V.    PROPOSED SCHEDULE OF EVENTS

Plaintiffs propose the following schedule of events in connection with the Settlement Hearing, as set forth in the Preliminary Approval Order filed herewith:

| Event | Deadline for Compliance |
|---|---|
| Date for Settlement Hearing | No earlier than one hundred (100) days after the Court preliminarily approves the Settlement. (Preliminary Approval Order ¶ 5) |
| Mailing of Postcard | No later than 21 business days after the entry of Preliminary Approval Order. (Preliminary Approval Order ¶ 7(b)) (the "Notice Date") |
| Publication of Summary Notice | No later than 21 business days after the Notice Date (Preliminary Approval Order ¶ 7(d)) |
| Filing deadline for requests for exclusion | Received no later than 21 calendar days before the Settlement Hearing. (Preliminary Approval Order ¶ 13) |
| Date for Plaintiffs to file and serve papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses | No later than 35 calendar days before the Settlement Hearing. (Preliminary Approval Order ¶ 27) |
| Filing deadline for objections | No later than 21 calendar days before the Settlement Hearing. (Preliminary Approval Order ¶ 16) |

| Date for Plaintiffs to file reply papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses | Seven (7) calendar days before the Settlement Hearing. (Preliminary Approval Order ¶ 27) |
|---|---|
| Date for Claims to be Filed | Postmarked no later than 7 calendar days after the Settlement Hearing. (Preliminary Approval Order ¶ 10) |

## **CONCLUSION**

For the forgoing reasons, Plaintiffs respectfully request that the Court grant the motion.

Dated: September 23, 2022

**POMERANTZ LLP**

*/s/ Emma Gilmore*
Jeremy A. Lieberman
Emma Gilmore
Dolgora Dorzhieva
Villi Shteyn
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (917) 463-1044
jalieberman@pomlaw.com
egilmore@pomlaw.com
ddorzhieva@pomlaw.com
vshteyn@pomlaw.com

*Lead Counsel for Lead Plaintiff Yun Wang and Named Plaintiff Ali Karimi*

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**

Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Fascimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for Plaintiffs and for the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of September 2022, a true and correct copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Emma Gilmore*