**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ALI KARIMI, Individually and On Behalf of All Others Similarly Situated,<br><br>                              Plaintiffs,<br><br>          v.<br><br>DEUTSCHE BANK AKTIENGESELLSCHAFT, JOHN CRYAN, AND CHRISTIAN SEWING,<br><br>                            Defendants. | **Case No. 1:22-cv-02854-JSR** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND PLAN OF ALLOCATION**

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................ 1

II.  ARGUMENT ...................................................................................................... 4

    A.  The Standards For Final Approval Under Rule 23(e) and *Grinell* ........................ 4

    B.  The Settlement Is Fair, Reasonable, and Adequate .............................................. 6

        1.  Plaintiffs and Lead Counsel Adequately Represented the Class ................ 6

        2.  The Settlement Is Entitled to a Presumption of Fairness Because It Arose From Arm's-Length Negotiations Among Experienced Counsel .............. 7

        3.  The Settlement is an Excellent Result for the Settlement Class in Light of the Benefits of the Settlement and the Risks of Continued Litigation........ 9

            a.  Complexity, Expense And Likely Duration Of The Litigation .... 10

            b.  The Risks Of Establishing Liability And Damages ...................... 11

                i.  Liability.................................................................... 12

                ii.  Loss Causation and Damages ............................................ 13

            c.  Risks of Maintaining Class Action Status ..................................... 14

            d.  Range of Reasonableness In Light of the Best Possible Recovery and Attendant Risks of Litigation ................................................... 15

        4.  The Remaining Rule 23(e)(2)(C) Factors Support Final Approval .......... 16

        5.  The Settlement Treats All Settlement Class Members Equitably Relative to Each Other ...................................................................................... 18

        6.  The Remaining *Grinnell* Factors Weigh In Favor of Final Approval ...... 18

            a.  The Settlement Class's Reaction to the Settlement Supports Final Approval .......................................................................... 18

            b.  The Stage of the Proceedings and the Amount of Discovery ....... 19

            c.  The Ability of Defendants to Withstand a Greater Judgment....... 19

    C.  The Plan of Allocation Is Fair and Reasonable and Should Be Approved .......... 20

    D.  The Notice Program Satisfies Rule 23, the PSLRA, and Due Process ................ 22

    E.  Final Certification of the Settlement Class Is Appropriate ................................... 25

III.  CONCLUSION.................................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arbuthnot v. Pierson*,
    607 F. App'x. 73 (2d Cir. 2015) ...........................................................................10

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    222 F.3d 52 (2d Cir. 2000).....................................................................................6

*Beach v. JPMorgan Chase Bank, N.A.*,
    2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020) ..........................................................5

*Chatelain v. Prudential-Bache Sec., Inc.*,
    805 F. Supp. 209 (S.D.N.Y. 1992) .......................................................................14

*Christine Asia Co., Ltd. v. Yun Ma*,
    2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ...........................................17, 20, 22

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)......................................................................... *passim*

*City of Providence v. Aeropostale*,
    2014 WL 1883494 (S.D.N.Y. May 9, 2014) .........................................................10

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)......................................................................................8

*Dura Pharms., Inc., v. Broudo*,
    544 U.S. 336 (2005)..............................................................................................14

*Fishoff v. Coty Inc.*,
    2010 WL 305358 (S.D.N.Y. Jan. 25, 2010),
    *aff'd*, 634 F.3d 647 (2d Cir. 2011) .......................................................................13

*Fleisher v. Phoenix Life Ins. Co.*,
    2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015)......................................................20

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000)......................................................................................5

*Green v. Deutsche Bank Aktiengesellschaft*,
    2019 WL 4805804 (S.D.N.Y. Sept. 30, 2019)..................................................2, 12

*Gross v. GFI Group, Inc.*,
    310 F. Supp. 3d 384 (S.D.N.Y. 2018),
    *aff'd on other grounds* 784 Fed. Appx. 27 (2d Cir. Sept. 13, 2019).........................4

*Hayes v. Harmony Gold Mining Co.*,
    509 F. App'x 21 (2d Cir. 2013) .............................................................................10

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) ............................................................................25

*In re Alloy, Inc. Sec. Litig.*,
    2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) ..........................................................11

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
    2006 WL 903236 (S.D.N.Y. Apr. 6, 2006).......................................................10, 12

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012).................................................9, 14, 15, 19

*In re Blech Sec. Litig.*,
    2000 WL 661680 (S.D.N.Y. May 19, 2000) ..........................................................16

*In re Citigroup Inc. Bond Litig.*,
    296 F.R.D. 147 (S.D.N.Y. 2013) ..............................................................................8

*In re Citigroup Inc. Sec. Litig.*,
    965 F. Supp. 2d 369 (S.D.N.Y. 2013)..........................................................9, 10, 18

*In re Deutsche Bank Aktiengesellschaft Sec. Litig.*,
    2017 WL 4049253 (S.D.N.Y. June 28, 2017) .....................................................2, 12

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
    2007 WL 2230177 (S.D.N.Y. July 27, 2007) ..........................................................7

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
    2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015).......................................................8, 14

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ..........................................................15

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    574 F.3d 29 (2d Cir. 2009)......................................................................................13

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. Nov. 24, 2004) ............................................................12

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019).......................................................10, 11, 15

*In re Heritage Bond Litig.*,
    2005 WL 1594403 (C.D. Cal. June 10, 2005) ......................................................22

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) ....................................................................10, 20

*In re Marsh & McLennan Co., Inc. Sec. Litig.*,
  2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ................................................14, 20

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ...........................................................................18

*In re Merrill Lynch & Co., Inc. Rsch. Rep. Sec. Litig.*,
  246 F.R.D. 156 (S.D.N.Y. 2007) ...........................................................................22

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y.),
  *aff'd*, 117 F.3d 721 (2d Cir. 1997) ..........................................................................6

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ...............................................................................5

*In re Petrobras Sec. Litig.*,
  317 F. Supp. 3d 858 (S.D.N.Y. 2018),
  *aff'd*, 784 F. App'x 10 (2d Cir. 2019) (Rakoff, J.)...........................................10, 12

*In re Sinus Buster Prods. Consumer Litig.*,
  2014 U.S. Dist. WL 5819921 (E.D.N.Y. Nov. 10, 2014) .......................................20

*In re Veeco Instruments Inc. Sec. Litig.*,
  2007 WL 4115809 (S.D.N.Y. 2007).......................................................................22

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005).....................................................................20

*Kalnit v. Eichler*,
  99 F. Supp. 2d 327 (S.D.N.Y. 2000),
  *aff'd*, 264 F.3d 131 (2d Cir. 2001) .........................................................................13

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)..............................................12, 16, 17, 19

*Sfiraiala v. Deutsche Bank Aktiengesellschaft*
  ("*In re DB Appeal*"), 729 F. App'x 55 (2d Cir. 2018)...........................................2

*Shapiro v. JPMorgan Chase & Co.*,
  2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) .........................................................7

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003).....................................................................11

*Too v. Rockwell Medical, Inc.*,
    2020 WL 1023435 (E.D.N.Y. Feb. 26, 2020)......................................................................22

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)............................................................................... *passim*

*Yang v. Focus Media Holding Ltd.*,
    2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014)..........................................................................7

## **Statutes**

Exchange Act Section 20(a).............................................................................................................2

Private Securities Litigation Reform Act of 1995 ...........................................................7, 22, 25

15 U.S.C. § 78u-4 ............................................................................................................................24

Securities Exchange Act of 1934 Section 10(b) ...........................................................................2

## **Rules and Regulations**

Fed. R. Civ. P. 23................................................................................................. *passim*

Rule 10b-5........................................................................................................................................2

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Court-appointed Lead Plaintiff Yun Wang ("Wang" or "Lead Plaintiff") and Named Plaintiff Ali Karimi ("Karimi" or "Named Plaintiff," and, with Wang, "Plaintiffs"), individually and on behalf of all other members of the proposed Settlement Class, respectfully submit this memorandum of law in support of their motion seeking (i) final approval of the proposed Settlement presented in the Stipulation and Agreement of Settlement dated September 23, 2022 (ECF No. 101-1 (the "Stipulation")),[1] (ii) approval of the proposed plan of allocation for the Settlement proceeds (the "Plan of Allocation"), and (iii) final certification of the Settlement Class. Defendants do not oppose this motion.[2]

## I.    INTRODUCTION

After over two years of hard-fought litigation, Plaintiffs, through their counsel, obtained a $26,250,000 (the "Settlement Amount") all cash, non-reversionary settlement for the benefit of the Settlement Class.  As described below and in the Gilmore Declaration, the proposed Settlement is an outstanding result for the Settlement Class, providing a significant and certain recovery in a case that presented numerous hurdles and risks.  In fact, in Plaintiffs' estimation, the Settlement represents approximately ***49.4%*** of the likely recoverable damages in this case, which dwarfs the median recovery of 1.8% of estimated damages for all securities class actions settled in 2021.  *See* Gilmore Decl. Ex. 10 at 24 (Fig. 22) (Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* (NERA Jan. 25, 2022)).  Further, two

---

[1] Unless otherwise noted, capitalized terms have the meanings set forth in the Stipulation, or in the concurrently filed Declaration of Emma Gilmore in Support of: (I) Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Compensatory Awards to Plaintiffs ("Gilmore Declaration" or "Gilmore Decl.").

[2] Defendants are Deutsche Bank Aktiengesellschaft ("Deutsche Bank" or the "Company"), and John Cryan and Christian Sewing (collectively, the "Individual Defendants," and, together with Deutsche Bank, "Defendants").

prior cases were brought against Deutsche Bank alleging misrepresentations concerning internal controls, both of which were dismissed, with one dismissal affirmed by the Second Circuit on scienter grounds. *See* ECF No. 52-1 at 1-3 (citing *In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, 2017 WL 4049253 (S.D.N.Y. June 28, 2017), *aff'd sub nom. Sfiraiala v. Deutsche Bank Aktiengesellschaft* ("*In re DB Appeal*"), 729 F. App'x 55 (2d Cir. 2018) (Summary Order); *Green v. Deutsche Bank Aktiengesellschaft*, 2019 WL 4805804 (S.D.N.Y. Sept. 30, 2019). The Settlement is, therefore, substantively fair, reasonable and adequate.

Moreover, the process by which the Settlement was obtained evidences a lack of collusion amongst the Parties and supports a finding of procedural fairness. As described in detail in the Declaration, prior to reaching the Settlement, Lead Counsel, *inter alia*:

- drafted the initial complaint in the Action and moved for the appointment of Lead Plaintiff and Lead Counsel;

- conducted an extensive investigation of the claims asserted in the Action, which included, among other things: (a) reviewing and analyzing (i) Deutsche Bank's filings with the U.S. Securities and Exchange Commission ("SEC"), (ii) research reports prepared by securities and financial analysts, and news and industry articles, concerning Deutsche Bank, (iii) Deutsche Bank's investor call transcripts and (iv) other publicly available material related to the Company; (b) retaining and working with private investigators, who interviewed numerous former Company employees; and (c) working with a damages and loss causation expert to analyze Deutsche Bank's stock price movements;

- utilized the foregoing comprehensive investigation and additional research to draft and file the comprehensive 73-page Second Amended Complaint ("SAC") (ECF No. 37, the "Complaint"), which asserted claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder, and against the Individual Defendants under Section 20(a) of the Exchange Act;

- opposed Defendants' motion to transfer venue to this Court;

- researched and drafted the opposition to Defendants' motion to dismiss, which successfully opposed, in part, Defendants' motion;

- after the Court denied Defendants' motion to dismiss, filed the Third Amended Complaint (the "TAC"), which lengthened the Class Period based on new allegations;

- served and responded to various demands for the production of documents and interrogatories, engaged in meet and confers with respect to discovery requests, began negotiating search terms for electronically stored information ("ESI"), and proposed custodians, exchanged discovery deficiency letters and communications with Defendants, produced their own documents and received over 76,000 documents from Defendants, and engaged in an extensive review of documents received from Defendants;

- moved for class certification;

- prepared Plaintiffs and the class certification expert for depositions;

- defended the deposition of each of the Plaintiffs and their class certification expert;

- engaged in a mediation process overseen by a highly experienced third-party mediator, former United States District Judge Layn R. Phillips, which involved an exchange of written submissions concerning the facts of the case, liability and damages, two full-day formal mediation sessions, and extensive consultation with Plaintiffs' expert on damages and loss causation;

- negotiated a detailed confidential settlement term sheet with Defendants' counsel, which was executed on September 7, 2022;

- drafted and then negotiated the terms of the Stipulation (including the exhibits thereto) and Supplemental Agreement with Defendants' Counsel;

- worked with a damages expert to craft a plan of allocation that treats Plaintiffs and all other members of the proposed Settlement Class fairly;

- drafted the Preliminary Approval Motion and supporting papers;

- oversaw the implementation of the notice process; and

- drafted the Motion for Final Approval and supporting papers.

Gilmore Decl. ¶¶14-28. Further, Defendants have separately complied with their obligations under the Preliminary Approval Order by serving the required Class Action Fairness Action notices, and filed a declaration concerning such service with the Court (ECF No. 103) and remitting the full the Settlement Amount in compliance with the Stipulation.

In view of the foregoing, and as discussed in greater detail below, it cannot be disputed that the Settlement was negotiated by well-informed Parties at arm's-length, and that the Settlement is an excellent outcome for the Settlement Class.  This is especially true when the recovery is juxtaposed against the many risks of continued litigation, including the very real risk of a

substantially smaller recovery, or no recovery at all, many years in the future.  *See* Gilmore Decl. ¶29; *see also Gross v. GFI Group, Inc.*, 310 F. Supp. 3d 384, 399 (S.D.N.Y. 2018) (granting summary judgment for defendants following four years of litigation), *aff'd on other grounds* 784 Fed. Appx. 27, 29 (2d Cir. Sept. 13, 2019); Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement.

Plaintiffs also move for approval of the proposed Plan of Allocation of the Net Settlement Fund.  The Plan of Allocation was developed in conjunction with Plaintiffs' damages expert and is designed to distribute the proceeds of the Net Settlement Fund fairly and equitably to Settlement Class Members.  ¶¶62-70.  Plaintiffs and their counsel believe that the Plan of Allocation is fair and reasonable and, as such, it too should be approved.

## II.   ARGUMENT

### A.   The Standards For Final Approval Under Rule 23(e) and *Grinell*

Under Rule 23(e), the Court should grant final approval to a class action settlement if it is "fair, reasonable, and adequate."[3]  Fed. R. Civ. P. 23(e)(2).  Rule 23(e)(2)—which governs final approval—requires courts to consider the following questions in determining whether a proposed settlement is fair, reasonable, and adequate:

(A)   have the class representatives and counsel adequately represented the class;

(B)   was the proposal negotiated at arm's length;

(C)   is the relief provided for the class adequate, taking into account:

    (i)   the costs, risks, and delay of trial and appeal;

    (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)   the terms of any proposed award of attorneys' fees, including timing of payment; and

---

[3] Unless otherwise noted, all emphasis is added and internal citations and quotations omitted.

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    does the proposal treat class members equitably relative to each other.

Factors (A) and (B) "identify matters . . . described as procedural concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement," while factors (C) and (D) "focus on . . . a substantive review of the terms of the proposed settlement" (*i.e.*, "[t]he relief that the settlement is expected to provide to class members").  *See* Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904, 919 (2018)).

These Rule 23(e)(2) factors add to, rather than displace, the *Grinnell* factors previously adopted by the courts.  *See In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019).  Thus, the Second Circuit's traditional *Grinnell* factors utilized to evaluate the propriety of a class action settlement (certain of which overlap with Rule 23(e)(2)) are still relevant:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 117 (2d Cir. 2005) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)); *see also Beach v. JPMorgan Chase Bank, N.A.*, 2020 WL 6114545, at *2 (S.D.N.Y. Oct. 7, 2020) (evaluating settlement based on factors set forth in Fed. R. Civ. P. 23(e)(2) and *Grinnell*).

In application, although "[t]he decision to grant or deny such approval lies squarely within

the discretion of the trial court . . . this discretion should be exercised in light of the general judicial policy favoring settlement." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 124 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997). Accordingly, public policy considerations strongly favor settlement, particularly in class actions. *See Wal-Mart*, 396 F.3d at 116 ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context.").

As demonstrated below, the proposed Settlement satisfies the criteria for final approval under the four Rule 23(e)(2) factors, as well as the relevant *Grinnell* factors.

**B.      The Settlement Is Fair, Reasonable, and Adequate**

**1.      Plaintiffs and Lead Counsel Adequately Represented the Class**

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." In assessing adequacy, "the primary factors are whether the class representatives have any 'interests antagonistic to the interests of other class members' and whether the representatives 'have an interest in vigorously pursuing the claims of the class.'" *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000) ("Generally, adequacy of representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and; 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.").[4]

Here, Plaintiffs' claims are typical of and coextensive with the claims of the Settlement Class, and they have no antagonistic interests. Plaintiffs, like all other Settlement Class Members, purchased Deutsche Bank common stock during the Settlement Class Period and suffered substantial losses as a result of Defendants' allegedly wrongful conduct. Their interest in obtaining

---

[4] *Accord Wal-Mart*, 396 F.3d at 106-07 ("Adequate representation of a particular claim is established mainly by showing an alignment of interests between class members, not by proving vigorous pursuit of that claim.").

the largest possible recovery is, therefore, aligned with the other Settlement Class Members. *See Patriot*, 828 Fed. Appx. at 764 (finding adequacy where "Plaintiffs were sufficiently motivated to recover as much as possible for each class member"). In addition, Plaintiffs oversaw the litigation and communicated with Lead Counsel to discuss case developments, including settlement. *See In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007) ("[U]nder the PSLRA, a settlement reached under the supervision of appropriately selected Plaintiffs is entitled to an even greater presumption of reasonableness.").

Plaintiffs also retained counsel that are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases. *See* Gilmore Decl. Ex. 5 (Pomerantz firm resume), Ex. 6 (Firm resume of additional counsel Bronstein, Gewirtz & Grossman, LLC). As noted above, Lead Counsel vigorously prosecuted the Settlement Class's claims, and was acutely aware of the strengths and weaknesses of the case prior to settling the Action. Based on its expertise, experience, and work in this case, Lead Counsel recommend that final approval of the Settlement is in the best interests of the Settlement Class. *Id.* ¶¶29-47. The judgment of counsel "who have extensive experience in prosecuting complex class actions," is entitled to "great weight." *See Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *2 (S.D.N.Y. Mar. 24, 2014); *Yang v. Focus Media Holding Ltd.*, 2014 WL 4401280, at *5 (S.D.N.Y. Sept. 4, 2014) ("great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation").

## 2. The Settlement Is Entitled to a Presumption of Fairness Because It Arose From Arm's-Length Negotiations Among Experienced Counsel

The Court must also consider whether the settlement was "negotiated at arm's-length" in

weighing approval of a class action settlement.  Fed. R. Civ. P. 23(e)(2)(B).[5]  Courts may apply a presumption of fairness when a class settlement is the product of "arm's-length negotiations between experienced, capable counsel."  *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013) (quoting *Wal-Mart*, 396 F.3d at 116); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (finding that a mediator's involvement in settlement negotiations "helps to ensure that the proceedings were free of collusion and undue pressure").

Here, the Parties' negotiations did not commence until after Lead Counsel engaged in an extensive investigation to understand the strengths and weaknesses of the case.  Specifically, Lead Counsel thoroughly reviewed publicly available information about the Company; interviewed former Deutsche Bank employees; consulted a damages expert; prepared a detailed 73-page complaint; fully briefed the Defendants' motion to dismiss and engaged in hard-fought mediation efforts.  Gilmore Decl. ¶¶15-25.  As part of the mediation process facilitated by former United States District Judge Layn R. Phillips, the Parties exchanged written statements and exhibits concerning liability and damages, and further participated in discussions concerning the Parties' estimates of damages.  *Id.* at ¶24.  The Parties also engaged in two days of mediation, from September 6-7, 2022, and reached an agreement in principle to settle the Action.  *Id.* at ¶25.  The Parties thereafter memorialized the substantive terms of the settlement in a confidential Term Sheet to Settle the Action on September 7, 2022.  *Id.* at ¶¶25-27. In addition, the Parties served and responded to various demands for the production of documents and interrogatories, engaged in meet and confers with respect to discovery requests, began negotiating search terms for ESI, and

---

[5] This "procedural" fairness determination also covers the third *Grinnell* factor, assessing "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement."  *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at *4 (S.D.N.Y. Nov. 9, 2015); *see* Sec. II.B.6(b).

proposed custodians, exchanged discovery deficiency letters and communications, and produced and reviewed thousands of documents. Further, Plaintiffs' Counsel prepared Plaintiffs and their class certification expert for depositions and defended the ensuing depositions.

The extensive and arm's-length nature of the settlement negotiations and the involvement of an experienced and respected mediator like Judge Phillips support the conclusion that the Settlement is procedurally fair and was achieved free of collusion. *See In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (stating that "elements [of procedural fairness] are amply satisfied here. The parties, represented by highly experienced and capable counsel, engaged in extensive arm's length negotiations, which included multiple sessions mediated by retired federal judge Layn R. Phillips, an experienced and well-regarded mediator of complex securities cases."); *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 377 (S.D.N.Y. 2013) (approving settlement where the "parties participated in two full-day mediation sessions" overseen by Judge Phillips).

Finally, Defendants have complied with their obligations under the Preliminary Approval Order by serving the required Class Action Fairness Action notices, and filed a declaration concerning such service with the Court (ECF No. 103) and remitting the full the Settlement Amount in compliance with the Stipulation.

### 3.    The Settlement is an Excellent Result for the Settlement Class in Light of the Benefits of the Settlement and the Risks of Continued Litigation

Under Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C).[6]  In applying these factors, a court "must give

---

[6] Rule 23(e)(2)(C)(i) essentially incorporates six of the traditional *Grinnell* factors: the complexity, expense, and likely duration of the litigation (first factor); the risks of establishing liability and damages (fourth and fifth factors); the risks of maintaining class action status through the trial

comprehensive consideration to all relevant factors," *Hayes v. Harmony Gold Mining Co.*, 509 F.

App'x 21, 23 (2d Cir. 2013), but "not every factor must weigh in favor of settlement, rather [a]

court should consider the totality of these factors in light of the particular circumstances." *In re*

*IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012).  As demonstrated below, each of these

factors supports final approval of the Settlement.

>          **a.     Complexity, Expense And Likely Duration Of The Litigation**

In general, "the more complex, expensive, and time consuming the future litigation, the

more beneficial settlement becomes as a matter of efficiency to the parties and to the Court."

*Citigroup*, 965 F. Supp. 2d at 381-82.  This is particularly true here, as "securities class actions are

by their very nature complicated and district courts in this Circuit have long recognized that

securities class actions are notably difficult and notoriously uncertain to litigate." *City of*

*Providence v. Aeropostale*, 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014), *aff'd sub nom.*

*Arbuthnot v. Pierson,* 607 F. App'x. 73 (2d Cir. 2015).

Further litigation would have been time consuming and expensive, involved complex

issues of law and fact, and there was a significant risk of a lower recovery, or no recovery at all.

*See In re Petrobras Sec. Litig.*, 317 F. Supp. 3d 858, 871 (S.D.N.Y. 2018), *aff'd*, 784 F. App'x 10

(2d Cir. 2019) (Rakoff, J.) (approving settlement where "any recovery in this case was far from a

certainty, given the substantial defenses that were raised"); *In re AOL Time Warner, Inc. Sec. &*

*ERISA Litig.*, 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("In addition to the complex issues

of fact involved in this case, the legal requirements for recovery under the securities laws present

---

(sixth factor); and the range of reasonableness of the settlement fund in light of the best possible
recovery and the attendant risks of litigation (eighth and ninth factors).  *See Grinnell*, 495 F.2d at
463; *see also In re GSE Bonds Antitrust Litig*., 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019) ("This
inquiry overlaps significantly with a number of *Grinnell* factors, which help guide the Court's
application of Rule 23(e)(2)(C)(i)").

considerable challenges, particularly with respect to loss causation and the calculation of damages."). At the time the Settlement was reached, class certification had not been granted by this Court. Without the Settlement, the Action would have required resolution of Plaintiffs' motion for class certification, additional fact and expert discovery, a summary judgment motion, *Daubert* motions, and proving Plaintiffs' claims through trial, post-trial motions and appeals.

Throughout each litigation phase, Plaintiffs would have undoubtedly faced a robust defense from Defendants' experienced counsel. *See In re Alloy, Inc. Sec. Litig*., 2004 WL 2750089, at *2 (S.D.N.Y. Dec. 2, 2004) (securities fraud issues are "likely to be litigated aggressively, at substantial expense to all parties"). As a result, were the litigation to continue, a potential recovery—if any—would occur years from now, substantially delaying payment to the Settlement Class. *GSE*, 414 F. Supp. 3d at 693 ("even if plaintiffs were to prevail at trial, post-trial motions and the potential for appeal could prevent the class members from obtaining any recovery for several years, if at all."); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation [.]. . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery"). By contrast, the Settlement provides an immediate and substantial recovery for the Settlement Class, without exposing the Settlement Class to the risk, expense, and delay of continued litigation.

### b.   The Risks Of Establishing Liability And Damages

In assessing the fairness, reasonableness, and adequacy of a settlement, courts should consider the "risks of establishing liability [and] the risks of establishing damages." *Grinnell*, 495 F.2d at 463; *Wal-Mart*, 396 F.3d at 117. Analyzing these risks "does not require the Court to adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the

risks of litigation against the certainty of recovery under the proposed settlement." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. Nov. 24, 2004); *AOL Time Warner*, 2006 WL 903236, at *11 (same). In other words, "the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002). Courts thus should "approve settlements where plaintiffs would have faced significant legal and factual obstacles to proving their case." *Global Crossing*, 225 F.R.D. at 459; *see also Petrobras*, 317 F. Supp. 3d at 871.

### i.     Liability

When the Settlement was reached, Plaintiffs had successfully opposed, in part, Defendants' motion to dismiss the SAC. Plaintiffs' defeat of Defendants' motion to dismiss is especially striking given the challenges Plaintiffs faced in asserting their claims. For example, courts have been reluctant to sustain claims where, as here, investors allege that they were misled about a financial institution's internal controls, even when it relates to money laundering. Indeed, in moving to dismiss, Defendants cited two prior cases brought against Deutsche Bank alleging misrepresentations concerning internal controls, both of which were dismissed, with one dismissal affirmed by the Second Circuit on scienter grounds. *See* ECF No. 52-1 at 1-3 (citing *In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, 2017 WL 4049253; *Green*, 2019 WL 4805804.

The fact that Plaintiffs overcame Defendants' motion to dismiss in part, however, is not a guarantee of ultimate success. Plaintiffs faced ongoing risks associated with their motion for class certification (as described below) as well as Defendants' forthcoming summary judgment motions, in limine motions, trial, and likely appeals, which would extend the litigation for years and might lead to a smaller recovery or no recovery at all. While Plaintiffs believe they effectively demonstrated that Defendants made materially false and misleading statements in violation of the

federal securities laws, Defendants will contest at summary judgment and trial whether their statements are inactionable because they are too general and/or not objectively verifiable, Defendants publicly warned of risks, and/or the truth was on the market.  Further, Plaintiffs faced considerable challenges in continuing to assert their claims given that courts have been reluctant to sustain claims where, as here, investors allege that they were misled regarding a financial institution's application of internal controls.

In addition, Defendants argued that the alleged false and misleading statements were not made with the requisite state of mind (*i.e.*, scienter) to support the securities fraud claims alleged. Gilmore Decl. ¶¶19, 32-33.  While Plaintiffs strongly disagreed with this assertion, it was not meritless, and had the litigation continued there is simply no guarantee that the trier of fact would have adopted Plaintiffs' view of the case.  Indeed, scienter is commonly regarded to be the most difficult element to prove in a securities fraud claim.  *See, e.g.*, *Fishoff v. Coty Inc.*, 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010) ("[T]he element of scienter is often the most difficult and controversial aspect of a securities fraud claim."), *aff'd*, 634 F.3d 647 (2d Cir. 2011); *Kalnit v. Eichler*, 99 F. Supp. 2d 327, 345 (S.D.N.Y. 2000) ("The element of scienter is often the most difficult and controversial aspect of a securities fraud claim"), *aff'd*, 264 F.3d 131 (2d Cir. 2001).

### ii.    Loss Causation and Damages

Even if Plaintiffs established liability, they faced significant risks in proving loss causation and damages.  *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). For example, Plaintiffs allege that the truth about Deutsche Bank's KYC processes leaked into the market through a series of corrective disclosures. The overwhelming majority of the alleged corrective disclosures, however, are subject to defenses that they were arguably not statistically significant. Accordingly, Defendants were likely to assert that there was no statistically significant Company-specific price drop on any corrective disclosure date, and thus that declines in Deutsche

Bank's share price on the dates of the alleged corrective disclosures were not caused by the alleged corrective disclosures. Even if Plaintiffs overcame these arguments and prevailed at trial, that victory would not guarantee the Settlement Class a larger recovery. Had Defendants prevailed on these arguments, Plaintiffs may well have recovered nothing, even if they had proven liability with respect to the alleged fraud. *See Dura Pharms., Inc., v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiffs bear "the burden of proving that the defendant's misrepresentations caused the loss for which the plaintiff seeks to recover").

Of course, in order to resolve all disputed issues regarding damages and loss causation, the Parties would have had to rely on expert testimony. Gilmore Decl. ¶¶36-37. This creates further litigation risk because Plaintiffs could not be certain whether a jury would accept the view of their experts or of the experts Defendants would no doubt present at trial. *See Facebook*, 2015 WL 6971424, at *5 ("[D]amages would be subject to a battle of the experts, with the possibility that a jury could be swayed by experts for Defendants, who could minimize or eliminate the amount of Plaintiffs' losses. Under such circumstances, a settlement is generally favored over continued litigation."); *In re Marsh & McLennan Co., Inc. Sec. Litig.*, 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009) ("If there is anything in the world that is uncertain when a case like [a securities class action] is taken to trial, it is what the jury will come up with as a number for damages.").

### c.   Risks of Maintaining Class Action Status

While Plaintiffs and their counsel are confident that the Settlement Class meets the requirements for certification, the class has not yet been certified, and Plaintiffs are aware there is a risk the Court could disagree. Defendants have raised vigorous challenges to class certification, and such disputes would likely "devolve into yet another battle of the experts." *Bear Stearns*, 909 F. Supp. 2d at 268. Even if the Court were to certify the class, there is always a risk that the certified class could be decertified at a later stage in the proceedings. *See Chatelain v. Prudential-*

*Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification.").  Thus, the risks and uncertainty surrounding class certification also support approval of the Settlement.  *See GSE*, 414 F. Supp. 3d at 694.

### d.    Range of Reasonableness In Light of the Best Possible Recovery and Attendant Risks of Litigation

Courts typically analyze the last two *Grinnell* factors together.  *See Grinnell*, 495 F.2d at 463.  In so doing, courts "consider[] and weigh[] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable."  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *20 (S.D.N.Y. Nov. 8, 2010).  A court's "determination of whether a given settlement amount is reasonable in light of the best possibl[e] recovery does not involve the use of a mathematical equation yielding a particularized sum."  *Bear Stearns*, 909 F. Supp. 2d at 269.  Instead, the Second Circuit has held "[t]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Wal-Mart*, 396 F.3d at 119.

Here, the proposed Settlement provides an all-cash payment of $26,250,000 for the benefit of the Settlement Class.  This is an excellent result in light of the significant risks of continued litigation.  Plaintiffs' damages expert estimates that if Plaintiffs fully prevailed at summary judgment and trial, and the Court and jury accepted Plaintiffs' damages theory of $0.47 of inflation, the total potential maximum damages would be approximately $53.14 million. Gilmore Decl. ¶46.  Thus, the $26.250 million Settlement represents a recovery of ***approximately 49.40%***, well above the median recovery of 1.8% of estimated damages in securities class actions settled in 2021.  *See* Gilmore Decl. Ex. 10 (McIntosh at 24 (Fig. 22)); *see also id.* at 23 (Fig. 21) (median recovery was 5.2% for securities class actions with estimated damages between $20-$49 million that settled

between December 2012-December 2021).

Moreover, weighing "[t]he 'best possible' recovery necessarily assumes Plaintiffs' success on both liability and damages covering the full Class Period alleged in the Complaint as well as the ability of Defendants to pay the judgment." *Del Global*, 186 F. Supp. 2d at 365.  This case has been pending since 2020 and could be expected to last several more years had the Settlement not been reached.  "While additional years of litigation might well have resulted in a higher settlement or verdict at trial, continued litigation could also have reduced the amount of insurance coverage available and not necessarily resulted in a greater recovery." *In re Blech Sec. Litig.*, 2000 WL 661680, at *5 (S.D.N.Y. May 19, 2000).

### 4.   The Remaining Rule 23(e)(2)(C) Factors Support Final Approval

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;" "the terms of any proposed award of attorney's fees, including timing of payment;" and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv).  Each factor supports approving the Settlement.

**Rule 23 (e)(2)(C)(ii):** Under the method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims and efficiently distributing the Net Settlement Fund.  The Claims Administrator will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any claim deficiencies or request the Court to review their claim denial, and mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval.  Gilmore Decl. ¶¶64-66.  Claims processing, like the method proposed here, is standard in securities class action settlements.  It has been long found to be effective, as well as necessary, insofar as neither Plaintiffs nor Defendants possess the individual investor trading data

required for a claims-free process to distribute the Net Settlement Fund.[7]

**Rule 23(e)(2)(C)(iii):** As disclosed in the Notice, Lead Counsel seeks a percentage of the common fund fee award in an amount not to exceed 33 1/3% for services rendered on behalf of the Settlement Class.[8]  A proposed attorneys' fee of up to 33 1/3% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained.  It is also consistent with awards in similar complex class action cases.  *See Maley*, 186 F. Supp. 2d at 370 ("Petitioners' request [for 33 1/3% of the Class Settlement Fund] falls comfortably within the range of fees typically awarded in securities class actions"); *see also* Fee and Expense Application, Section III.C.i.  More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees.  *See* Stipulation ¶19.

**Rule 23(e)(2)(C)(iv):** The Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members who collectively purchased more than a specific number of shares of the Company's common stock eligible to participate in the Settlement request exclusion (or "opt out") from the Settlement.  "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement."  *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019). The parties will produce this supplemental agreement for the Court's review, if requested.

---

[7] This is not a claims-made settlement.  If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted. *See* Stipulation ¶16.

[8] As required by Local Civil Rule 23.1, the Notice also includes a description of certain fee-sharing agreements between Plaintiffs' Counsel in the Action.  *See* Notice ¶ 66, n.4.

**5.    The Settlement Treats All Settlement Class Members Equitably Relative to Each Other**

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another.  The Settlement easily satisfies this standard.  Under the proposed Plan of Allocation, detailed on pp. 9-13 of the Notice and Updated Notice (Ex. B and D to the Ewashko Decl. (Gilmore Decl., Ex. 1), respectively) each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund.  Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.  Courts have repeatedly approved similar plans.  *See Citigroup*, 965 F. Supp. 2d at 386-87; *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010).

**6.    The Remaining *Grinnell* Factors Weigh In Favor of Final Approval**

*Grinnell* also outlined several factors that are not coexistensive with Rule 23(e)(2)'s new factors.  These factors, viewed in light of the factors identified above, support final approval.

**a.    The Settlement Class's Reaction to the Settlement Supports Final Approval**

The second *Grinnell* factor—the reaction of the class—overlaps with Rules 23(e)(4), on the opportunity for exclusion, and 23(e)(5), on the opportunity to object.  As required by Rule 23(e)(4) & (5), the Settlement affords Settlement Class Members the opportunity to request exclusion from, or object to, the Settlement.  Ewashko Decl., Ex. B (Notice) at ¶¶67-70; Ex. D (updated Notice) at ¶¶67-70. In total, as of December 21, 2022, 129,644 potential Settlement Class Members were either notified by mailed Postcard Notice or emailed a link to the Notice and Claim Form.  *Id.* at ¶8.  To date, no request for exclusion has been received, and no objections have been

filed with the Court.  *Id.* at ¶13; Gilmore Decl., ¶¶70, 96, 101, 110.[9]  The Settlement Class's universally positive reaction strongly supports final approval of the Settlement.  *See, e.g.*, *Maley*, 186 F. Supp. 2d at 362 ("It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy.").

### b.      The Stage of the Proceedings and the Amount of Discovery

The third *Grinnell* factor, which looks to the "stage of the proceedings and the amount of discovery completed," *Wal-mart*, 396 F.3d at 117, examines "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement."  *Bear Stearns*, 909 F. Supp. 2d at 267.  Here, among other things, Plaintiffs conducted an extensive investigation into Deutsche Bank, briefed Defendants' motion to dismiss, consulted with loss causation and damages experts, exchanged detailed mediation briefs with Defendants, and participated in two full days of mediation with a well-respected neutral.  *See* Gilmore Decl. ¶¶15-25. In addition, the parties have exchanged, responded to, and met and conferred regarding requests for discovery, begun negotiating search terms for ESI, and proposed custodians. Defendants have also produced 76,000 documents in response to Plaintiffs' discovery requests and deposed Plaintiffs and their class certification expert. Plaintiffs have produced documents in response to Defendants' requests as well.

### c.      The Ability of Defendants to Withstand a Greater Judgment

While it is likely that Settling Defendants could withstand a greater judgment than their respective settlement amounts, this fact should not weigh against granting final approval.

---

[9] The deadline to request exclusion from the Settlement is January 10, 2023. The deadline to object to any aspect of the Settlement is January 17, 2023. If objections or exclusions are received after the date of this filing, they will be addressed on reply.

Measured against the other *Grinnell* factors, "[t]he mere fact that a defendant 'is able to pay more than it offers in settlement does not, standing alone, indicate the settlement is unreasonable or inadequate." *Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *9 (S.D.N.Y. Sept. 9, 2015); *see also In re Sinus Buster Prods. Consumer Litig.*, 2014 U.S. Dist. WL 5819921, at *11 (E.D.N.Y. Nov. 10, 2014) ("the defendant's ability to pay is much less important than the other factors, especially where the other *Grinnell* factors weigh heavily in favor of settlement approval").

### C.      The Plan of Allocation Is Fair and Reasonable and Should Be Approved

"To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized—namely, it must be fair and adequate." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005). "As numerous courts have held, a plan of allocation need not be perfect." *Christine Asia*, 2019 WL 5257534, at *15. Rather, "[w]hen formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis." *IMAX*, 283 F.R.D. at 192; *see also Christine Asia*, 2019 WL 5257534, at 15-16. Thus, "[i]n determining whether a plan of allocation is fair, courts look largely to the opinion of counsel." *Marsh & McLennan*, 2009 WL 5178546, at *13.

The proposed Plan of Allocation, developed by Plaintiffs' damages expert in conjunction with Lead Counsel, reflects an assessment of the damages that Plaintiffs contend could have been recovered under the theories of liability asserted in the Action.[10]  Gilmore Decl. ¶¶64-69.  More specifically, the Plan of Allocation reflects, and is based on, Plaintiffs' allegation that the price of Deutsche Bank common stock was artificially inflated during the Settlement Class Period due to Defendants' alleged materially false and misleading statements and omissions. *Id.*  The Plan of

---

[10] The Plan of Allocation is detailed in the Notice and updated Notice. *See* Ewashko Decl., Ex. B (Notice) at ¶¶46-53; Ex. D (updated Notice) at ¶¶46-53.

Allocation is based on the premise that the decrease in the price of Deutsche Bank's common stock that followed the alleged corrective disclosures that occurred on July 9, 2020, and September 18, 2020, respectively, may be used to measure the alleged artificial inflation in the price of Deutsche Bank common stock prior to the disclosure. *Id.*; Ewashko Decl., Ex. B (Notice) at ¶¶46-53; Ex. D (updated Notice) at ¶¶46-53. The same methodology would have been proffered by Plaintiffs at summary judgment and trial had the Action not settled.

An individual Claimant's recovery under the Plan of Allocation will depend on a number of factors, including how many shares of Deutsche Bank common stock the Claimant purchased, acquired, or sold during the Settlement Class Period, when that Claimant bought, acquired, or sold the stock, and the number of valid claims filed by other Claimants. Gilmore Decl. ¶47. If a Claimant has an overall market *gain* with respect to his, her, or its transactions in Deutsche Bank common stock during the relevant period, the Claimant is not entitled to recover under the Plan of Allocation. *Id.*; Ewashko Decl., Ex. B (Notice) at ¶¶46-53; Ex. D (updated Notice) at ¶¶46-53. Moreover, if a Claimant purchased Deutsche Bank common stock during the relevant period, but did not hold any of shares through the alleged disclosure event, the Claimant is not a Settlement Class Member and would have no Recognized Loss under the Plan of Allocation, as any loss suffered would not have been caused by the revelation of the alleged fraud. Gilmore Decl. ¶47; Ewashko Decl., Ex. B (Notice) at ¶¶46-53; Ex. D (updated Notice) at ¶¶46-53.

Under the proposed Plan of Allocation, each Authorized Claimant will receive his or her s *pro rata* share of the Net Settlement Fund, subject to a $10 minimum distribution. Gilmore Decl. ¶¶64-68; Ewashko Decl., Ex. B (Notice) at ¶¶61, 65; Ex. D (updated Notice) at ¶¶61, 65. More precisely, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the

total amount in the Net Settlement Fund.  *Id.*

If any funds remain after an initial distribution to Authorized Claimants, as a result of uncashed or returned checks or other reasons, subsequent distributions will be conducted as long as they are cost effective.  Ewashko Decl., Ex. B (Notice) at ¶65; Ex. D (updated Notice) at ¶65. At such time as it is determined that the re-distribution of funds remaining in the Net Settlement Fund is not cost-effective, the remaining balance shall be contributed to non-sectarian, not-for-profit organization(s), to be recommended by Lead Counsel and approved by the Court.  *Id.*

Lead Counsel believes the Plan of Allocation will result in a fair and equitable distribution of the Settlement proceeds among Settlement Class Members who submit valid claims.  *See Too v. Rockwell Medical, Inc.*, 2020 WL 1023435, at *1 (E.D.N.Y. Feb. 26, 2020) (approving substantially similar plan of allocation); *Christine Asia*, 2019 WL 5257534, at *15-16 (same).  To date, no objections to the Plan of Allocation have been filed on this Court's docket, and Lead Counsel are not aware of any objections.  Gilmore Decl. ¶70.  Accordingly, Plaintiffs respectfully request that the Court approve the proposed Plan of Allocation.  *See In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *14 (S.D.N.Y. 2007) (finding that no objections supports approval of the plan of allocation); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *12 (C.D. Cal. June 10, 2005) (same).

### D.       The Notice Program Satisfies Rule 23, the PSLRA, and Due Process

Rule 23(e) and due process together require that notice of a settlement be "reasonable"—*i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings."  *Wal-Mart*, 396 F.3d at 114 (noting "[t]here are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements"); *see also In re Merrill Lynch & Co., Inc. Rsch. Rep. Sec. Litig.*, 246 F.R.D. 156, 166 (S.D.N.Y. 2007) ("Notice need not be perfect,

but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members."). The notice program's method of dissemination, as well as its substance, satisfy the applicable standards.

In accordance with the Preliminary Approval Order, the Court-appointed Claims Administrator, AB Data Ltd. ("AB Data"): (a) mailed copies of the Postcard Notice via first-class mail to all Settlement Class Members who could be identified with reasonable effort; and (b) notified brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of securities to either (i) email links of the Notice and Claim Form to potential Settlement Class Members, (ii) mail the Postcard Notice to potential Settlement Class Members, or (iii) provide AB Data with mailing or email information that would enable AB Data to notify potential Settlement Class Members.[11]  Ewashko Decl. ¶¶2-8.  In addition, after the Court rescheduled time of the Final Settlement Hearing to January 31, 2023 at 9:00 AM on December 15, 2022, Lead Counsel sent an updated notice to Settlement Class Members, as well as updated the Notice on the Settlement Website. *Id.* at ¶¶9, 12. The updated Postcard Notice also advised Class Members that Lead Counsel would seek reimbursement of expenses of up to $1,000,000. *Id.* As of December 27, 2022, a total of 129,891 potential Settlement Class Members were notified by mailed Postcard Notice or emailed a link to the Notice and Claim Form.  *Id*. at ¶9.

As required by Fed. R. Civ. P. 23(c)(2)(B), the Notice informs Settlement Class Members of, among other things: (a) the nature of the Action; (b) the Settlement Class definition; (c) the

---

[11] The Postcard Notice and updated Postcard Notice directed potential Settlement Class Members to downloadable versions of the Notice and Claim Form posted online at www.deutschebanksecuritieslitigation.com (the "Settlement Website").  Ewashko Decl., Ex. A (Postcard Notice); Ex. C (updated Postcard Notice).

claims and defenses asserted; (d) a description of the terms of the Settlement; (e) the right of a

Settlement Class Member to enter an appearance; (f) the right of a Settlement Class Member to

request exclusion from the Settlement Class, and instructions, manner, and time for doing so;

(g) the right of a Settlement Class Member to object to any aspect of the Settlement, and the

instructions, manner, and time for doing so; (h) the binding effect of the Settlement on Settlement

Class Members that do not elect to be excluded; and (i) the date and time of the final Settlement

Hearing.  *See* Fed. R. Civ. P. 23(c)(2)(B); Ewashko Decl., Ex. B (Notice) at ¶¶11-45, 67-79; Ex.

D (updated Notice) at ¶¶11-45, 67-79.[12]

The notice program also satisfies the requirements of the PSLRA, 15 U.S.C. § 78u-4(a)(7),

by setting forth in plain, easily understandable language: (a) a cover page summarizing the

information in the Notice; (b) a statement of plaintiffs' recovery, and the estimated recovery per

damaged share; (c) a statement of potential outcomes of the case; (d) a statement of attorneys' fees

or costs sought; (e) identification of lawyers' representatives; and the (g) reasons for the settlement.

Ewashko Decl., Ex. B (Notice); Ex. D (updated Notice).

In addition to ensuring the dissemination of the Postcard and email notice to 129,644

potential Settlement Class Members, AB Data caused the Summary Notice, which reflected the

---

[12] The updated Notice further advised that Lead Counsel will apply to the Court for an award of
attorneys' fees on behalf of all Plaintiffs' Counsel in an amount not to exceed 33 1/3% of the
Settlement Fund, as well as reimbursement of Litigation Expenses not to exceed $1,000,000,
including an application for reimbursement of the reasonable costs and expenses incurred by Lead
Plaintiffs directly related to their representation of the Class, and explained that Settlement Class
Members may object to any aspect of the fee and expenses request.  Ewashko Decl. Ex. D (updated
Notice) at ¶66 & n.6. While the original Postcard Notice and Notice, mailed and made available
on the Settlement Website, respectively on November 21, 2022, indicated that Lead Counsel would
not seek reimbursement Litigation Expenses not to exceed $500,000, on December 16, 2022, Lead
Counsel posted an updated Notice to the Settlement Website and mailed an updated Postcard
Notice to Settlement Class Members notifying them that Lead Counsel would seek reimbursement
of Litigation Expenses not to exceed $1,000,000. Gilmore Decl. ¶61, Ewashko Decl. ¶¶9, 12.

new 9:00 A.M. hearing time on January 31, 2023 and advised potential Settlement Class Members that Lead Counsel would seek reimbursement for up to $1,000,000 in Litigation Expenses, to be published once in *Investor's Business Daily* and transmitted once over the *PR Newswire* on December 19, 2022. *Id.* at ¶10. AB Data also posted the posted downloadable versions of the Stipulation, Preliminary Approval Order, updated Notice and Claim Form, Complaint and updated Postcard Notice on the Settlement Website (*id.* at ¶12), and established a toll-free number to respond to Settlement Class Member inquiries. *Id.* ¶11. These various methods of notice provided all necessary information for Settlement Class Members to make an informed decision regarding the Settlement. Moreover, courts routinely find that a mailed postcard directing class to a more detailed online notice is sufficient to satisfy due process requirements. *See In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014) (citing cases). Accordingly, the notice program satisfied the requirements of Rule 23, the PSLRA and due process.

### E.   Final Certification of the Settlement Class Is Appropriate

The Court's October 20, 2022, Preliminary Approval Order certified the Settlement Class for settlement purposes only under Fed. R. Civ. P. 23(a) and (b)(3). *See* ECF No. 102. There have been no changes to alter the propriety of class certification for settlement purposes. Thus, for the reasons stated in Plaintiffs' Preliminary Approval Brief (*see* ECF No. 100), Plaintiffs respectfully request that the Court affirm its determinations in the Preliminary Approval Order certifying the Settlement Class under Rules 23(a) and (b)(3).

## III.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court approve the proposed Settlement as fair, reasonable, and adequate and approve the Plan of Allocation as fair, reasonable, and adequate. Proposed orders will be submitted with Plaintiffs' reply papers, after the deadlines for objections and seeking exclusion have passed.

Dated: December 27, 2022                    Respectfully submitted,

                                            */s/ Emma Gilmore*
                                            Jeremy A. Lieberman
                                            Emma Gilmore
                                            Dolgora Dorzhieva
                                            Villi Shteyn
                                            **POMERANTZ LLP**
                                            600 Third Avenue, Floor 20
                                            New York, NY 10016
                                            Phone: 212-661-1100
                                            Fax: 917-463-1044
                                            jalieberman@pomlaw.com
                                            egilmore@pomlaw.com
                                            ddorzhieva@pomlaw.com
                                            vshteyn@pomlaw.com

                                            *Lead Counsel for Lead Plaintiff Yun Wang and
                                            Named Plaintiff Ali Karimi*

                                            **BRONSTEIN, GEWIRTZ & GROSSMAN,
                                            LLC**

                                            Peretz Bronstein
                                            60 East 42nd Street, Suite 4600
                                            New York, NY 10165
                                            Telephone: (212) 697-6484
                                            Fascimile: (212) 697-7296
                                            peretz@bgandg.com

                                            *Additional Counsel for Plaintiffs and for the
                                            Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on December 27, 2022, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

By:   */s/ Emma Gilmore*_____
      Emma Gilmore