N1VsKARc

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

ALI KARIMI, Individually and on
Behalf of All Others Similarly Situated,

                    Plaintiffs,

          v.                                22 Civ. 2854 (JSR)

DEUTSCHE BANK AKTIENGESELLSCHAFT, et al.,

                    Defendants.

------------------------------x
                                        New York, N.Y.
                                        January 31, 2023
                                        9:00 a.m.

Before:

                    HON. JED S. RAKOFF,

                                        District Judge

                         APPEARANCES

POMERANTZ LLP
     Attorneys for Plaintiffs
BY:  JEREMY LIEBERMAN
     BRIAN CALANDRA
     DOLGORA DORZHIEVA

CAHILL GORDON & REINDEL LLP
     Attorneys for Defendants
BY:  DAVID JANUSZEWSKI
     NICHOLAS MATUSCHAK
```

N1VsKARc

1        (Case called)

2        THE DEPUTY CLERK:  Will the parties please draw a

3  microphone close to them and identify themselves for the

4  record.

5        Ma'am, you've got one right in front of you.  Pull it

6  closer.

7        MR. LIEBERMAN:  Good morning, your Honor.

8        Jeremy Lieberman, Pomerantz LLP, on behalf of the

9  class members.

10        MS. DORZHIEVA:  Good morning, your Honor.

11        Emma Dorzhieva on behalf of the plaintiffs as well.

12        THE COURT:  Good morning.

13        MR. CALANDRA:  Brian Calandra, Pomerantz LLP, on

14  behalf of the plaintiffs.

15        MR. JANUSZEWSKI:  Good morning, your Honor.

16        David Januszewski, Cahill Gordon, for the defendants.

17        THE COURT:  Good morning.

18        MR. MATUSCHAK:  Nicholas Matuschak, also from Cahill,

19  also for the defendants.

20        THE COURT:  Good morning.

21        All right.  Please be seated.

22        So I had already examined the settlement at the time

23  of the preliminary approval and I've now reexamined it.  And

24  with one exception, I'm prepared to approve it, finding that it

25  meets all the requirements of Rule 23 and is fair, adequate,

N1VsKARc

1    and reasonable.

2             The one question I have, and I'll hear from counsel,

3    is a request for 33 percent attorneys' fees which seems to me

4    to be high given both the recent history in this circuit and

5    more generally throughout the United States to reduce fees to

6    about 25 percent in such cases.

7             Second, because the settlement was reached fairly

8    early on without extraordinary work by counsel for either side,

9    and the lodestar within the permissible range is on the high

10   side.

11            Third, perhaps most importantly, it can never be

12   forgotten that every penny that goes to counsel is a penny less

13   that goes to the victims.  The point of contingent fees is to

14   create a sufficient incentive that able counsel, such as we

15   have here, will be attracted to entering into the case.  But it

16   is impossible for me to believe that counsel would not have

17   been willing to take on this case if the fee had been, say,

18   capped automatically at 25 percent rather than 33 percent.

19            But before I make any final decision, let me hear from

20   plaintiff's counsel.

21            MR. LIEBERMAN:  Thank you, your Honor.

22            So to address the point on the fees.  We do believe

23   that one third is well within the range in this circuit.

24            THE COURT:  The history, I think, if you look at the

25   cases throughout the United States, you can see that fees in

N1VsKARc

1    this area are steady moving down as a percentage.

2            Now, there are exceptions to that trend and every case

3    is different and every case must be evaluated individually, but

4    I don't think there is some rule that it should be 33 percent.

5            MR. LIEBERMAN:  Well, I'm not sure that there is a

6    rule on it, your Honor.

7            THE COURT:  Pardon?

8            MR. LIEBERMAN:  I'm not sure that there is a rule

9    either.

10           THE COURT:  That's good.  I'm glad we're agreeing on

11   something.

12           MR. LIEBERMAN:  We do agree on something, your Honor,

13   but I do think we do depart where -- we do think a fee of one

14   third is well within the range and fees like that are already

15   being approved in this circuit, in this court, in the Southern

16   District as well.

17           Your Honor recently in *Gruber v. Gilbertson* approved a

18   one third fee.

19           THE COURT:  I'm not saying that it's not within a

20   permissible range that could be approved.  I'm saying that on

21   the facts of this case and looking at it as increasingly, as

22   I am inclined to do, as to what would be necessary to bring

23   excellent firms like the Pomerantz firm into the case like

24   this, if you have been told at the outset the fee will be

25   25 percent, neither more or less, are you saying you would not

N1VsKARc

 1   have entered the case?

 2           MR. LIEBERMAN:  Your Honor, it might have been a

 3   different discussion.  I don't know what we would have done.  I

 4   can't rewrite the history of that.  We do have discussions with

 5   our plaintiffs on cases and often we do push back on fees and

 6   sometimes we will not take 25 percent.  I don't know what we

 7   would have done here, to be frank.

 8           THE COURT:  OK.

 9           MR. LIEBERMAN:  But thus far, the case did go on for

10   two years.  There was a significant amount of work done in the

11   case.  We're requesting --

12           THE COURT:  That's why I'm not considering five or

13   10 percent.

14           MR. LIEBERMAN:  Yes.  We are lucky about that, your

15   Honor.  We can count our blessings.  But the lodestar here is

16   3.33 million, the multiplier requesting is 2.62, and in the

17   case your Honor actually approved a multiplier of 2.99.

18           So we do think the result here is excellent for the

19   class.  It's a result of about almost about 50 percent of

20   alleged damages that our expert had opined that he would

21   ultimately sign onto for the expert phase.  So we think it is

22   an excellent result.  A lot of work has gone into the case.  It

23   is well within the reasonable range so, therefore, we do think

24   it is warranted.

25           THE COURT:  All right.  I'll ask defense counsel

N1VsKARc

1    whether they want to say anything.

2           My experience is if defense counsel were not, as they

3    are, highly respectful of the process, they would say, Judge,

4    we don't care at all one way or the other.

5           But let me hear if there is anything defense counsel

6    wants to say.

7           MR. JANUSZEWSKI:  No, your Honor.  We really don't

8    have anything to add other than the plaintiff had accurately

9    recited the history of the case and the work that was done and

10   the vigorous opposition that we presented.  But we take no

11   position on the application itself.

12          THE COURT:  By the way, I should add, before we get

13   back to the attorneys' fees, I am satisfied that the

14   out-of-pocket expenses is $688,352.41 and not a penny less.

15   That part is approved.

16          Let me ask plaintiff's counsel, am I right that when

17   this case settled, there had not yet been certification on the

18   motion that was then pending; there had not yet been

19   substantial discovery, including your depositions of the

20   defendants; and that therefore less work was involved than is

21   true of many of these cases that we have been comparing these

22   to?

23          MR. LIEBERMAN:  Your Honor, I'm not sure about that.

24   I mean, as far as the status of the case and the posture, we

25   had made the motion for certification, we had taken --

N1VsKARc

1    depositions of both plaintiffs had been taken, they were

2    scheduled two days after the mediation to have the expert for

3    our class plaintiffs' deposition taken, and there were a number

4    of depositions that were scheduled for just really within a

5    week or two of that mediation.  A number of them were already

6    on the books.

7            At that stage we made the motion, we had taken a

8    significant portion of class discovery, and then we had also

9    received a number of documents that were going to then progress

10   into depositions and onward.  I would say we were right in the

11   middle of discovery.  We received documents, we had already

12   been through a lot of the process of certification.

13           Our response in support, defendants had filed their

14   opposition.  We were prepared within a few weeks to file our

15   responses in support, it was already drafted, and then we were

16   on the road to taking depositions within a week or two.  So

17   that's the posture of the case.

18           I would say I think that's the posture where a lot of

19   cases do settle in these courts.  You're not quite through

20   discovery, you're really right in the middle, and that's where

21   we were.

22           THE COURT:  All right.  This is always, the court

23   finds, one of the more awkward aspects of class action

24   proceedings because, well, up to this point, plaintiff's

25   counsel's duty has been to the class.  At this point,

N1VsKARc

1   plaintiff's counsel's duty is to its firm.  No one really

2   speaks for the class.

3          Yes, theoretically someone could have objected to the

4   attorneys' fees, and the fact that they did not weighs in favor

5   of approval of the attorneys' fees.  But that's, I think, a

6   somewhat artificial way to look at it and, therefore, the court

7   is in the awkward position of having to decide a matter without

8   the adversary system really operating.

9          Defense counsel, of course, as I repeat, doesn't care.

10  It's the same amount of money out of their pocket regardless,

11  so...

12         MR. LIEBERMAN:  He's very supportive, your Honor.

13         THE COURT:  Yes, yes.

14         Well, I'm always impressed when a case settles and we

15  have the preliminary hearing -- I'm not discussing this case

16  just as a general matter -- when plaintiff's counsel suddenly

17  discovers that there were all sorts of marvelous defenses that

18  required them to settle where they did, and defense counsel

19  suddenly discovers that plaintiff had such a good case that

20  they had no choice but to settle.

21         So this is what I guess they teach in law school.

22  All right.  I'll think about it for a day or so and get you a

23  decision by order no later than end of this week at worst.

24         MR. LIEBERMAN:  Thank you, your Honor.

25         THE COURT:  Thanks a lot.